No. 23-cv-00241

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re FTX TRADING LTD., *et al.*, Debtors.

ANDREW R. VARA, UNITED STATES TRUSTEE, Appellant,

v.

FTX TRADING LTD., *et al.*, Appellees.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

**MOTION OF APPELLANT ANDREW R. VARA,
UNITED STATES TRUSTEE, TO CERTIFY DIRECT APPEAL TO THE COURT OF
APPEALS UNDER 28 U.S.C. § 158(d)(2)**

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
SUMI K. SAKATA
Trial Attorneys

Department of Justice
Executive Office for
 United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.:  (202) 307-1399
Fac.:  (202) 307-2397
frederick.g.hall@usdoj.gov
sumi.sakata@usdoj.gov

ANDREW R. VARA
United States Trustee
 for Regions 3 & 9
JOSEPH J. MCMAHON, JR.
Assistant United States Trustee
BENAJMIN A. HACKMAN
JULIET M. SARKESSIAN
Trial Attorneys

Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207,
 Lockbox 35
Wilmington, DE 19801
Tel.:  (302) 573-6491
Fac.:  (302) 573-6497
benjamin.a.hackman@usdoj.gov
juliet.m.sarkessian@usdoj.gov

Andrew R. Vara, United States Trustee for Regions Three and Nine (the "United States Trustee"), files this motion under Fed. R. Bankr. P. 8006(f) for an order certifying a direct appeal to the court of appeals under 28 U.S.C. § 158(d)(2) of the bankruptcy court's order denying the request for appointment of an examiner, Doc. 746 (the "Examiner Order"),[1] attached as Exhibit A. The appellees have not consented to the relief requested in this motion. In support thereof, the United States Trustee respectfully represents:

## PRELIMINARY STATEMENT

This appeal arises out of the attempted reorganization through bankruptcy of FTX Trading Ltd. and 101 related entities (collectively, "FTX").

In the words of the bankruptcy court below, the debtors' bankruptcy cases involve a "multi-billion-dollar company built over the course of just a few years" that had "[a] spectacular crash with billions worth of assets missing, allegations of gross mismanagement and massive fraud leading to criminal indictments and investigations by numerous federal agencies." Doc. 737 (Feb. 15, 2023 Hr'g Tr.) ("2/15 Tr.") at 7:4-8, attached as Exhibit B. The debtors, with their millions of creditors worldwide, presented—when the petitions were filed—the "latest and the largest failure" in the cryptocurrency crisis. Doc. 142 at 12:24-13:2 & 13:15-17.

---

[1] Docket citations refer to the bankruptcy court's docket, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.).

As described further *infra*, they sought bankruptcy relief amid revelations from their new CEO that their former management failed to exercise basic corporate controls, failed to maintain reliable financial information, and used software to conceal their misuse of customer funds, among other alleged misdeeds.  Doc. 24 ¶¶ 5, 65.

The Bankruptcy Code states that when the United States Trustee or a party in interest requests it, a bankruptcy court "shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate," if certain of the debtor's debts "exceed $5,000,000."  11 U.S.C. § 1104(c)(2).

Given the size of FTX's debts and because the FTX cases present the "poster-child" circumstances requiring the appointment of a disinterested person to investigate and report publicly on the findings, the United States Trustee moved for the appointment of an examiner.  Doc. 176.

The bankruptcy court denied the United States Trustee's motion.  The court recognized that it was undisputed that FTX's relevant debts exceeded the statutory minimum.  And the court acknowledged that the only court of appeals, and several district and bankruptcy courts, to address the issue have agreed that appointment of an examiner is mandatory when the statutory requirements under section 1104(c)(2) are met.  *See, e.g.*, *In re Revco D.S., Inc.*, 898 F.2d 498, 500-01 (6th Cir. 1990); *Walton v. Cornerstone Ministries Invs., Inc.*, 398 B.R. 77, 82-84

(N.D. Ga. 2008); *In re Loral Space & Commc'ns, Ltd.*, No. 04 CIV. 8645RPP, 2004 WL 2979785, at *5 (S.D.N.Y. Dec. 23, 2004).  The United States Trustee asked the bankruptcy court to certify its ruling, but the court failed to act on the motion before jurisdiction moved to this Court.

