No. 23-cv-00241

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

In re FTX TRADING LTD., *et al.*, Debtors.

---

ANDREW R. VARA, UNITED STATES TRUSTEE, Appellant,

v.

FTX TRADING LTD. *et al.*, Appellees.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

**BRIEF OF APPELLANT ANDREW R. VARA,
UNITED STATES TRUSTEE**

---

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
SUMI K. SAKATA
Trial Attorneys

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.:  (202) 307-1399
Fac.:  (202) 307-2397
frederick.g.hall@usdoj.gov
sumi.sakata@usdoj.gov

ANDREW R. VARA
United States Trustee
  for Regions 3 & 9
JOSEPH J. MCMAHON, JR.
Assistant United States Trustee
BENAJMIN A. HACKMAN
JULIET M. SARKESSIAN
Trial Attorneys

Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207,
  Lockbox 35
Wilmington, DE 19801
Tel.:  (302) 573-6491
Fac.:  (302) 573-6497
benjamin.a.hackman@usdoj.gov
juliet.m.sarkessian@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF APPELLATE JURISDICTION ................................... 1

STATEMENT OF THE ISSUE ................................................................ 1

STANDARD OF REVIEW ...................................................................... 2

STATEMENT OF THE CASE ................................................................. 2

    I.   Statutory Framework ................................................................. 2

        A.    Appointing an Examiner in Chapter 11 Cases ..................... 2

        B.    The Role of the United States Trustee ................................. 5

    II.  Statement of the Facts ............................................................... 5

SUMMARY OF THE ARGUMENT ...................................................... 11

ARGUMENT .......................................................................................... 13

    I.   The Use of "Shall" in the Statute Means Appointment of an Examiner is Mandatory in FTX's Case, and No Other Provision in the Statute Changes That ........................................................................................ 13

    II.  The Structure of Section 1104 Underscores That Appointment of an Examiner Under Section 1104(c)(2) Is Mandatory. ................................. 17

    III. The Bankruptcy Court Relied on Legislative History of a Bill That Was Never Enacted, and the Right Legislative History Shows That Congress Meant What It Said: Examiners Are Mandatory in Cases Like These ....... 20

CONCLUSION ....................................................................................... 25

CERTIFICATE OF COMPLIANCE

LEGISLATIVE HISTORY ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 1243 20th Street, Inc.,*
  6 B.R. 683 (Bankr. D.D.C. 1980) ................................................................. 14

*Barnhart v. Thomas,*
  540 U.S. 20 (2003) ...................................................................................... 15

*Connecticut Nat'l Bank v. Germain,*
  503 U.S. 249 (1992) .................................................................................... 13

*Duncan v. Walker,*
  533 U.S. 167 (2001) .................................................................................... 19

*In re Erickson Ret. Cmty LLC,*
  425 B.R. 309 (Bankr. N.D. Tex.) ................................................................ 15

*In re GHR Co., Inc.,*
  43 B.R. 165 (Bankr. D. Mass. 1984) .......................................................... 15

*In re Gilman Servcs.,*
  46 B.R. 304 (Bankr. D. Mass. 1985) .......................................................... 15

*In re Loral Space & Commc'ns, Ltd.,*
  No. 04 Civ. 8645RPP, 2004 WL 2979785 (S.D.N.Y. Dec. 23, 2004) ...................... 14

*In re Marvel Ent. Grp., Inc.,*
  140 F.3d 463 (3d Cir. 1998) .......................................................................... 3

*Murphy v. Smith,*
  138 S. Ct. 784 (2018) .............................................................................. 13, 14

*In re Residential Capital, LLC,*
  474 B.R. 112 (Bankr. S.D.N.Y. 2012) ..................................................... 16, 23

*In re Revco D.S., Inc.,*
  898 F.2d 498 (6th Cir. 1990) ............................................................... *passim*

*Ritzen Grp., Inc. v. Jackson Masonry, LLC,*
  140 S. Ct. 582 (2020) ................................................................................... 1

*Rosenberg v. XM Ventures,*
    274 F.3d 137 (3d Cir. 2001) ........................................................................ 13

*Russello v. United States,*
    464 U.S. 16 (1983) ....................................................................................... 17

*In re Schepps Food Stores, Inc.,*
    148 B.R. 27 (S.D. Tex. 1992) ...................................................................... 14

*In re Schick,*
    418 F.3d 321 (3d Cir. 2005) .......................................................................... 2

*In re Shelter Res. Corp.,*
    35 B.R. 304 (Bankr. N.D. Ohio 1983) ........................................................ 15

*Shenango Inc. v. Apfel,*
    307 F.3d 174 (3d Cir. 2002) ........................................................................ 13

*South Carolina v. United States,*
    907 F.3d 742 (4th Cir. 2018) ....................................................................... 13

*In re The Bible Speaks,*
    74 B.R. 511 (Bankr. D. Mass. 1987) ........................................................... 14

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001) ....................................................................................... 19

*In re UAL Corp.,*
    307 B.R. 80 (Bankr. N.D. Ill. 2004) ...................................................... 14, 22

*United States v. Bankman-Fried,*
    No. 1:22-cr-673 (S.D.N.Y.) (minute entries of Dec. 19, 2022 & Feb.
    28, 2023) ........................................................................................................ 8

*United States v. Naftalin,*
    441 U.S. 768 (1979) ..................................................................................... 16

*In re Visteon Corp.,*
    612 F.3d 210 (3d Cir. 2010) .................................................................... 13, 17