We now respectfully ask this Court to certify the question whether the bankruptcy court erred in denying the motion to appoint an examiner under 11 U.S.C. § 1104(c)(2) when the statutory requirements for appointment are indisputably satisfied.  The question is one of significance because of the relevance of an examiner's report to those affected by this major corporate failure and to the cryptocurrency industry more generally.  Resolution at this juncture will allow the examiner to begin work at the earliest possible time and with maximum efficiency.  It will also help to ensure that this question is resolved before the plan is confirmed by the bankruptcy court.  Certification to the Third Circuit is thus warranted.

## BACKGROUND FACTS

A.   On November 11 and 14, 2022, FTX Trading Ltd. and its debtor-affiliates filed the voluntary petitions that initiated these cases.[2]

Roughly one week after the petitions were filed, FTX's newly appointed CEO, John J. Ray III, submitted a declaration in support of the petitions.  Doc. 24.

---

[2] A listing of the FTX debtors, whose cases are being jointly administered, may be obtained on the website of their proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

He represented that he had never "seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here." *Id*. ¶ 5.

FTX's corporate failings, as described by Mr. Ray, included, among other things:

1. the lack of "appropriate corporate governance," including the lack of any board meetings for certain entities, *id*. ¶ 46;

2. the "absence of lasting records of decision-making," *id*. ¶ 71;

3. the lack of any accounting department, *id*. ¶ 58;

4. the lack of any audited financial statements for some of the FTX entities, *id*. ¶ 57;

5. questionable audited financial statements, in which Mr. Ray had no confidence, for the remaining FTX entities, *id*. ¶¶ 55-56;

6. the lack of centralized cash control, including maintenance of an accurate list of bank accounts and account signatories, such that FTX did not know how much cash it had when it filed for bankruptcy relief, *id*. ¶¶ 50 & 52;

7. the lack of "appropriate books and records, or security controls, with respect to [FTX's] digital assets," which were primarily controlled by the FTX's former CEO Samuel Bankman-Fried, and his co-founder, such that FTX could locate and secure "only a fraction of" those assets, *id*. ¶ 65-66;

8. the lack of complete books and records for the "billions in investments" in FTX's non-cryptocurrency assets, *id*. ¶ 69;

9. the lack of appropriate disbursement controls, *id*. ¶ 62;

10. insufficient attention to the creditworthiness of its banking partners and failure to forecast liquidity, *id*. ¶¶ 50 & 54; and

11. the lack of proper human resources records, leading to FTX's inability to compile a complete list of its employees or the terms of their employment, *id.* ¶ 59.

In addition to the lack of controls or proper corporate management, Mr. Ray also identified alleged instances of active corporate malfeasance or criminal conduct. For example, he cited:

1. FTX's use of "software to conceal the misuse of customer funds," *id.* ¶ 65;

2. unauthorized cryptocurrency transfers of at least $372 million on the date the petitions were filed, *id.* ¶ 66;

3. post-petition dilutive "minting" of approximately $300 million in FTX's token by an "unauthorized source," *id.* ¶ 66; and

4. the use of FTX corporate assets to purchase homes and other personal items for employees and advisors, with no records reflecting the extension of a loan and, in some cases, recording the real estate in the individuals' personal names, *id.* ¶ 63.

After the petitions were filed, Mr. Bankman-Fried was indicted for counts related to fraud, money laundering, and campaign finance offenses. *See* https://www.justice.gov/opa/pr/ftx-founder-indicted-fraud-money-laundering-and-campaign-finance-offenses. As alleged in the indictment, Mr. Bankman-Fried defrauded FTX customers by, among other things, misappropriating billions of dollars from their FTX funds and defrauded lenders by concealing his misuse of customer deposits. *Id*. FTX co-founders other than Mr. Bankman-Fried have pleaded guilty to related charges. *United States v. Bankman-Fried*, No. 1:22-cr-673 (S.D.N.Y.) (minute entries of Dec. 19, 2022 & Feb. 28, 2023).