*Walton v. Cornerstone Ministries Invs., Inc.,*
    398 B.R. 77 (N.D. Ga. 2008) ............................................................. 12, 14, 16

*Ysleta Del Sur Pueblo v. Texas*,
   142 S. Ct. 1929 (2022) ................................................................................................ 25

**Statutes**

11 U.S.C. § 307 ............................................................................................................... 5

11 U.S.C. § 704 ............................................................................................................... 3

11 U.S.C. § 1101(1) ........................................................................................................ 3

11 U.S.C. § 1102(a)(1) .................................................................................................... 9

11 U.S.C. § 1103 ........................................................................................................ 3, 11

11 U.S.C. § 1103(c) ......................................................................................................... 9

11 U.S.C. § 1104 ....................................................................................................*passim*

11 U.S.C. § 1104(a) ...................................................................................................... 17

11 U.S.C. § 1104(a)(1)-(2) ............................................................................................ 17

11 U.S.C. § 1104(b) ...................................................................................................... 21

11 U.S.C. § 1104(c) ................................................................................................*passim*

11 U.S.C. § 1104(c)(1) ...........................................................................................*passim*

11 U.S.C. § 1104(c)(2) ...........................................................................................*passim*

11 U.S.C. § 1106 ............................................................................................................. 3

11 U.S.C. § 1106(a)(3) .................................................................................................... 3

11 U.S.C. § 1106(a)(4) .................................................................................................... 3

11 U.S.C. § 1106(b) ...................................................................................................... 11

11 U.S.C. § 1107 ........................................................................................................ 3, 11

11 U.S.C. § 1107(a) ......................................................................................................... 3

28 U.S.C. § 157(a) .......................................................................................................... 1

28 U.S.C. § 157(b) .......................................................................................................... 1

28 U.S.C. § 158(a)(1) .................................................................................... 1

28 U.S.C. § 158(c)(2) .................................................................................... 1

28 U.S.C. §§ 581–589 ................................................................................... 5

28 U.S.C. § 1334(a) ...................................................................................... 1

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549,
2627-28 ...................................................................................................... 21

**Other Authorities**

124 Cong. Rec. H11,047 (1978) .................................................................. 22

124 Cong. Rec. S17,403 (1978) ................................................................... 22

*Black's Law Dictionary* 1233 (5th ed. 1979) ............................................ 14

7 *Collier on Bankruptcy* ¶ 1100.01 (16th ed. 2023) ................................... 3

7 *Collier on Bankruptcy* ¶ 1104.03[2] (16th ed. 2023) ............................ 14

D *Collier on Bankruptcy* App. Pt. 4(f)(i)(2) (16th ed. 2023) .................... 22

D *Collier on Bankruptcy* App. Pt. 4(f)(iii) (16th ed. 2023) ................. 22, 23

Fed. R. Bankr. P. 8002 ................................................................................. 1

H.R. 8200, 95th Cong. (Sept. 8, 1977), *reprinted in* B *Collier on Bankruptcy*
App. Pt. 4(d) (16th ed. 2023) ............................................................ 20, 23, 24

H.R. Rep. No. 95-595 (Sept. 8, 1977), at 234, *reprinted in* 1978
U.S.C.C.A.N. 5693 ............................................................................ 20, 23, 24

Pub. Affairs, *FTX Founder Indicted for Fraud, Money Laundering, and
Campaign Finance Offenses* (Dec. 13, 2022),
https://www.justice.gov/opa/pr/ftx-founder-indicted-fraud-money-
laundering-and-campaign-finance-offenses ............................................. 7, 8

S. 2266, 95th Cong. §§ 1101 & 1104 (Aug. 10, 1978), *reprinted in* C *Collier
on Bankruptcy* App. Pt. 4(e) (16th ed. 2023) ...................................... 20, 21

S. Rep. No. 95-989 (July 14, 1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 ..... 21

## STATEMENT OF APPELLATE JURISDICTION

The bankruptcy court has jurisdiction over the debtors' chapter 11 bankruptcy cases under 28 U.S.C. §§ 157(a) and (b) and 1334(a).  The bankruptcy court's final order denying appointment of an examiner under 11 U.S.C. § 1104(c) was entered on February 21, 2023.  A213–A214; *see Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586-87 (2020) (holding an order denying a motion to lift the automatic stay is final).  This Court has appellate jurisdiction under 28 U.S.C. § 158(a)(1).  The United States Trustee timely filed a notice of appeal under 28 U.S.C. § 158(c)(2) and Fed. R. Bankr. P. 8002 on March 6, 2023.  A215–A219.[1]

## STATEMENT OF THE ISSUE

Section 1104(c) of the Bankruptcy Code provides:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court **shall** order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if--

---

[1] Citations to "A__" refer to the United States Trustee's Appendix submitted concurrently with this brief.  Citations to "A__(Doc.___)" refer to a docket entry on the docket sheet included in the Appendix.  Citations to "Doc.__" refer to the bankruptcy court's docket, In re FTX Trading Ltd., Case No. 22-11068 (JTD) (Bankr. D. Del.).

> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; **or**
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c) (emphasis added).

This appeal presents a question of law: Whether the use of "shall" means an examiner must be appointed when, as here, four statutory criteria are met:

**(i)**   there is no trustee;

**(ii)**   no plan has been confirmed;

**(iii)**   the United States Trustee has moved for the appointment of an examiner; and

**(iv)**   the debtor's fixed, liquidated, unsecured debts (other than debts for goods, services, or taxes, or owing to an insider) exceed $5 million?