**B.** Two weeks after Mr. Ray filed his declaration in support of the petitions, the United States Trustee moved for the mandatory appointment of an examiner under 11 U.S.C. § 1104(c)(2). Doc. 176. He requested a mandatory appointment because FTX's petition and Mr. Ray's declaration establish that the fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, of the debtors exceeded $5 million for several of the debtors (with debts for other debtors unknown). Doc. 176 ¶¶ 32-34.

The State of Wisconsin and the Vermont Department of Financial Regulation filed joinders to the examiner motion. Docs. 263 & 339. The Texas State Securities Board and Texas Department of Banking also joined the examiner motion and included letters of support from the regulatory authorities of 15 states and Washington, D.C. Doc. 600.

FTX and the unsecured creditors' committee (the "Committee") objected to the examiner motion. Docs. 571 & 573. The Bahamian joint provisional liquidators of FTX Digital Markets Ltd. (collectively, with the other objecting parties, "the Objectors") also filed a limited objection. Doc. 572. The Objectors did not dispute that an investigation was warranted, but expressed their view that FTX could investigate itself and the Committee could investigate on behalf of the unsecured creditors. Doc. 571 at 8-13; Doc. 572 at 2; Doc. 573 at 16-17.

The Objectors argued that section 1104(c)(2) did not mandate the appointment of an examiner, despite the satisfaction of the Code's enumerated criteria. Doc. 571 at 13-15; Doc. 572 at 4 n.4; Doc. 573 at 13-15. Their argument was premised on section 1104(c)'s statement that "the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate*" if the criteria of subsections (1) or (2) are met. 11 U.S.C. § 1104(c) (emphasis added). The Objectors argued that the "as is appropriate" language gave the bankruptcy court the discretion to determine, even in cases in which the section 1104(c)(2) debt threshold is met, whether the appointment of an examiner is warranted under the facts of a particular case. Doc. 571 at 14; Doc. 572 at 3; Doc. 573 at 13-14.

The United States Trustee filed a reply reiterating why the appointment of an examiner was both mandatory and important. He argued the statutory language required it and, to the extent there was any ambiguity, the legislative history of the provision that was ultimately enacted confirmed it. Doc. 601 at 5-17.

More than two months after the United States Trustee moved for the examiner appointment, the bankruptcy court held a hearing on the motion. Doc. 632 (Feb. 6, 2023 Hr'g Tr.). There, the Objectors stipulated that they were not contesting the satisfaction of the statutory debt threshold. *Id*. at 6:11-22; *see also*

Doc 620 (Final Pretrial Order) at § II.D.1. The bankruptcy court then heard testimony from Mr. Ray and arguments from counsel.

More than a week later, the bankruptcy court denied the United States Trustee's motion under both sections 1104(c)(1) and (c)(2). The bankruptcy court stated that the examiner's investigation would result in additional costs that would not be in the interests of creditors under section 1104(c)(1). Exhibit B, 2/15 Tr. at 10:6-8.

The bankruptcy court also held that appointment of an examiner under section 1104(c)(2) was not mandatory because the "as is appropriate" language in section 1104(c) "permits a Bankruptcy Court to deny the appointment of an examiner in limited circumstances even if the debtor meets the debt requirements of [section 1104](c)(2)." *Id.* at 11:25-12:5.

The Examiner Order was entered on February 21, 2023. Doc. 746.

The United States Trustee timely filed a notice of appeal on March 6, 2023. Doc. 805. On March 23, 2023, immediately after receiving the Solicitor General's authorization,[3] the United States Trustee filed a motion in the bankruptcy court to certify a direct appeal to the court of appeals under 28 U.S.C. § 158(d)(2). Doc. 1142. The United States Trustee recognized that jurisdiction over this matter

---

[3] *See* https://www.justice.gov/jm/civil-resource-manual-99-sgs-guidelines-direct-certified-appeals-bankruptcy-cases.