## STANDARD OF REVIEW

This Court exercises plenary review over questions of law decided by the bankruptcy court. *In re Schick*, 418 F.3d 321, 323 (3d Cir. 2005).

## STATEMENT OF THE CASE

### I.   Statutory Framework

#### A.   Appointing an Examiner in Chapter 11 Cases

The Bankruptcy Code allows "a debtor to reorganize its business or financial affairs or to engage in an orderly liquidation of its property as a going concern or

otherwise." 7 *Collier on Bankruptcy* ¶ 1100.01 (16th ed. 2023).  Upon commencement of a case under chapter 11, a debtor typically becomes a "debtor in possession," 11 U.S.C. § 1101(1), and is allowed to manage its business and assets on behalf of creditors.  *See In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998).

Under certain circumstances, however, a bankruptcy court orders the appointment of independent and neutral persons either to (i) manage or (ii) investigate the debtor's affairs.  Section 1104 specifies two:  a trustee, who replaces the debtor in possession as manager of the debtor's affairs,[2] and an examiner.  This appeal is about examiners.

An examiner investigates the conduct, assets, and liabilities of a debtor and its management and files a written and public report with the bankruptcy court.[3] Section 1104(c) states that, if no trustee has been appointed, the bankruptcy court "at any time before the confirmation of a plan, on request of . . . the United States

---

[2] A debtor in possession is tasked with various powers and duties that a chapter 11 trustee would have, with certain exceptions.  11 U.S.C. §§ 704, 1106 & 1107. Among the duties that a debtor in possession does not have are the duties to investigate the acts, conduct, and financial condition of the debtor and to file a statement concerning that investigation.  11 U.S.C. §§ 1106(a)(3), (4) & 1107(a).

[3] This is qualitatively different than investigations by the debtor in possession and the official committee of unsecured creditors, 11 U.S.C. § 1103, who are not neutral and have no duty to file public reports.  Rather, those investigations generally advance their constituencies' economic interests, consistent with their statutory duties.

trustee, . . . shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management" in either one of two circumstances:

*First*, if the bankruptcy court finds appointment of an examiner "is in the interests of creditors, any senior equity security holders, and other interests of the estate," 11 U.S.C. § 1104(c)(1); or

*Second*, if "the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." 11 U.S.C. § 1104(c)(2).

This appeal involves a motion to appoint an examiner under subsection (c)(2).

Upon the issuance of an order to appoint an examiner, the United States Trustee selects a disinterested person to serve as the examiner with the bankruptcy court's approval. *Id.* § 1104(d). The examiner must submit to the bankruptcy court a report "including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate." *Id.* § 1106(a)(4)(A), (b).

4

### B.     The Role of the United States Trustee

United States Trustees are Justice Department officials appointed by the Attorney General to protect the public interest.  28 U.S.C. §§ 581–589; *see also In re Revco D.S., Inc*., 898 F.2d 498, 500 (6th Cir. 1990) ("The U.S. trustees are responsible for protecting the public interest and ensuring that bankruptcy cases are conducted according to law.") (cleaned up).  To this end, Congress has provided that the United States Trustee "may raise and may appear and be heard on any issue in any case or proceeding" under title 11.  11 U.S.C. § 307.  Andrew R. Vara is the United States Trustee for Region 3, which includes the United States District Court for the District of Delaware.  Section 1104(c) expressly authorizes the United States Trustee to move for the appointment of an examiner.

## II.   Statement of the Facts

When they collapsed, FTX Trading Ltd. and its affiliates ("FTX") had one million users in the United States and millions more overseas and held many billions in assets.  A142–A143 ¶ 12; A150 ¶ 35.  And yet, in November 2022, FTX petitioned for bankruptcy relief under chapter 11 of the Bankruptcy Code.  A007.

FTX's bankruptcy filings raised grave questions about the conduct of its pre-petition management.  The day FTX filed for bankruptcy, its founder, Samuel Bankman-Fried, was replaced as Chief Executive Officer by John J. Ray III. A153–A154 ¶ 44.  Mr. Ray then submitted a declaration in support of FTX's

5

bankruptcy petitions.  A139 – A168.  He declared under penalty of perjury that he had "never seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here."  A140 ¶ 5.

Mr. Ray described myriad corporate failings of FTX, including:

- the lack of "appropriate corporate governance," including the lack of any board meetings for certain entities. A154 ¶ 46;

- the "absence of lasting records of decision-making," A162–A163 ¶ 71;

- the lack of any accounting department, A159 ¶ 58;

- the lack of any audited financial statements for some of the FTX entities, A159 ¶ 57;

- questionable audited financial statements, in which Mr. Ray had no confidence, for the remaining FTX entities, A158–A159 ¶¶ 55-56;

- the lack of centralized cash control, including maintenance of an accurate list of bank accounts and account signatories, such that FTX did not know how much cash it had when it filed for bankruptcy relief, A156–A157 ¶¶ 50 & 52;

- the lack of "appropriate books and records, or security controls, with respect to [FTX's] digital assets," which were primarily controlled by the Debtors' former CEO, Samuel Bankman-Fried and his co-founder, such that FTX could locate and secure "only a fraction of" those assets, A160–A161 ¶ 65-66;

- the lack of complete books and records for the "billions in investments" in FTX's non-cryptocurrency assets, A162 ¶ 69;

- the lack of appropriate disbursement controls, A160 ¶ 62;

- insufficient attention to the creditworthiness of its banking partners and failure to forecast liquidity, A156–A158 ¶¶ 50 & 54; and

- the lack of proper human resources records, leading to FTX's inability to compile a complete list of its employees or the terms of their employment, A159 ¶ 59.