9

would transfer from the bankruptcy court to this court on April 6, 2023.  *See* Fed. R. Bankr. P. 8006(b) (explaining that a "certification must be filed with the clerk of the court where the matter is pending" and that after 30 days from the notice of appeal, the matter is pending in the district court); *see also* Fed. R. Bankr. P. 8006(d) ("Only the court where the matter is pending … may certify a direct review on request of parties or on its own motion.").  Accordingly, concurrently with the motion to certify, the United States Trustee filed a motion to expedite consideration of the motion to certify so the bankruptcy court could address certification before it lost authority to do so.  Doc. 1143. The bankruptcy court denied without explanation the United States Trustee's motion to expedite on March 29, 2023, Doc. 1185, and did not rule on the certification motion.

## QUESTION PRESENTED AND RELIEF SOUGHT

The United States Trustee asks this Court to enter an order certifying a direct appeal to the court of appeals under 28 U.S.C. § 158(d)(2).  The question presented is whether the bankruptcy court erred in denying the motion to appoint an examiner under 11 U.S.C. § 1104(c)(2) although it is uncontested that the statutory requirements for appointment are satisfied.

## REASONS WHY A DIRECT APPEAL SHOULD BE CERTIFIED

Under 28 U.S.C. § 158(d)(2), an appeal of an order issued by a bankruptcy court may be heard directly by the court of appeals if the order is certified for

direct appeal and the court of appeals accepts the appeal. Certification here may occur in either of two ways: the United States Trustee may move to certify an order for direct appeal under Bankruptcy Rule 8006(f) and this Court authorizes it, or this Court may certify on its own motion under Bankruptcy Rule 8006(e). The substantive standard is the same under both.

"The twin purposes of [section 158(d)(2) are] to expedite appeals in significant cases and to generate binding appellate precedent in bankruptcy, whose caselaw has been plagued by indeterminacy." *In re Pacific Lumber Co.*, 584 F.3d 229, 241-42 (5th Cir. 2009). The statute is written in the disjunctive and thus states four independent criteria under which direct review is appropriate. Direct review is warranted if the order (1) "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," 28 U.S.C. § 158(d)(2)(A)(i), or (2) "involves a matter of public importance," *id.* § 158(d)(2)(A)(i), or (3) "involves a question of law requiring resolution of conflicting decisions," *id.* § 158(d)(2)(A)(ii), or if (4) "an immediate appeal . . . may materially advance the progress of the case," *id.* § 158(d)(2)(A)(iii).

Any one of the four criteria is sufficient to certify an order for direct appeal. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015) ("Unlike [28 U.S.C.] § 1292(b), which permits certification only when three enumerated factors

suggesting importance are all present, § 158(d)(2) permits certification when any one of several such factors exists. . . .").

The statute provides that if this Court determines that any of the four listed circumstances exists, then it "shall make the certification." 28 U.S.C. § 158(d)(2)(B). Thus, "[c]ertification is mandatory where a single condition is satisfied under 28 U.S.C. § 158(d)(2)(B)." *In re Trib. Media Co.*, C.A. No. 15-1116-GMS, 2016 WL 1451161, at *4 (D. Del. Apr. 12, 2016); *see also In re IMMC Corp.*, Civ. No. 15-1043 (GMS), 2016 WL 356026, at *6 (D. Del. Jan. 28, 2016) (holding certification was "required" where one of the criteria was met); 1 *Collier on Bankruptcy* ¶ 5.06[3] (16th ed. 2022) ("court must [certify] on request of one or more of the parties if it determines that [at] least one of the conditions specified in section 158(d)(2)(a)(i), (ii) or (iii) exists"). Certification reflects the court's judgment that one or more of these conditions exist. It does not suggest a view on the proper resolution of the appeal.

As we show below, the present appeal satisfies at least two of the statutory tests for direct certification: (i) there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States governing the statutory interpretation of section 1104(c)(2); and (ii) the appeal involves a matter of public importance. In addition, although it is not clear whether a Third Circuit decision will resolve a conflict that technically falls within the scope of the statute,

it will provide important guidance to bankruptcy courts in this circuit that are in conflict with decisions of district courts and a court of appeals construing the same language. 28 U.S.C. § 158(d)(2)(A)(i)-(ii).