In addition to an absence of controls and proper corporate management, Mr. Ray also identified alleged instances of active corporate malfeasance or criminal conduct.  For example, he cited:

- FTX's use of "software to conceal the misuse of customer funds," A160–A161 ¶ 65;

- unauthorized cryptocurrency transfers of at least $372 million on the petition date, A161 ¶ 66;

- post-petition dilutive "minting" of approximately $300 million in FTX's token by an "unauthorized source," *id.*; and

- the use of FTX corporate assets to purchase homes and other personal items for employees and advisors, with no records reflecting the extension of a loan and, in some cases, recording the real estate in the individuals' personal names, A160 ¶ 63.

After FTX filed for bankruptcy, Mr. Bankman-Fried was indicted for counts related to fraud, money laundering, and campaign finance offenses.  *See* Department of Justice Office of Pub. Affairs, *FTX Founder Indicted for Fraud, Money Laundering, and Campaign Finance Offenses*, Justice.gov (Dec. 13, 2022), https://www.justice.gov/opa/pr/ftx-founder-indicted-fraud-money-laundering-and-campaign-finance-offenses.  As alleged in the indictment, Mr. Bankman-Fried defrauded FTX customers by, among other things, misappropriating billions of

7

dollars from the FTX funds, and defrauded lenders by concealing his misuse of customer deposits. *Id.* Other FTX executives have pleaded guilty to related charges. *United States v. Bankman-Fried*, No. 1:22-cr-673 (S.D.N.Y.) (minute entries of Dec. 19, 2022 & Feb. 28, 2023).

Because these problems called out for an independent professional to investigate and publicly report on his or her findings, the United States Trustee moved for the appointment of an examiner under 11 U.S.C. § 1104(c). A024 (Doc. 176). The United States Trustee argued that the appointment of an examiner was in the interests of FTX's creditors and other interest holders under 11 U.S.C. § 1104(c)(1) and appointment of an examiner was mandatory because FTX met the requirement specified in section 1104(c)(2). A185:24–A186:10.

Others supported the United States Trustee's examiner motion. Both Wisconsin and the Vermont Department of Financial Regulation filed joinders to the examiner motion. A034 (Doc. 263); A044 (Doc. 339). The Texas State Securities Board and Texas Department of Banking also joined the examiner motion and included letters of support from the regulatory authorities of 15 states and Washington, D.C.[4] A072 (Doc. 600).

---

[4] The fifteen states whose agencies supported the joinder to the examiner motion were: Alaska; Arkansas; California; Florida; Hawaii; Idaho; Illinois; Kentucky; Maine; Maryland; New Hampshire; New Jersey; North Carolina; Oklahoma; and Tennessee. Doc. 600 at 2-3.

FTX, the committee of FTX's unsecured creditors (the "Committee"),[5] and

the Bahamian joint provisional liquidators of FTX Digital Markets Ltd. objected.

They did not dispute that an investigation into FTX was necessary, but they argued

that a court-appointed examiner was not in the interests of creditors under

section 1104(c)(1) because of newly undertaken investigations by FTX's new

management, the Committee, and other law enforcement and regulatory entities.

A186:11-20.  They also argued that appointment of an examiner was not

mandatory under section 1104(c)(2).  A186:20-23.

The parties stipulated that "[t]he $5 million threshold of section 1104(c)(2)

has been met" for three debtors.  A170 ¶ II(D)(1).  FTX, the Committee, and the

Bahamian joint provisional liquidators did not stipulate that any other debtor met

the $5 million debt threshold "because they are not currently in a position to make

that determination."  *Id.*  Instead, they stipulated they were "not contesting the

Examiner Motion on the basis that the $5 million threshold of section 1104(c)(2)

has not been met" for any other debtor.  *Id.*  The bankruptcy court heard argument

and testimony for the motion at a February 6, 2023 hearing.  A074 (Docs. 622-23).

---

[5] In chapter 11 cases, the United States Trustee appoints a committee of creditors holding unsecured claims.  11 U.S.C. § 1102(a)(1).  The Bankruptcy Code grants an unsecured creditors' committee various powers, including the authority—but not a duty—to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor."  11 U.S.C. § 1103(c).

On February 15, 2023, the bankruptcy court announced it would deny the United States Trustee's motion for an examiner.  The bankruptcy court found that an examiner was not in the interests of creditors because of the speculated cost of the examiner and the existing investigations into FTX.  A189:17–A190:21.

The bankruptcy court then held that, even though FTX met all the requirements of section 1104(c)(2), appointment of an examiner was not mandatory.  The bankruptcy court recognized that "the only Circuit Court of Appeals to consider the issue" concluded that the "shall order the appointment of an examiner" language in section 1104(c)(2) requires appointment of an examiner. A191:10–A192:1 (citing *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir. 1990)).