### A. The United States Trustee's Appeal Involves Legal Questions as to Which There Is No Controlling Precedent.

This appeal raises the purely legal issue of whether a bankruptcy court has discretion under 11 U.S.C. § 1104(c)(2) to decline to order the appointment of an examiner upon request when the statutory debt threshold is met.

Section 1104(c) reads in its entirety as follows:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court *shall* order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, *if*--
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; *or*
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c) (emphasis added).

As the Sixth Circuit explained in *In re Revco D.S., Inc.*, 898 F.2d 498, 500-01 (6th Cir. 1990), Section 1104(c)(2) "plainly means that the bankruptcy court

13

'shall' order the appointment of an examiner when the total fixed, liquidated, unsecured debt exceeds $5 million if the U.S. trustee requests one."

"Shall," the court explained, "is generally imperative or mandatory"—it is a "word of command, and one which … must be given a compulsory meaning, as denoting obligation." *Id*. at 501 (alterations in original) (quoting Black's Law Dictionary 1233 (5th ed. 1979)); *see also Maine Cmty. Health Options v. United States*, 206 L. Ed. 2d 764, 140 S. Ct. 1308, 1320 (2020) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." (quotation marks omitted)). By pairing the mandatory "shall," with the objective criteria regarding the size of the debtor's debts, Congress made clear that it intended examiners to be appointed upon request in every large bankruptcy proceeding.

In contrast, reading section 1104(c)(2) to leave the court discretion to deny an appointment when the statutory debt threshold is satisfied would create significant superfluity problems. Under 11 U.S.C. § 1104(c)(1), bankruptcy courts already have discretion to deny appointment of an examiner based on the interests of the creditors and the estate. *See In re Revco*, 898 F.2d at 501 (observing that under section 1104(c)(1), "which governs the appointment of an examiner when the total unsecured debt is less than $5 million, … the appointment is left to the bankruptcy court's discretion"); *see also* 11 U.S.C. § 1104(c)(1) (providing for

14

appointment of an examiner when "such appointment is in the interests of the creditors…"). If the same discretionary authority is also available even when the separate debt-size requirement in section 1104(c)(2) is met, then section 1104(c)(2) does no independent work. *See In re Revco*, 898 F.2d at 501 ("Unless § 1104(b)(2) requires the appointment of an examiner in such a case, it becomes indistinguishable from § 1104(b)(1)").

In any event, this Court need not determine whether these decisions are correct. Neither the Third Circuit nor the Supreme Court has addressed the purely legal question of whether section 1104(c)(2) grants discretion to bankruptcy courts to decline to order the appointment of an examiner when the statutory criteria are met. Consequently, this appeal "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," and thus qualifies for mandatory certification for direct review under 28 U.S.C. § 158(d)(2)(A)(i). *See In re Essar Steel Minnesota LLC*, No. 19-397 (LPS), 2020 WL 3574743, at *6 (D. Del. July 1, 2020) (certifying appeal where there was no "binding decision of the Third Circuit or Supreme Court [that] unambiguously answer[s]" the "open legal issues" identified in the appeal); *In re IMMC Corp.*, 2016 WL 356026 at *4-6 (certifying appeal for direct review where there was no "controlling decision" on interpretation of specific statutes); *In re Trib. Media Co.*, 2016 WL 1451161 at *3-4.

### B.      The Appeal Involves a Matter of Public Importance.

Certification is independently required because this appeal "involves a matter of public importance."  28 U.S.C. § 158(d)(2)(A)(i).

An issue presents a matter of "public importance" if it "transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case."  *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (quoting 1 *Collier on Bankruptcy* ¶ 5.05[A] (15th ed. rev. 2003)); *see also In re Aerogroup Int'l, Inc.*, C.A. No. 19-648 (MN), 2020 WL 757892, at *5 (D. Del. Feb. 14, 2020) (public importance is established in appeals that impact "the public at large," rather than only the parties).  That is plainly the case here.  The collapse of FTX raises concerns not only about the management of that company but about the cryptocurrency industry generally.  *Jaffe v. Samsung Elecs. Co., Ltd. (In re Qimonda AG)*, 470 B.R. 374, 388 (E.D. Va. 2012) (finding "public importance" criterion satisfied from the "substantial ramifications that any decision will cause in the semiconductor industry and for businesses in any industry that heavily rely on patent licensing agreements").