But citing a number of bankruptcy court rulings, the bankruptcy court interpreted the phrase "to conduct such an investigation of the debtor as is appropriate" not only to allow the bankruptcy court to define the scope of the examiner's investigation, but also to decide if an investigation is appropriate at all. A192:1–A193:14.  The bankruptcy court further relied on legislative history from an unenacted 1977 bill to support its conclusion.  A196:14–A197:6.  Having concluded section 1104(c)(2) did not mandate appointment of an examiner, the bankruptcy court stated that "appointment of an examiner is not needed pursuant to [section] 1104(c)(2) and appointing one would impose an unnecessary burden on

10

the debtors and ultimately the creditors for whose benefit these cases are being

pursued." A196:22–A197:1.

The bankruptcy court entered its order denying the examiner motion on

February 21, 2023. A213–A214. The United States Trustee timely appealed that

order on March 6, 2023. A215–A219.

## SUMMARY OF THE ARGUMENT

FTX's bankruptcy cases call out for the appointment of a neutral examiner,

given the public interest in these cases and the wider implications that FTX's

collapse may have for the crypto industry. The examiner would be freed from

statutory deadlines and the press of business to conduct his or her review. An

examiner investigates the conduct, assets, and liabilities of a debtor and its

management and files a written and public report with the bankruptcy court.[6]

11 U.S.C. § 1104(c)(2) mandates the appointment of an examiner in these

proceedings. It plainly provides that the bankruptcy court "shall order the

appointment of an examiner" "on request of . . . the United States trustee," when,

as here, the statutory debt threshold is satisfied. The only reported appellate

decisions on this issue—including by the Sixth Circuit, as referenced by the

---

[6] The roles of FTX and the Committee simply differ from that of an examiner. *Compare* 11 U.S.C. § 1107 (duties of the debtor in possession) & 11 U.S.C. § 1103 (duties of committees) *with* 11 U.S.C. § 1106(b) (duties of the examiner).

11

bankruptcy court—held exactly that.  *E.g. In re Revco*, 898 F.2d at 500-01; *Walton v. Cornerstone Ministries Invs., Inc.*, 398 B.R. 77, 82-84 (N.D. Ga. 2008).

Section 1104(c)(2)'s structure and history buttress its plain meaning: an examiner is mandatory here.  Section 1104(c)(2) juxtaposes a permissive appointment of an examiner—*i.e.*, when the moving party shows appointment to be in the interest of creditors—against a mandatory appointment in larger bankruptcy cases.  The bankruptcy court's reading of section 1104(c)(2) as discretionary renders the mandatory provision superfluous.  Indeed, here, the bankruptcy court relied on the same "interests of creditors" analysis to reject an examiner under both sections 1104(c)(1) and 1104(c)(2).

The court below compounded its misreading of the text by a mistaken reliance on the legislative history of a bill that was never enacted and that differed fundamentally from section 1104(c).  To the extent there is any ambiguity in the statutory language and its structure, the legislative history of the enacted bill confirms that Congress enacted both permissive and mandatory grounds for appointing examiners.  The draft bills and statements on the House and Senate floor demonstrate that Congress intended that section 1104(c)(2) mandate appointment of an examiner in larger chapter 11 bankruptcies like FTX's.

The bankruptcy court's order should be reversed.

**ARGUMENT**

**I.   The Use of "Shall" in the Statute Means Appointment of an Examiner is Mandatory in FTX's Case, and No Other Provision in the Statute Changes That.**

**1.**   Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). "Where the statutory language is plain and unambiguous, further inquiry is not required." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). "The words of a statute are not to be lightly jettisoned by courts looking to impose their own logic on a statutory scheme." *In re Visteon Corp.*, 612 F.3d 210, 219 (3d Cir. 2010).

Section 1104(c)(2) is clear:  if the statutory criteria, including the $5 million debt threshold, are met—as all parties concede they are in this case—then the bankruptcy court "shall" appoint an examiner. *Revco*, 898 F.2d at 500-01.

"[T]he word shall usually creates a mandate, not a liberty," meaning that, when "shall" is used, the court "ha[s] some nondiscretionary duty to perform." *Murphy v. Smith*, 138 S. Ct. 784, 787 (2018); *see also Shenango Inc. v. Apfel*, 307 F.3d 174, 193 (3d Cir. 2002) ("'[S]hall' is generally mandatory when used in a statute."); *South Carolina v. United States*, 907 F.3d 742, 758 (4th Cir. 2018) ("[A]s in most circumstances, 'shall' means 'shall.'").  "If Congress had wished to afford the judge more discretion in this area, it could have easily substituted 'may'

13

for 'shall.'" *Murphy*, 138 S. Ct. at 787. Instead, Congress paired the mandatory "shall," with the objective criteria regarding the size of the debtor's debts, making clear that it intended examiners to be appointed upon request in every large bankruptcy proceeding. *See infra* section III (explaining Congress expressly chose "shall" over "may").

Every appellate court to consider the issue, including the Sixth Circuit, has agreed. *See Revco*, 898 F.2d at 500-01 ("In common and ordinary parlance the term 'shall' is a word of command, and one which must be given a compulsory meaning; as denoting obligation") (quoting *Black's Law Dictionary* 1233 (5th ed. 1979)) (cleaned up); *Walton*, 398 B.R. at 82-84; *In re Loral Space & Commc'ns, Ltd.*, No. 04 Civ. 8645RPP, 2004 WL 2979785, at *3-5 (S.D.N.Y. Dec. 23, 2004); *In re Schepps Food Stores, Inc.*, 148 B.R. 27, 29-30 (S.D. Tex. 1992). Many bankruptcy courts also agree, *see*, *e.g.*, *In re UAL Corp.*, 307 B.R. 80, 83-86 (Bankr. N.D. Ill. 2004); *In re The Bible Speaks*, 74 B.R. 511, 514 (Bankr. D. Mass. 1987); *In re 1243 20th Street, Inc.*, 6 B.R. 683, 685 n. 3 (Bankr. D.D.C. 1980), as does the leading bankruptcy treatise, *see* 7 *Collier on Bankruptcy* ¶ 1104.03[2] (16th ed. 2023) (titled "Mandatory Appointment of Examiner; § 1104(c)(2)").