The extent of the issue's public importance is further underscored by the fact that "resolution of the issue has important practical ramifications," *Aerogroup*, 2020 WL 757892 at *5 (quotation marks omitted), and will substantially "aid in

16

upholding fundamental bankruptcy protections," *Essar Steel*, 2020 WL 3574743 at *6.  Congress adopted the mandatory appointment of an examiner as a form of "special protection" in large chapter 11 cases "having great public interest."  124 Cong. Rec. S17,403, S17,404 (1978) (Senate Debate on Bankruptcy Reform Act of 1978), *reprinted in* D *Collier on Bankruptcy* App. Pt. 4(f)(iii) (16th ed. 2023).  The failure to appoint an examiner when the statutory conditions are satisfied undermines precisely the protections Congress deemed necessary.

### C. Direct Review Will Provide Important Guidance to Bankruptcy Courts.

Although there is no conflict within this circuit, review would help resolve "conflicting decisions" between the bankruptcy court and other jurisdictions regarding the question presented.  28 U.S.C. § 158(d)(2)(A)(ii).  The Third Circuit has not addressed the type of conflict that falls within the scope of section 158(d)(2)(A)(ii), although this Court has held that the provision is not triggered by an inter-circuit conflict, *see In re Goody's Family Clothing, Inc.*, No. 09-409 (RMB), 2009 WL 2355705, at *2 (D. Del. July 30, 2009).  Even assuming that the split among courts on the issue here does not technically constitute a conflict for purposes of the statute, direct appeal would at a minimum allow the court of appeals to provide guidance to the courts of this circuit that have reached conclusions at odds with those of district courts in other circuits and with the Sixth Circuit.

All reported out-of-circuit appellate decisions have concluded that section 1104(c)(2) mandates the appointment of an examiner when the $5 million threshold is met.  *See*, *e.g.*, *Revco*, 898 F.2d at 500-01; *Walton*, 398 B.R. at 82-84; *In re Loral Space & Commc'ns, Ltd.*, No. 04 CIV. 8645RPP, 2004 WL 2979785, at *5.  Indeed, the bankruptcy court acknowledged that "there is a split of authority over whether [section] 1104(c)(2) leaves any discretion on the appointment of an examiner."  2/15 Tr. at 11:10-12.  The Third Circuit's resolution of the question presented would provide definitive guidance to which side of the split the bankruptcy courts should adhere going forward.

## CONCLUSION

For any of these reasons, this Court should grant this motion and certify the Examiner Order for direct appeal by the Third Circuit Court of Appeals.  In the alternative, this Court should certify the Examiner Order for direct appeal on its own motion.

Respectfully submitted,

ANDREW R. VARA
United States Trustee for Regions 3 & 9

April 6, 2023

By /s/ Benjamin A. Hackman
    BENJAMIN A. HACKMAN
    Trial Attorney

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
SUMI K. SAKATA
Trial Attorneys

Department of Justice
Executive Office for
 United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.:  (202) 307-1399
Fac.:  (202) 307-2397
frederick.g.hall@usdoj.gov
sumi.sakata@usdoj.gov

ANDREW R. VARA
United States Trustee
 for Regions 3 & 9
JOSEPH J. MCMAHON, JR.
Assistant United States Trustee
BENAJMIN A. HACKMAN
JULIET M. SARKESSIAN
Trial Attorneys

Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207,
 Lockbox 35
Wilmington, DE 19801
Tel.:  (302) 573-6491
Fac.:  (302) 573-6497
benjamin.a.hackman@usdoj.gov
juliet.m.sarkessian@usdoj.gov

19

## **CERTIFICATE OF COMPLIANCE**

The foregoing complies with Federal Rule of Bankruptcy Procedure 8013(f) and this Court's Standing Order Regarding Briefing in All Cases because it contains 3,968 words and was prepared in 14-point Times New Roman font.

<u>/s/ Benjamin A. Hackman</u>
BENJAMIN A. HACKMAN
Trial Attorney