**2.** The bankruptcy court did not dispute that the word "shall" generally imposes a mandatory obligation. Nor did it contest that the statutory requirements were satisfied in this case. Instead, the court, and other bankruptcy court rulings

14

on which the court relied,[7] incorrectly and solely focused on the language in

section 1104(c) directing a court to "order the appointment of an examiner to

conduct such an investigation of the debtor *as is appropriate*."  A191:16–A193:5

(emphasis added).  In the bankruptcy court's view, the phrase "as is appropriate"

gave the court discretion to "say no to an examiner investigation where it may not

be justified on the particular facts and circumstances of the case."  A193:8-13.

That conclusion is at odds with the placement of the phrase in the sentence

and in the provision read as a whole.  Under the "last antecedent" rule of statutory

construction, "a limiting clause or phrase . . . should ordinarily be read as

modifying only the noun or phrase that it immediately follows."  *Barnhart v.*

*Thomas*, 540 U.S. 20, 26 (2003).  For this statute, "as is appropriate" refers only to

"such investigation of the debtor" and does not limit the effect of "shall order" in

any way.  In other words, the "as is appropriate" language "allows the court to

determine the scope, length, and conduct of the investigation, rather than the

---

[7] Among the cases on which the bankruptcy court wrongly relied, A192:6-15, one
denied an examiner motion under the discretionary subsection and did not apply
section 1104(c)(2), *In re Gilman Servcs*., 46 B.R. 304, 327 (Bankr. D. Mass.
1985); one in fact held that appointment was mandatory but found the movant had
no standing, *In re Erickson Ret. Cmty LLC*, 425 B.R. 309, 312 (Bankr. N.D. Tex.);
one found the examiner request had been rendered moot, *In re Shelter Res. Corp*.,
35 B.R. 304, 305 (Bankr. N.D. Ohio 1983); and another noted that an examiner
appointment would be futile given the court's intent to transfer the case to a
different district, requiring the rescindment of such appointment, as well as moot in
light of motions to appoint a trustee, *In re GHR Co., Inc.*, 43 B.R. 165, 175-76
(Bankr. D. Mass. 1984).

appointment themselves." *Walton*, 398 B.R. at 83; *see Revco*, 898 F.2d at 501

("[T]he bankruptcy court retains broad discretion to direct the examiner's

investigation, including its nature, extent, and duration.").

The bankruptcy courts that rule that section 1104(c)(2) is not mandatory

acknowledge that the "as is appropriate" language allows the bankruptcy court to

determine the scope and conduct of the examiner's investigation.  But they go

much further, reasoning that "[i]f the 'as is appropriate' language provides such

discretion with respect to the nature, extent, and duration of the investigation, then

why doesn't the same language provide discretion to just say no to an examiner

investigation where it may not be justified on the particular facts and

circumstances of the case?"  *In re Residential Capital, LLC*, 474 B.R. 112, 118

(Bankr. S.D.N.Y. 2012) (quoted at A193:6-14).

"The short answer is that Congress did not write the statute that way."

*United States v. Naftalin*, 441 U.S. 768, 773 (1979).  Congress decided to require

appointments of examiners in larger chapter 11 bankruptcies, if requested by the

United States Trustee or another interested party, and also decided to allow

bankruptcy courts discretion to define the scope and conduct of that inquiry.  In

ignoring the duty to appoint an examiner because they speculate the required

investigation and report will be expensive or difficult, as the bankruptcy court did

16

here (*see* A195:23–A196:1), courts "jettison[]" Congress's intent and "impose [the court's] own logic on a statutory scheme." *Visteon Corp.*, 612 F.3d at 219.

## II.    The Structure of Section 1104 Underscores That Appointment of an Examiner Under Section 1104(c)(2) Is Mandatory.

Section 1104's structure confirms that section 1104(c)(2) is a mandatory provision for two reasons:  *First*, Congress used discretionary language elsewhere in section 1104 but omitted it from section 1104(c)(2).  *Second*, reading section 1104(c)(2) as discretionary rather than mandatory makes it superfluous.

1.    "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).  Congress included discretionary language in other parts of section 1104, meaning Congress intentionally made section 1104(c)(2) mandatory.

Section 1104(a) governs appointments of chapter 11 trustees.  Under that section, a bankruptcy court orders the appointment of a trustee "for cause" or if it determines that "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate."  11 U.S.C. § 1104(a)(1)-(2). Section 1104(c)(1) is an alternative situation in which an examiner may be appointed:  it likewise instructs the bankruptcy court to appoint an examiner if

17

"such appointment is in the interests of creditors, any equity security holder, and other interests of the estate."  11 U.S.C. § 1104(c)(1).

The use of the phrases "for cause" and "in the interests of creditors" shows that Congress intended in these provisions to leave the bankruptcy court discretion to determine whether a trustee or an examiner is warranted.  *See In re Revco*, 898 F.2d at 501 (observing that under section 1104(c)(1), "which governs the appointment of an examiner when the total unsecured debt is less than $5 million, … the appointment is left to the bankruptcy court's discretion").

But by drafting section 1104(c)(2) without including the discretionary language it used in other subsections of section 1104, Congress clearly provided for the use of discretion only in those other subsections and not in section 1104(c)(2).  *See Revco*, 898 F2d. at 501 (noting contrast between two subsections of section 1104(c)—which was then 1104(b)—" could not be more striking").  And Congress's decision to treat section 1104(c)(2) as mandatory instead of discretionary was not without purpose; Congress intended to provide special treatment for bankruptcies that meet the $5 million debt threshold in section 1104(c)(2).  *See infra* section III.

    **2.**    "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence or

word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

The bankruptcy court's treatment of section 1104(c)(2), however, leaves it superfluous. In determining whether to exercise the claimed discretion to appoint an examiner under section 1104(c)(2), the bankruptcy court here improperly considered the interests of creditors—the same factor it considered under section 1104(c)(1). *Compare* A195:21–A196:1 ("I conclude under the facts and circumstances of these cases, appointment of an examiner is not needed pursuant to [section] 1104(c)(2) and appointing one would impose an unnecessary burden on the debtors and ultimately the creditors for whose benefit these cases are being pursued."), *with* A190:18-21 ("Every dollar spent in these cases on administrative expenses is a dollar less to creditors; therefore, I will deny the request to appoint an examiner under section 1104(c)(1)").

This misinterpretation leaves section 1104(c)(2) "indistinguishable from" section 1104(c)(1), *Revco*, 898 F.2d at 501, and renders the $5 million debt threshold of section 1104(c)(2) without purpose. If both parts of section 1104(c) require only a discretionary "interests of the creditors" analysis, Congress could have omitted section 1104(c)(2) entirely. But section 1104(c)(2) is there, and "[i]t is [the courts'] duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001). Here, that means the

19

mandatory appointment of an examiner where the debt threshold is met, as it was here.

### III. The Bankruptcy Court Relied on Legislative History of a Bill That Was Never Enacted, and the Right Legislative History Shows That Congress Meant What It Said: Examiners Are Mandatory in Cases Like These.

Although the statutory language and structure are clear, to the extent there is ambiguity, the United States Trustee's position is reaffirmed by the history of section 1104(c)(2).  As explained below, the bankruptcy court's understanding of that history is simply wrong.

**1.**  The mandatory language of section 1104(c)(2), as enacted, was no accident.  The version of the bill that Congress passed and that the President signed into law ultimately was a compromise between a House bill, H.R. 8200, and a Senate bill, S. 2266.

The House bill would have restricted appointment of a trustee or an examiner to those circumstances where the need for the appointment would outweigh the costs and expenses.  *See* H.R. Rep. No. 95-595 (Sept. 8, 1977), at 234, *reprinted in* 1978 U.S.C.C.A.N. 5693, 6193-94; H.R. 8200, 95th Cong. § 1104(a)-(b) (Sept. 8, 1977), *reprinted in* B *Collier on Bankruptcy* App. Pt. 4(d)

20

(16th ed. 2023); *see also* Legislative History Addendum ("Add."). 02, Add. 05 & Add. 06.[8]

In contrast, the Senate bill provided that the appointment of a trustee would be mandatory for a public company defined as one that had $5 million in liabilities, excluding tax and trade obligation, and 1,000 security holders. *See* S. Rep. No. 95-989, at 115 (July 14, 1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5901; S. 2266, 95th Cong. §§ 1101 & 1104 (Aug. 10, 1978), *reprinted in* C *Collier on Bankruptcy* App. Pt. 4(e) (16th ed. 2023); Add. 09, Add. 13 & Add. 14.

As a compromise, the enacted bill took elements of both proposed bills. The negotiated language that became section 1104 adopted the House's discretionary approach of permitting the bankruptcy court to direct the appointment of a trustee or an examiner if such appointment would be in the interests of creditors but also adopted the Senate's approach of *requiring* an appointment—albeit of an examiner—in large enough cases. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, 2627-28 (codifying 11 U.S.C. § 1104(b), the current section 1104(c)); Add. 43 & Add. 44.

The House and Senate floor managers, in a joint explanatory statement following floor debates on the compromise bill, explained this explicitly:

---

[8] For ease of reference, excerpts of the cited legislative history are included as an addendum to this brief. Citations to "Add.__" refer to this addendum.

> In order to insure that adequate investigation of the debtor is conducted
> to determine fraud or wrongdoing on the part of present management,
> an examiner is *required* to be appointed in all cases in which the
> debtor's fixed, liquidated, and unsecured debts, other than debts for
> goods, services, or taxes, or owing to an insider, exceed $5 million.

124 Cong. Rec. H11,047, H11,100 (1978) (emphasis added), *reprinted in* D *Collier on Bankruptcy* App. Pt. 4(f)(i)(2) (16th ed. 2023) ("House Debate"); 124 Cong. Rec. S17,403, S17,417 (1978), *reprinted in* D *Collier on Bankruptcy* App. Pt. 4(f)(iii) (16th ed. 2023) ("Senate Debate"); Add. 22, Add. 23, Add. 33 & Add. 34; *see also* House Debate at H11,102(referring to "mandatory appointment" of an examiner); Senate Debate at S17,419 (same); Add. 28, Add. 39; House Debate at H11,116 ("In large cases, an examiner is appointed to investigate the affairs of the debtor, but there is never a mandatory appointment of a trustee."); Senate Debate at S17,433 (same); Add. 29, Add. 41; *UAL Corp.*, 307 B.R. at 86 ("The enacted language of § 1104 resolved a disagreement between the Senate and the House . . . . [I]t provided for mandatory appointment of an examiner in large cases as an alternative form of protection against corporate mismanagement.").

The Senate floor manager, Senator Dennis DeConcini of Arizona, further explained in a floor statement:

> In the business reorganization chapter the Senate succeeded in
> obtaining special protection for the large cases having great public
> interest.  There will be automatically appointed an examiner in those
> cases, but not a trustee as in the Senate passed bill.  I am convinced that
> debtor and creditor interests, as well as the public interest, will be
> preserved and enhanced by these provisions.

22

Senate Debate at S17,404; Add. 31.

**2.**  In its bench ruling, the bankruptcy court cited House Report 95-595 in its statutory interpretation.  A196:15-23.  Wrongly identifying this as "[t]he legislative history of [section] 1104(c)," A196:15-16, the bankruptcy court paraphrased the portion that states that "[t]he standards for determining whether to order the appointment of an examiner are the same as those for appointment of a trustee:  the protection must be needed and the cost not disproportionately high."  H.R. Rep. No. 95-595, at 234, *reprinted in* 1978 U.S.C.C.A.N. 5693, 6194; *see also* Add. 06.

Based on this statement, the bankruptcy court held that "the legislative history supports the conclusion that an examiner shall be appointed 'as appropriate under the particular circumstances of the case,' but 'the protection must be needed,'" even in cases where the debt threshold of section 1104(c)(2) is met. A196:24–197:6.[9]

The problem with the bankruptcy court's analysis is that, as discussed *supra*, House Report 95-595 described a preliminary draft of section 1104(c)—not the bill as it was ultimately enacted into law.  The relevant provision of H.R. 8200, the unenacted bill described in House Report 95-595, reads as follows:

---

[9] This House Report was also cited by one of the appellees, the joint provisional liquidators of FTX Digital Markets Ltd, in its objection.  Doc. 572 at 3.  It was also cited in *In re Residential Capital LLC*, 474 B.R. 112, 120 (Bankr. S.D.N.Y. 2012), on which the bankruptcy court below relied.  A194:6-7.

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, after notice and a hearing, the court *may* order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, or gross mismanagement of the debtor or by current or former management of the debtor if--
>
>> (1) *the protection afforded by an examiner is needed; and*
>>
>> (2) *the cost and expenses of an examiner would not be disproportionately higher than the value of the protection afforded.*

H.R. 8200, 95th Cong. § 1104(b) (Sept. 8, 1977) (emphasis added), *reprinted in* B

*Collier on Bankruptcy* App. Pt. 4(d) (16th ed. 2023); *see* Add. 02.

As is clear from the proposed, but rejected, language above, the bill

described in House Report 95-595 had no mandatory aspect whatsoever and had no

separate subsection regarding larger cases. Instead, it used the discretionary phrase

"the court *may* order the appointment of an examiner" and had two conjunctive

subsections that further clarified what factors the bankruptcy court should consider

when exercising its discretion.

Because the bankruptcy court relied on legislative history for the wrong

congressional proposal, its interpretation of section 1104(c)(2) went astray. The

legislative history of section 1104(c) confirms that the version finally enacted was

drafted expressly to require mandatory examiners in larger chapter 11 cases like

24

FTX's.[10]  By misinterpreting the statutory text, ignoring its structure, and relying

on the wrong legislative history, the bankruptcy court committed legal error.

**CONCLUSION**

For these reasons, the United States Trustee respectfully asks this Court to

reverse the order entered below.

---

[10] Any challenge that appellees might raise to the wisdom of Congress's policy decision is irrelevant to this appeal.  "It is not [the Court's] place to question whether Congress adopted the wisest or most workable policy, only to discern and apply the policy it did adopt."  *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1943–44 (2022).  If appellees believe that "good governance requires a different set of rules," they should direct those complaints to Congress.  *Id*.

Respectfully submitted,

ANDREW R. VARA
United States Trustee for Regions 3 & 9

April 6, 2023

By /s/ Benjamin A. Hackman
          BENJAMIN A. HACKMAN
          Trial Attorney

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
SUMI K. SAKATA
Trial Attorneys

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.:  (202) 307-1399
Fac.:  (202) 307-2397
frederick.g.hall@usdoj.gov
sumi.sakata@usdoj.gov

ANDREW R. VARA
United States Trustee
  for Regions 3 & 9
JOSEPH J. MCMAHON, JR.
Assistant United States Trustee
BENAJMIN A. HACKMAN
JULIET M. SARKESSIAN
Trial Attorneys

Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207,
  Lockbox 35
Wilmington, DE 19801
Tel.:  (302) 573-6491
Fac.:  (302) 573-6497
benjamin.a.hackman@usdoj.gov
juliet.m.sarkessian@usdoj.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing brief complies with the type-volume limitations set forth in Federal Bankruptcy Rule 8015(a)(7)(B) and this Court's Standing Order Regarding Briefing in All Cases in that the brief contains 5,836 words as counted by Microsoft Word and was prepared in 14-point Times New Roman font.

By <u>/s/ Benjamin A. Hackman</u>
BENJAMIN A. HACKMAN
Trial Attorney