# LEGISLATIVE HISTORY ADDENDUM

# INDEX

| Document | Page |
|---|---|
| Excerpt of H.R. 8200, 95th Cong. (Sept. 8, 1977), *reprinted in* B *Collier on Bankruptcy* App. Pt. 4(d) (16th ed. 2023) | Add. 01 – Add. 02 |
| Excerpt of H.R. Rep. No. 95-595 (Sept. 8, 1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 | Add. 03 – Add. 07 |
| Excerpt of S. 2266, 95th Cong. (Aug. 10, 1978), *reprinted in* C *Collier on Bankruptcy* App. Pt. 4(e) (16th ed. 2023) | Add. 08 – Add. 10 |
| Excerpt of S. Rep. No. 95-989 (July 14, 1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 | Add. 11 – Add. 14 |
| Excerpt of 124 Cong. Rec. H11,047 (1978), *reprinted in* D *Collier on Bankruptcy* App. Pt. 4(f)(i)(1)-(2) (16th ed. 2023) | Add. 15 – Add. 29 |
| Excerpt of 124 Cong. Rec. S17,403 (1978), *reprinted in* D *Collier on Bankruptcy* App. Pt. 4(f)(iii) (16th ed. 2023) | Add. 30 – Add. 41 |
| Excerpt of Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 | Add. 42 – Add. 45 |

## B Collier on Bankruptcy App. Pt. 4(d)

Collier on Bankruptcy, Sixteenth Edition  >  App. Pt. 4 Bankruptcy Reform Act of 1978  >  App. Pt. 4(d) H.R. 8200, 95th Cong., 1st Sess. (1977)

## App. Pt. 4(d) H.R. 8200, 95th Cong., 1st Sess. (1977)

### LEGISLATIVE HISTORY—PUB. L. NO. 95–598

### H.R. 8200, 95th Cong., 1st Sess., as reported by the House Committee on the Judiciary, September 8, 1977

This bill was reported favorably to the full House by the House Judiciary Committee on September 8, 1977. It contains all amendments adopted by the Judiciary Committee. It was the bill that was debated on the floor of the House of Representatives on October 27 and 28, 1977, and February 1, 1978. This is the bill to which the House Judiciary Committee Report, No. 95-595, refers.

### 95th CONGRESS, *1st SESSION*

### Union Calendar No. 311

### H.R. 8200

### [Report No. 95–595]

### IN THE HOUSE OF REPRESENTATIVES

### JULY 11, 1977

Mr. EDWARDS of California (for himself, Mr. BUTLER, Mr. SEIBERLING, Mr. DRINAN, Mr. VOLKMER, Mr. BEILENSON, and Mr. MCCLORY) introduced the following bill; which was referred to the Committee on the Judiciary

### SEPTEMBER 8, 1977

Reported with an amendment, committed to the Committee of the Whole House on the State of the Union, and ordered to be printed.

\* \* \*

### A BILL

### To establish a uniform Law on the subject of Bankruptcies.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

### [Pages 2-307 deleted.]

### TITLE I ENACTMENT OF TITLE 11 OF THE UNITED STATES CODE

(d) As soon as practicable after the appointment of a committee under section 1102 of this title, the trustee shall meet with such committee to transact such business as may be necessary and proper.

### § 1104. Appointment of trustee or examiner

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may order the appointment of a trustee only if—

(1) the protection afforded by a trustee is needed; and

(2) the costs and expenses of a trustee would not be disproportionately higher than the value of the protection afforded.

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, or gross mismanagement of the debtor of or by current or former management of the debtor, if—

(1) the protection afforded by an examiner is needed; and

(2) the costs and expenses of an examiner would not be disproportionately higher than the value of the protection afforded.

(c) If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person other than the United States trustee to serve as trustee or examiner, as the case may be, in the case.

### § 1105. Termination of trustee's appointment

At any time before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate, and operation of the debtor's business.

### § 1106. Duties of trustee and examiner

(a) A trustee shall—

(1) perform the duties of a trustee specified in sections 704(2), 704(4), 704(6), 704(7), and 704(8) of this title;

(2) if the debtor has not done so, file with the court, within the time fixed by the court, the list, schedule, and statement required under section 521(1) of this title;

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

**Add. 02**

H.R. REP. 95-595, H.R. Rep. No. 595, 95TH Cong., 1ST Sess. 1977, 1978 U.S.C.C.A.N. 5963, 1977 WL 9628 (Leg.Hist.)

P.L. 95-598, BANKRUPTCY REFORM ACT OF 1978

SEE PAGE 92 STAT. 2549

HOUSE REPORT (JUDICIARY COMMITTEE) NO. 95-595, SEPT. 8, 1977

(TO ACCOMPANY H.R. 8200)

SENATE REPORT (JUDICIARY COMMITTEE) NO. 95-989, JULY 14, 1978

(TO ACCOMPANY H.R.S. 2266)

DATES OF CONSIDERATION AND PASSAGE

HOUSE FEBRUARY 1, SEPTEMBER 28, OCTOBER 6, 1978

SENATE SEPTEMBER 7, 22, OCTOBER 5, 1978

THE HOUSE BILL WAS PASSED IN LIEU OF THE SENATE BILL AFTER AMENDING
ITS LANGUAGE TO CONTAIN MUCH OF THE TEXT OF THE SENATE BILL. THE
SENATE REPORT (THIS PAGE) AND THE HOUSE REPORT (P. 5963) ARE SET OUT.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED
MATERIAL. EACH COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

HOUSE REPORT NO. 95-595

SEPT. 8, 1977

**\*1   \*\*5963**  THE COMMITTEE ON THE JUDICIARY, TO WHOM WAS REFERRED THE BILL (H.R. 8200) TO
ESTABLISH A UNIFORM LAW ON THE SUBJECT OF BANKRUPTCIES, HAVING CONSIDERED THE SAME,
REPORT FAVORABLY THEREON WITH AN AMENDMENT AND RECOMMEND THAT THE BILL AS AMENDED
DO PASS. THE COMMITTEE AMENDMENT STRIKES OUT ALL AFTER THE ENACTING CLAUSE AND INSERTS
A NEW TEXT, WHICH APPEARS IN ITALIC TYPE IN THE REPORTED BILL.

THE AMENDMENT IS AN AMENDMENT IN THE NATURE OF A SUBSTITUTE FOR THE BILL, INCORPORATING
SIX SUBSTANTIVE AMENDMENTS ADOPTED BY THE COMMITTEE, AND NUMEROUS TECHNICAL, DRAFTING,
AND STYLE CHANGES TO THE BILL. A DETAILED DESCRIPTION OF THE SIX AMENDMENTS ADOPTED
DURING COMMITTEE DELIBERATIONS IS INCORPORATED INTO THE DESCRIPTION OF THE BILL CONTAINED
IN THIS REPORT, WHICH ADDRESSES ITSELF TO THE AMENDMENTS IN THE NATURE OF A SUBSTITUTE.
BRIEFLY SUMMARIZED, THEY ARE AS FOLLOWS:

THE FIRST AMENDMENT PROVIDES AN ALTERNATIVE TO THE UNITED STATES TRUSTEE IN THE
APPOINTMENT OF PRIVATE STANDING CHAPTER 13 TRUSTEES. THE AMENDMENT PERMITS UNITED STATES
TRUSTEES, WITH THE APPROVAL OF THE ATTORNEY GENERAL, TO EMPLOY PRIVATE STANDING TRUSTEES
OR PUBLIC ASSISTANT UNITED STATES TRUSTEES TO SERVE IN CHAPTER 13 CASES.

THE SECOND AMENDMENT LIMITS THE CONSUMER PRIORITY IN SEC. 507(5) OF PROPOSED TITLE 11 TO
$2,400 PER INDIVIDUAL.

THE THIRD AMENDMENT CHANGES SECTION 303(B) OF THE BILL TO DELETE THE REPEALER OF SECTION
4(E) OF THE PERISHABLE AGRICULTURAL COMMODITIES ACT AND REPLACE THE REPEALER WITH AN
AMENDMENT TO SECTION 4(E) OF THAT ACT TO ALLOW SUSPENSION OF A LICENSE IN THE EVENT OF
BANKRUPTCY IF THE CIRCUMSTANCES OF THE BANKRUPTCY WARRANT. THIS CHANGES CURRENT  **\*2**
LAW, WHICH DOES NOT SO LIMIT THE SECRETARY'S DISCRETION IN DETERMINING WHETHER TO SUSPEND
THE LICENSE IN THE EVENT OF BANKRUPTCY.

PERMIT THE S.E.C. TO APPLY TO A DISTRICT COURT AFTER THE APPROVAL OF A DISCLOSURE STATEMENT AND ARGUE THAT THE DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT DID NOT MEET THE REQUIREMENTS OF THE SECURITIES LAWS, EVEN THOUGH IT DID MEET THE REQUIREMENTS OF THE BANKRUPTCY LAWS. TWO COURTS SHOULD NOT BE SECOND GUESSING EACH OTHER IN THIS MANNER. THE SAFE HARBOR PROVISION WILL PROTECT THOSE PARTICIPATING IN GOOD FAITH IN A REORGANIZATION AND WOULD REINFORCE THE EFFECTIVENESS OF THE DISCLOSURE PROVISIONS.

IN SHORT, THE PUBLIC AND ALL CLASSES OF CREDITORS AND EQUITY SECURITY HOLDERS OF THE DEBTOR WILL BE PROTECTED WITHOUT THE TIME-CONSUMING PROCESS OF AN APPROVAL HEARING AND AN S.E.C. ADVISORY REPORT IN EVERY CASE.

## **6191 IV. WHO MAY PROPOSE A PLAN

CHAPTERS X AND XI OF CURRENT LAW PERMIT DIFFERENT ENTITIES TO PROPOSE PLANS OF REORGANIZATION. UNDER CHAPTER X, BECAUSE AN INDEPENDENT TRUSTEE HAS BEEN APPOINTED, THE DEBTOR HAS LOST CONTROL OF THE BUSINESS, AND THE FINANCIAL STANDARD RULES RESTRICT THE POSSIBILITIES FOR NEGOTIATION IN THE FORMULATION OF A PLAN, ANY PARTY IN INTEREST, INCLUDING THE TRUSTEE, CREDITORS, AND THE DEBTOR, MAY PROPOSE A PLAN. [872] THIS FEATURE HAS BEEN HEAVILY DISFAVORED BY DEBTORS WHEN CHOOSING A REORGANIZATION CHAPTER, BECAUSE THEY LOSE CONTROL OVER THE FUTURE OF THE ENTERPRISE. [873]

BY CONTRAST, CHAPTER XI GIVES THE DEBTOR THE EXCLUSIVE RIGHT TO PROPOSE A PLAN. [874] CREDITORS ARE EXCLUDED. THE EXCLUSIVE RIGHT GIVES THE DEBTOR UNDUE BARGAINING LEVERAGE, BECAUSE BY DELAY HE CAN FORCE A SETTLEMENT OUT OF OTHERWISE UNWILLING CREDITORS, AND THEY HAVE LITTLE RECOURSE EXCEPT TO MOVE FOR CONVERSION OF THE CASE TO CHAPTER X. [875] THAT IS CONTRARY TO THEIR INTERESTS AS IT IS TO THE DEBTOR'S, AND THUS IS RARELY DONE. THE DEBTOR IS IN FULL CONTROL, OFTEN TO THE UNFAIR DISADVANTAGE OF CREDITORS.

PROPOSED CHAPTER 11 RECOGNIZES THE NEED FOR THE DEBTOR TO REMAIN IN CONTROL TO SOME DEGREE, OR ELSE DEBTORS WILL AVOID THE REORGANIZATION PROVISIONS IN THE BILL UNTIL IT WOULD BE TOO LATE FOR THEM TO BE AN EFFECTIVE REMEDY. [876] AT THE SAME TIME, THE BILL RECOGNIZES THE LEGITIMATE INTERESTS **232 OF CREDITORS, WHOSE MONEY IS IN THE ENTERPRISE AS MUCH AS THE DEBTOR'S, TO HAVE A SAY IN THE FUTURE OF THE COMPANY. THE BILL GIVES THE DEBTOR AN EXCLUSIVE RIGHT TO PROPOSE A PLAN FOR 120 DAYS. [877] IN MOST CASES, 120 DAYS WILL GIVE THE DEBTOR ADEQUATE TIME TO NEGOTIATE A SETTLEMENT, WITHOUT UNDULY DELAYING CREDITORS. THE COURT IS GIVEN THE POWER, THOUGH, TO INCREASE OR REDUCE THE 120-DAY PERIOD DEPENDING ON THE CIRCUMSTANCES OF THE CASE. [878] FOR EXAMPLE, IF AN UNUSUALLY LARGE COMPANY WERE TO SEEK REORGANIZATION UNDER CHAPTER 11, THE COURT WOULD PROBABLY NEED TO EXTEND THE TIME IN ORDER TO ALLOW THE DEBTOR TO REACH AN AGREEMENT. IF, ON THE OTHER HAND, A DEBTOR DELAYED IN ARRIVING AT AN AGREEMENT, THE COURT COULD SHORTEN THE PERIOD AND PERMIT CREDITORS TO FORMULATE AND PROPOSE A REORGANIZATION PLAN. AGAIN, THE BILL ALLOWS THE FLEXIBILITY FOR INDIVIDUAL CASES THAT IS UNAVAILABLE TODAY.

## V. APPOINTMENT OF A TRUSTEE

THE DEVELOPMENT OF A STANDARD FOR THE APPOINTMENT OF A TRUSTEE OR EXAMINER IN A CHAPTER 11 REORGANIZATION CASE HAS BEEN ONE OF THE MORE DIFFICULT ISSUES IN THE BILL. THE

DIFFICULTY ARISES IN PART BECAUSE THERE IS NO COMPARABLE PROVISION IN CURRENT LAW TO RELY ON. INSTEAD, CURRENT LAW, IN CHAPTER X, REQUIRES THE APPOINTMENT OF A TRUSTEE IN EVERY CASE; CHAPTER XI NEVER PERMITS APPOINTMENT OF A TRUSTEE. THE STANDARD FOR DETERMINING WHETHER A CASE SHOULD BE IN CHAPTER X OR CHAPTER **6192 XI IS 'THE NEEDS TO BE SERVED.' [879] THAT STANDARD, HOWEVER, GOES TO THE ENTIRE SCOPE OF CHAPTERS X AND XI AND NOT MERELY TO THE ISSUES OF WHETHER A TRUSTEE SHOULD BE APPOINTED. IN ADDITION, IT HAS PRODUCED AN ENORMOUS VOLUME OF LITIGATION WITH NO REAL RESOLUTION OF THE CONTOURS OF THE STANDARD. APPLICATION HERE WOULD NOT IMPROVE THE SITUATION FROM CURRENT LAW, AND WOULD DEFEAT THE PURPOSE OF THE CONSOLIDATION OF THE CHAPTERS.

THE TWIN GOALS OF THE STANDARD FOR THE APPOINTMENT OF A TRUSTEE SHOULD BE PROTECTION OF THE PUBLIC INTEREST AND THE INTERESTS OF CREDITORS, AS CONTEMPLATED IN CURRENT CHAPTER X, AND FACILITATION OF A REORGANIZATION THAT WILL BENEFIT BOTH THE CREDITORS AND THE DEBTORS, AS CONTEMPLATED IN CURRENT CHAPTER XI. BALANCING THE GOALS IS A DIFFICULT PROCESS, AND REQUIRES CONSIDERATION OF MANY FACTORS. CURRENT CHAPTER X WAS ENACTED AT A TIME WHEN THERE WAS WIDE-SPREAD ABUSE OF THE REORGANIZATION PROCESS, BOTH UNDER FORMER SECTION 77B AND UNDER EQUITY RECEIVERSHIPS AND OUT-OF-COURT WORK-OUTS. [880] FREQUENTLY, BUSINESSES NEEDED REORGANIZATION BECAUSE OF THE FRAUD OF DISHONESTY OF MANAGEMENT, AND THE OVERREACHING OF SO-CALLED PROTECTIVE COMMITTEES, WHICH WERE FACADES FOR CERTAIN CREDITORS, OSTENSIBLY REPRESENTING ALL CREDITORS, TO OBTAIN THE GREATEST PERSONAL ADVANTAGE. CONGRESS RESPONDED IN 1938 BY REQUIRING AN INDEPENDENT TRUSTEE IN ANY CASE WHERE THE INDEBTEDNESS OF THE DEBTOR EXCEEDED $250,000, WHICH WAS FELT TO BE ESSENTIAL TO THE PROTECTION OF THE PUBLIC INTEREST AND THE INTERESTS OF *233 CREDITORS. AT THE SAME TIME, FOR THE QUICK ARRANGEMENT PROCEDURE OF CHAPTER XI, DESIGNED, FOR SMALL BUSINESSES, THERE WAS FELT TO BE A NEED FOR A TRUSTEE TO INVESTIGATE THE AFFAIRS OF THE DEBTOR AND TO RUN THE BUSINESS DURING THE REORGANIZATION.

REORGANIZATION LAW AND PRACTICE HAS CHANGED SUBSTANTIALLY IN THE PAST 40 YEARS, HOWEVER, AND THE ABSOLUTE NECESSITY FOR A TRUSTEE IN EVERY CASE HAS CEASED. THE SERIOUS ABUSES OF THE 1930'S HAVE LARGELY BEEN CURED BY THE ADOPTION OF THE SECURITIES LAWS, AND THEIR VIGOROUS ENFORCEMENT BY THE SECURITIES AND EXCHANGE COMMISSION. [881] MOST OFTEN TODAY, THE NEED FOR REORGANIZATION RESULTS FROM BUSINESS CYCLES OR HONEST MISMANAGEMENT OF THE COMPANY.

THE PUBLIC AND THE CREDITORS WILL NOT NECESSARILY BE HARMED IF THE DEBTOR IS CONTINUED IN POSSESSION IN A REORGANIZATION CASE, AS HAS BEEN DEMONSTRATED UNDER CURRENT CHAPTER XI. IN FACT, VERY OFTEN THE CREDITORS WILL BE BENEFITED BY CONTINUATION OF THE DEBTOR IN POSSESSION, BOTH BECAUSE THE EXPENSE OF A TRUSTEE WILL NOT BE REQUIRED, AND THE DEBTOR, WHO IS FAMILIAR WITH HIS BUSINESS, WILL BE BETTER ABLE TO OPERATE IT DURING THE REORGANIZATION CASE. A TRUSTEE FREQUENTLY HAS TO TAKE TIME TO FAMILIARIZE HIMSELF WITH THE BUSINESS BEFORE THE REORGANIZATION CAN GET UNDER WAY. THUS, A DEBTOR CONTINUED IN POSSESSION MAY LEAD TO A GREATER LIKELIHOOD OF SUCCESS IN THE REORGANIZATION. MOREOVER, THE NEED FOR REORGANIZATION OF A PUBLIC COMPANY TODAY OFTEN RESULTS FROM SIMPLE BUSINESS REVERSES, NOT FROM ANY FRAUD, DISHONESTY, OR GROSS MISMANAGEMENT ON THE PART OF THE DEBTOR'S MANAGEMENT. EVEN IF THE CAUSE IS FRAUD OR DISHONESTY, VERY FREQUENTLY THE FRAUDULENT MANAGEMENT WILL HAVE BEEN OUSTED SHORTLY BEFORE THE FILING OF THE REORGANIZATION **6193 CASE, AND THE NEW MANAGEMENT, VERY CAPABLE OF RUNNING THE BUSINESS, SHOULD NOT BE OUSTED BY A TRUSTEE BECAUSE OF THE SINS OF FORMER MANAGEMENT. NEVERTHELESS, THERE ARE CASES WHERE A TRUSTEE IS NEEDED, BECAUSE CASES OF FRAUD OR

GROSS MISMANAGEMENT DO ARISE. THE POLICY THAT HAS BEEN FOLLOWED GENERALLY IN THE CONSOLIDATION OF THE TWO REORGANIZATION CHAPTERS HAS BEEN FLEXIBILITY, IN PLACE OF THE ABSOLUTE RULES NOW CONTAINED IN CHAPTER X, AND DETERMINATION OF THE NEEDS OF EACH CASE ON THE FACTS OF THE CASE. THE CURRENT STATE OF REORGANIZATION SITUATIONS SUGGESTS THAT THAT SAME NEED FOR FLEXIBILITY AND CASE-BY-CASE DETERMINATION EXISTS IN THE DEVELOPMENT OF THE STANDARD FOR THE APPOINTMENT OF A TRUSTEE.

THE OTHER GOAL, FACILITATION OF THE REORGANIZATION TO THE BENEFIT OF THE DEBTOR AND THE CREDITORS, MILITATES AGAINST THE APPOINTMENT OF A TRUSTEE. ONE OF THE MAIN REASONS THAT DEBTORS USE CHAPTER XI SO MUCH MORE FREQUENTLY THAN CHAPTER X IS BECAUSE THEY KNOW THEY WILL NOT BE OUSTED OF POSSESSION AND OPERATION OF THE BUSINESS. [882] IN THAT ISSUE LIES MUCH OF THE CONTROVERSY SURROUNDING CONVERSION OF A CASE FROM CHAPTER XI TO CHAPTER X. DEBTORS' LAWYERS THAT PARTICIPATED IN THE DEVELOPMENT OF A STANDARD FOR THE APPOINTMENT OF A TRUSTEE WERE ADAMANT THAT A STANDARD THAT LED TO TOO FREQUENT APPOINTMENT WOULD PREVENT DEBTORS FROM SEEKING RELIEF UNDER THE REORGANIZATION CHAPTER, AND WOULD LEAVE THE CHAPTER LARGELY UNUSED EXCEPT IN EXTREME CASES. ONE OF THE PROBLEMS **234** THAT THE BANKRUPTCY COMMISSION RECOGNIZED IN CURRENT BANKRUPTCY AND REORGANIZATION PRACTICE IS THAT DEBTORS TOO OFTEN WAIT TOO LONG TO SEEK BANKRUPTCY RELIEF. [883] TOO FREQUENT APPOINTMENT OF A TRUSTEE WOULD EXACERBATE THAT PROBLEM, TO THE DETRIMENT OF BOTH DEBTORS AND THEIR CREDITORS.

THUS, IN CONSOLIDATING THE CHAPTERS, THE BILL ADOPTS THE FLEXIBLE APPROACH OF LEAVING THE DEBTOR IN POSSESSION OF THE BUSINESS UNLESS A REQUEST IS MADE FOR THE APPOINTMENT OF A TRUSTEE. THE BILL MAKES NO DISTINCTION IN PROCEDURE BETWEEN CASES IN WHICH PUBLIC INVESTORS ARE INVOLVED AND OTHER CASES. INSTEAD, THE COURT WILL HOLD A HEARING TO DETERMINE THE NEED FOR A TRUSTEE IN ANY CASE IN WHICH A PARTY IN INTEREST, THE UNITED STATES TRUSTEE, AN INDENTURE TRUSTEE, OR THE S.E.C. REQUESTS APPOINTMENT OF A TRUSTEE. [884] THE STANDARD PROVIDED IN THE BILL DIRECTS THE COURT TO ORDER APPOINTMENT OF A TRUSTEE ONLY IF THE PROTECTION AFFORDED BY A TRUSTEE IS NEEDED AND THE COSTS AND EXPENSES OF A TRUSTEE WOULD NOT BE DISPROPORTIONATELY HIGHER THAN THE PROTECTION AFFORDED. THE STANDARD IS NOT INTENDED TO BE A PRECISE COST/BENEFIT STANDARD. IT IS INTENDED TO REQUIRE THE COURT TO HAVE DUE REGARD FOR THE COSTS AND EXPENSES OF A TRUSTEE. IT MAY BE DIFFICULT NOW TO DETERMINE THE PRECISE CONTOURS OF THE STANDARD, BECAUSE IN ANY PARTICULAR CASE, THE PROJECTION OF THE COST OF AND THE PROTECTION AFFORDED BY A TRUSTEE WILL BE UNCERTAIN. HOWEVER, A CASE LAW WILL QUICKLY DEVELOP DEFINING THE CIRCUMSTANCES IN WHICH A TRUSTEE SHOULD BE APPOINTED.

THE COURT MAY ALSO ADOPT THE LESS RESTRICTIVE ALTERNATIVE OF ORDERING THE APPOINTMENT OF AN EXAMINER TO INVESTIGATE THE AFFAIRS OF THE DEBTOR. [885] AN EXAMINER MIGHT BE APPROPRIATE INSTEAD OF A TRUSTEE, FOR EXAMPLE, WHERE CURRENT MANAGEMENT HAS RECENTLY REPLACED A FORMER FRAUDULENT MANAGEMENT, OR WHERE CONTINUANCE OF MANAGEMENT IS **6194** ESSENTIAL TO THE CONTINUED OPERATION OF THE BUSINESS DURING THE REORGANIZATION, EVEN THOUGH THERE MAY BE SOME SMALL SUSPICION OF WRONG-DOING ON THE PART OF MANAGEMENT. THE STANDARDS FOR DETERMINING WHETHER TO ORDER THE APPOINTMENT OF AN EXAMINER ARE THE SAME AS THOSE FOR APPOINTMENT OF A TRUSTEE: THE PROTECTION MUST BE NEEDED AND THE COST NOT DISPROPORTIONATELY HIGH. [886]

IF THE COURT DETERMINES THAT A TRUSTEE IS TO BE APPOINTED IN THE CASE, THE BILL SEPARATES THE COURT FROM THE APPOINTMENT PROCESS. THE UNITED STATES TRUSTEE WILL MAKE THE APPOINTMENT, AFTER CONSULTATION WITH PARTIES IN INTEREST AND SUBJECT TO APPROVAL BY THE COURT. [887] THE COURT'S APPROVAL SHOULD IN MOST CASES BE PERFUNCTORY, AND IS AVAILABLE MAINLY AS A SAFEGUARD AGAINST IMPROPRIETY ON THE PART OF THE UNITED STATES TRUSTEE. UNDER CURRENT CHAPTER X, THE COURT APPOINTS THE TRUSTEE. THE COURT'S INVOLVEMENT IN THE PROCESS NOT ONLY APPEARS TO BE IMPROPER WHEN THE COURT MUST LATER RULE IN LITIGATION BETWEEN THE COURT'S APPOINTEE (THE TRUSTEE) AND AN ADVERSE PARTY, BUT HAD ALSO LED TO CRONYISM IN SOME INSTANCES, AND UNQUALIFIED OR INCOMPETENT TRUSTEES. AGAIN, THE SEPARATION OF THE COURT FROM THE ADMINISTRATION OF THE CASE SHOULD LEAD TO FAIRER AND MORE EFFICIENT ADMINISTRATION. [888]

**\*235** VI. CREDITORS' COMMITTEES

MUCH OF THE NEGOTIATION THAT OCCURS BETWEEN CREDITORS AND THE DEBTOR IN A REORGANIZATION CASE IS CARRIED ON THROUGH COMMITTEES OF CREDITORS. THESE COMMITTEES ARE DESIGNED TO DEAL WITH THE DEBTOR IN A MORE MANAGEABLE WAY THAN THE ENTIRE BODY OF CREDITORS COULD. THEY ARE REPRESENTATIVE BODIES THAT MUST SPEAK FOR GROUPS OF CREDITORS WITH SIMILAR INTERESTS. UNDER CURRENT LAW, CREDITORS' COMMITTEES ARE MORE ACTIVE IN CHAPTER XI ARRANGEMENT CASES THAN IN CHAPTER X REORGANIZATIONS. THE REASONS ARE TWO. FIRST, THE TRUSTEE IS THE PRIME AGENT IN FORMULATING A PLAN UNDER CHAPTER X, AND IN OPERATING THE BUSINESS OF THE DEBTOR AND MANAGING THE CASE. THERE IS LESS NEED FOR AN ACTIVE COMMITTEE WHEN THE STATUTE DIRECTS THAT ALL ACTIVITIES IN THE CASE ARE UNDER THE SOLE CONTROL OF ONE INDIVIDUAL. IN A CHAPTER XI CASE, HOWEVER, THE DEBTOR REMAINS IN POSSESSION AND CONTROL, AND MUST WORK WITH ITS CREDITORS TO FORMULATE A PLAN AND CONDUCT THE BUSINESS. THE NEED FOR COOPERATION IS GREATER, AND THE NEED FOR NEGOTIATION MORE PRONOUNCED. MORE IMPORTANT, HOWEVER, COMMITTEES ARE USUALLY MORE ACTIVE IN CHAPTER XI CASES BECAUSE THE LAW PROVIDES FOR COMPENSATION FOR A COUNSEL TO THE COMMITTEE AT THE EXPENSE OF THE ESTATE, EVEN IF NO PLAN IS CONFIRMED IN THE CASE. [889] THE SAME IS NOT TRUE IN CHAPTER X. A COUNSEL FOR A CHAPTER X CREDITORS' COMMITTEE WILL BE COMPENSATED FROM THE ESTATE ONLY IF THE COMMITTEE PERFORMS SERVICES THAT ARE BENEFICIAL IN THE ADMINISTRATION OF THE CASE. [890]

THE DIFFERENCE IN THE PURPOSE AND USE OF COMMITTEES IN THE TWO CHAPTERS HAS ALSO LED TO DIFFERENCES IN PROCEDURES FOR SELECTING COMMITTEES AND IN THEIR MEMBERSHIP. UNDER CHAPTER XI, THERE IS ONLY ONE OFFICIAL COMMITTEE. [891] BECAUSE A PLAN UNDER CHAPTER XI MAY AFFECT ONLY UNSECURED CREDITORS, [892] MEMBERSHIP ON THE COMMITTEE IS RESTRICTED TO **\*\*6195** UNSECURED CREDITORS. SECURED CREDITORS MAY, HOWEVER, SERVE AS NONVOTING MEMBERS OF THE COMMITTEE. COMMITTEES ARE USUALLY ELECTED BY THE UNSECURED CREDITORS, THOUGH IF THERE IS NO ELECTION, THE COURT MAY APPOINT A COMMITTEE IF IT WOULD BE IN THE BEST INTEREST OF THE ESTATE. [893] UNDER CHAPTER X, THERE IS NO OFFICIAL COMMITTEE. COMMITTEES ARE CREATED INFORMALLY OUT-OF-COURT BY THOSE CREDITORS OR EQUITY SECURITY HOLDERS THAT ARE INTERESTED. THERE ARE FREQUENTLY SEVERAL COMMITTEES WITH DISCRETE INTERESTS THAT PURSUE THE INTERESTS OF THOSE REPRESENTED BY THE COMMITTEE IN DEALINGS WITH THE TRUSTEE.

UNDER THE CONSOLIDATED REORGANIZATION CHAPTER, THE PROCEDURE WILL BE A COMBINATION OF FEATURES OF CURRENT CHAPTERS X AND XI. THERE WILL BE AT LEAST ONE COMMITTEE IN EACH

## C Collier on Bankruptcy App. Pt. 4(e)

Collier on Bankruptcy, Sixteenth Edition  >  App. Pt. 4 Bankruptcy Reform Act of 1978  >  App. Pt. 4(e) S.2266, 95th Cong., 2d Sess., as reported by the Senate Judiciary Committee and the Senate Finance Committee (1978)

## App. Pt. 4(e) S.2266, 95th Cong., 2d Sess., as reported by the Senate Judiciary Committee and the Senate Finance Committee (1978)

### LEGISLATIVE HISTORY—PUB. L. NO. 95–598

### S.2266, 95th Cong., 2d Sess., as reported by the Senate Judiciary Committee and the Senate Finance Committee (1978)

The full Senate considered this bill on September 7, 1978. It  shows, in light-face italics, the bill reported by the Senate Judiciary Committee. The amendments made by the Finance Committee to the Judiciary Committee bill are shown as follows: Matter deleted by the Finance Committee is enclosed in black brackets,  matter inserted by the Finance Committee is shown in bold-face italics.

The debate in the Senate was on this bill. All amendments offered during the debate referred to the page and line numbers of this bill.

### 95TH CONGRESS, 2D SESSION

### S. 2266

### Calendar No. 1026

### [Report No. 95–989]

### [Report No. 95–1106]

### IN THE SENATE OF THE UNITED STATES
#### OCTOBER 31 (legislative day,  OCTOBER 29), 1977

Mr. DECONCINI (for himself and Mr. WALLOP) introduced the following bill; which was read twice and referred to the Committee on the Judiciary and if and when reported to the Committee on Finance for not to exceed thirty days to consider sections 346, 505, 507, 523, 728, 1146, and 1331

#### JULY 14 (legislative day, MAY 17), 1978

Reported by Mr. DECONCINI, with an amendment and referred to the Committee on Finance  for not to exceed thirty days to consider sections 346, 505, 507, 523, 728, 1146, and 1331

#### [Strike out all after the enacting clause and insert the part printed in italic]

#### AUGUST 10 (legislative day, MAY 17), 1978

**Add. 08**

C Collier on Bankruptcy App. Pt. 4(e)

**(C)** *commencement of distribution under the plan.*

**(3)** *"public company" shall mean a debtor who, within twelve months prior to the  filing of a petition for relief under this chapter, had outstanding liabilities of $5,000,000 or more, exclusive of liabilities for goods, services, or taxes and not less than 1,000 security holders.*

### § 1102. Creditors' and equity security  holders' committees

**(a)** *At the meeting under section 341(a) of this title the creditors that would be able to vote for a trustee under section 702(a) of this title were this case under chapter VII of this title, may elect a committee of not fewer  than three, but not more than eleven creditors, each of whom holds an allowable unsecured claim against the debtor.*

**(b)** *The court may appoint additional committees of creditors including secured creditors or of equity security holders as it may determine.*

**(c)** *This section shall not apply in case of a public company.*

### § 1103. Powers and duties of committees

**(a)** *At a scheduled meeting of  a committee appointed or elected under section 1102 of this title, at which a majority of the members of such committee are present, and subject to the approval of the court, such committee may select and authorize the employment by such committee of one  or more attorneys, accountants, or other agents, to represent or perform services for such committee.*

**(b)** *A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any  other entity in connection with the case.*

**(c)** *A committee appointed or elected under section 1102 of this title may—*

**(1)** *consult with the trustee or debtor in possession concerning the administration of the case;*

**(2)** *if no trustee or  examiner is appointed and if authorized by the court investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other  matter relevant to the case or to the formulation of a plan;*

**(3)** *participate in the formulation of a plan, advise those represented by such committee of such commettee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan;*

**(4)** *advise the court of the need for the appointment of a trustee under section 1104(b) if a trustee has not previously been appointed under this chapter in the case; and*

**(5)** *perform such other services as are in  the interest of those represented.*

**(d)** *As soon as practicable after the appointment or election of a committee under section 1102 of this title, the trustee shall meet with such committee to transact such business as may be necessary and proper.*

### § 1104. Appointment of trustee or examiner

**(a)** *In the case of a public company, the court, within ten days after the entry of an order for relief under this chapter, shall appoint a disinterested trustee. In the event of a vacancy a  successor shall be appointed by the court as soon as practicable. Section 1105 shall not apply to an appointment under this subsection.*

**Add. 09**

C Collier on Bankruptcy App. Pt. 4(e)

**(b)** *In the case of a nonpublic company, at any time after the commencement of the case but before confirmation of a plan, on request of a party in interest and after notice and a hearing the court for cause shown may order the election or if the creditors do not elect a trustee the court may appoint a trustee. The court shall order the election, or if the creditors do not elect, the appointment of a trustee if such appointment would be in the interests of the estate and security holders. The creditor election permitted by this subsection shall be in the manner prescribed by and subject to the provisions of sections 702(a), 702(b), and 702(c) of this title.*

**(c)** *If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest and after notice and a hearing, the court for cause shown may order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, or gross mismanagement of the debtor of or by current or former management of the debtor. The court shall order the appointment of an examiner if such appointment would serve the interests of the estate and security holders.*

**(d)** *If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the court, after consultation with parties in interest, shall appoint one disinterested person to serve as trustee or examiner, as the case may be, in the case.*

### § 1105. Termination of trustee's appointment

*At any time before confirmation of a plan, on request of a party in interest and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate, and operation of the debtor's business.*

### § 1106. Duties of trustee and examiner

**(a)** *A trustee shall—*

**(1)** *perform the duties of a trustee specified in sections 704(2), 704(4), 704(6), 704(7), 704(8), and 704(9) of this title;*

**(2)** *if the debtor has not done so, file with the court within the time fixed by the court, the list, schedule, and statement required under section 521(1) of this title;*

**(3)** *except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;*

**(4)** *as soon as practicable—*

**(A)** *file with the court a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and*

**(B)** *transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to any such other entity as the court designates;*

**Add. 10**

S. REP. 95-989, S. Rep. No. 989, 95TH Cong., 2ND Sess. 1978, 1978 U.S.C.C.A.N. 5787, 1978 WL 8531 (Leg.Hist.)

**\*\*5787** P.L. 95-598, BANKRUPTCY REFORM ACT OF 1978

SEE PAGE 92 STAT. 2549

HOUSE REPORT (JUDICIARY COMMITTEE) NO. 95-595, SEPT. 8, 1977

(TO ACCOMPANY H.R. 8200)

SENATE REPORT (JUDICIARY COMMITTEE) NO. 95-989, JULY 14, 1978

(TO ACCOMPANY H.R.S. 2266)

DATES OF CONSIDERATION AND PASSAGE

HOUSE FEBRUARY 1, SEPTEMBER 28, OCTOBER 6, 1978

SENATE SEPTEMBER 7, 22, OCTOBER 5, 1978

THE HOUSE BILL WAS PASSED IN LIEU OF THE SENATE BILL AFTER AMENDING

ITS LANGUAGE TO COMTAIN MUCH OF THE TEXT OF THE SENATE BILL. THE

SENATE REPORT (THIS PAGE) AND THE HOUSE REPORT (P. 5963) ARE SET OUT.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED
MATERIAL. EACH COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

SENATE REPORT NO. 95-989

JULY 14, 1978

**\*1** THE COMMITTEE ON THE JUDICIARY, TO WHICH WAS REFERRED THE BILL, S. 2266, TO ESTABLISH A UNIFORM LAW ON THE SUBJECT OF BANKRUPTCIES , HAVING CONSIDERED THE SAME, REPORTS FAVORABLY THEREON AND RECOMMENDS THAT THE BILL IN THE NATURE OF A SUBSTITUTE DO PASS. THE COMMITTEE AMENDMENT STRIKES OUT ALL AFTER THE ENACTING CLAUSE AND INSERTS A NEW TEXT, WHICH APPEARS IN ITALIC TYPE IN THE REPORTED BILL.

PURPOSE OF THE BILL

THE PURPOSE OF THE BILL IS TO MODERNIZE THE BANKRUPTCY LAW BY CODIFYING A NEW TITLE 11 THAT WILL EMBODY THE SUBSTANTIVE LAW OF BANKRUPTCY AND TO MAKE EXTENSIVE AMENDMENTS TO TITLE 28,JUDICIARY AND JUDICIAL PROCEDURE, THAT WILL ENCOMPASS THE STRUCTURE OF THE REVISED BANKRUPTCY COURTS.

PURPOSE OF THE AMENDMENT

THE AMENDMENT IN THE NATURE OF A SUBSTITUTE REFLECTS, TESTIMONY RECEIVED BY THE COMMITTEE AND THE CHANGES THAT RESULTED. THE PURPOSE OF THE REVISED BILL REMAINS TO MODERNIZE THE BANKRUPTCY LAW.

INTRODUCTION

IN 1970, CONGRESS CREATED THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES TO STUDY AND RECOMMEND CHANGES IN BANKRUPTCY LAWS. THE COMMISSION BECAME OPERATIONAL IN JUNE 1971, AND FILED ITS FINAL REPORT WITH CONGRESS ON JULY 30, 1973. ITS REPORT WAS IN TWO PARTS. PART I CONTAINED THE COMMISSION'S FINDINGS AND RECOMMENDATIONS. **\*2** **\*\*5788** PART II CONTAINED A DRAFT OF A BILL TO IMPLEMENT THOSE RECOMMENDATIONS. SENATOR QUENTIN BURDICK, CHAIRMAN OF THE SUBCOMMITTEE ON IMPROVEMENTS IN JUDICIAL MACHINERY, AND A MEMBER OF THE

SUPRA, AT P. 64, AND IS INTENDED TO PROVIDE MORE OF A RETURN TO CREDITORS THAN THE LIQUIDATION VALUE IF THE CITY'S ASSETS COULD BE LIQUIDATED LIKE THOSE OF A PRIVATE CORPORATION.

SECTION 947. EFFECT OF CONFIRMATION

SUBSECTION (A) MAKES THE PROVISIONS OF A CONFIRMED PLAN BINDING ON THE DEBTOR AND CREDITORS. IT IS DERIVED FROM SECTION 95(A) OF CHAPTER 9.

SUBSECTIONS (B) AND (C) PROVIDE FOR THE DISCHARGE OF A MUNICIPALITY. THE DISCHARGE IS ESSENTIALLY THE SAME AS THAT GRANTED UNDER SECTION 95(B) OF THE BANKRUPTCY ACT.

SECTION 948. CONTINUING JURISDICTION

SECTION 948 PERMITS THE COURT TO RETAIN JURISDICTION OVER THE CASE TO ENSURE SUCCESSFUL EXECUTION OF THE PLAN. THE PROVISION IS THE SAME AS THAT FOUND IN SECTION 96(E) OF CHAPTER 9 OF THE PRESENT ACT.

SECTION 949. EFFECT OF EXCHANGE OF SECURITIES BEFORE THE DATE OF FILING OF THE PETITION

THIS SECTION, WHICH FOLLOWS SECTION 97 OF CURRENT LAW, PERMITS AN EXCHANGE OF A SECURITY BEFORE THE CASE IS FILED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN IF THE EXCHANGE WAS UNDER A PROPOSAL THAT LATER BECOMES THE PLAN.

SECTION 950. UNCONSTITUTIONALITY, REVIVAL

THIS SECTION ENSURES THE EXISTENCE OF A MUNICIPAL DEBT ADJUSTMENT CHAPTER OF CHAPTER 9 IS FOUND UNCONSTITUTIONAL.

**5900   *114  SUBCHAPTER 1-- OFFICERS AND ADMINISTRATION

SECTION 1101. DEFINITIONS

THIS SECTION CONTAINS DEFINITIONS OF THREE TERMS THAT ARE USED IN CHAPTER 11. PARAGRAPH (1) DEFINES DEBTOR IN POSSESSION TO MEAN THE DEBTOR, EXCEPT WHEN A TRUSTEE WHO HAS QUALIFIED IS SERVING IN THE CASE.

PARAGRAPH (2), DERIVED FROM SECTION 229A OF CURRENT LAW, DEFINES SUBSTANTIAL CONSUMMATION. SUBSTANTIAL CONSUMMATION OF A PLAN OCCURS WHEN TRANSFER OF ALL OR SUBSTANTIALLY ALL OF THE PROPERTY PROPOSED BY THE PLAN TO BE TRANSFERRED IS ACTUALLY TRANSFERRED; WHEN THE DEBTOR (OR ITS SUCCESSOR) HAS ASSUMED THE BUSINESS OF THE DEBTOR OR THE MANAGEMENT OF ALL OR SUBSTANTIALLY ALL OF THE PROPERTY DEALT WITH BY THE PLAN; AND WHEN DISTRIBUTION UNDER THE PLAN HAS COMMENCED.

PARAGRAPH (3) DEFINES FOR PURPOSES OF CHAPTER 11 A PUBLIC COMPANY TO MEAN 'A DEBTOR WHO, WITHIN 12 MONTHS PRIOR TO THE FILING OF A PETITION FOR RELIEF UNDER THIS CHAPTER, HAD OUTSTANDING LIABILITIES OF $5 MILLION OR MORE, EXCLUSIVE OF LIABILITIES FOR GOODS, SERVICES,

OR TAXES AND NOT LESS THAN 1,000 SECURITY HOLDERS.' THERE ARE, AS NOTED, SPECIAL SAFEGUARDS FOR PUBLIC INVESTORS RELATED TO THE REORGANIZATION OF A PUBLIC COMPANY, AS SO DEFINED.

BOTH REQUIREMENTS MUST BE MET: LIABILITIES, EXCLUDING TAX OBLIGATIONS AND TRADE LIABILITIES, MUST BE $5 MILLION OR MORE; AND (2) THE NUMBER OF HOLDERS OF SECURITIES, DEBT OR EQUITY, OR BOTH, MUST BE NOT LESS THAN 1,000. THE AMOUNT AND NUMBER ARE TO BE DETERMINED AS OF ANY TIME WITHIN 12 MONTHS PRIOR TO THE FILING OF THE PETITION FOR REORGANIZATION.

SECTION 1102. CREDITORS' AND EQUITY SECURITY HOLDERS' COMMITTEES

THIS SECTION PROVIDES FOR THE ELECTION AND APPOINTMENT OF COMMITTEES. SUBSECTION (C) PROVIDES THAT THIS SECTION DOES NOT APPLY IN CASE OF A PUBLIC COMPANY, AS TO WHICH A TRUSTEE, APPOINTED UNDER SECTION 1104(A) WILL HAVE RESPONSIBILITY TO ADMINISTER THE ESTATE AND TO FORMULATE A PLAN AS PROVIDED IN SECTION 1106(A).

THERE IS NO NEED FOR THE ELECTION OR APPOINTMENT OF COMMITTEES FOR WHICH THE APPOINTMENT OF A TRUSTEE IS MANDATORY. IN THE CASE OF A PUBLIC COMPANY THERE ARE LIKELY TO BE SEVERAL COMMITTEES, EACH REPRESENTING A DIFFERENT CLASS OF SECURITY HOLDERS AND SEEKING AUTHORITY TO RETAIN ACCOUNTANTS, LAWYERS, AND OTHER EXPERTS, WHO WILL EXPECT TO BE PAID. IF IN THE CASE OF A PUBLIC COMPANY CREDITORS OR STOCKHOLDERS WISH TO ORGANIZE COMMITTEES, THEY MAY DO SO, AS AUTHORIZED UNDER SECTION 1109(A). COMPENSATION AND REIMBURSEMENT WILL BE ALLOWED FOR CONTRIBUTIONS TO THE REORGANIZATION PURSUANT TO SECTION 503(B)(3) AND (4).

SECTION 1103. POWERS AND DUTIES OF COMMITTEES

THIS SECTION DEFINES THE POWERS AND DUTIES OF A COMMITTEE ELECTED OR APPOINTED UNDER SECTION 1102.

UNDER SUBSECTION (A) THE COMMITTEE MAY, IF AUTHORIZED BY THE COURT, EMPLOY ONE OR MORE ATTORNEYS, ACCOUNTANTS, OR OTHER AGENTS TO REPRESENT OR PERFORM SERVICES FOR THE COMMITTEE. NORMALLY ONE ATTORNEY SHOULD SUFFICE; MORE THAN ONE MAY BE AUTHORIZED FOR GOOD CAUSE. THE SAME CONSIDERATIONS APPLY TO THE SERVICES OF OTHERS, IF THE NEED FOR ANY AT ALL IS DEMONSTRATED.

**5901  *115  UNDER SUBSECTIONS (C) AND (D) THE COMMITTEE, LIKE ANY PARTY IN INTEREST, MAY CONFER WITH THE TRUSTEE OR DEBTOR REGARDING THE ADMINISTRATION OF THE ESTATE; MAY ADVISE THE COURT ON THE NEED FOR A TRUSTEE UNDER SECTION 1104(B). THE COMMITTEE MAY INVESTIGATE MATTERS SPECIFIED IN PARAGRAPH (2) OF SUBSECTION (C), BUT ONLY IF AUTHORIZED BY THE COURT AND IF NO TRUSTEE OR EXAMINER IS APPOINTED.

SECTION 1104. APPOINTMENT OF TRUSTEE OR EXAMINER

SUBSECTION (A) PROVIDES FOR THE MANDATORY APPOINTMENT OF A DISINTERESTED TRUSTEE IN THE CASE OF A PUBLIC COMPANY, AS DEFINED IN SECTION 1101(3), WITHIN 10 DAYS OF THE ORDER FOR RELIEF, OR OF A SUCCESSOR, IN THE EVENT OF A VACANCY, AS SOON AS PRACTICABLE.

SECTION 156 OF CHAPTER X (11 U.S.C. 516) REQUIRES THE APPOINTMENT OF A DISINTERESTED TRUSTEE IF THE DEBTOR'S LIABILITIES ARE $250,000 OR OVER. SECTION 1104(A) MARKS A SUBSTANTIAL CHANGE. THE APPOINTMENT OF A TRUSTEE IS MANDATORY ONLY FOR A PUBLIC COMPANY, WHICH UNDER SECTION 1101(3), HAS $5 MILLION IN LIABILITIES, EXCLUDING TAX AND TRADE OBLIGATIONS, AND 1,000 SECURITY HOLDERS. IN VIEW OF PAST EXPERIENCE, CASES INVOLVING PUBLIC COMPANIES WILL UNDER NORMAL CIRCUMSTANCES PROBABLY BE RELATIVELY FEW IN NUMBER BUT OF VAST IMPORTANCE IN TERMS OF PUBLIC INVESTOR INTEREST.

IN CASE OF A NONPUBLIC COMPANY, THE APPOINTMENT OR ELECTION OF A TRUSTEE IS DISCRETIONARY IF THE INTERESTS OF THE ESTATE AND ITS SECURITY HOLDERS WOULD BE SERVED THEREBY. A TEST BASED ON PROBABLE COSTS AND BENEFITS OF A TRUSTEESHIP IS NOT PRACTICAL. THE APPOINTMENT MAY BE MADE AT ANY TIME PRIOR TO CONFIRMATION OF THE PLAN.

IN CASE OF A NONPUBLIC COMPANY, IF NO TRUSTEE IS APPOINTED, THE COURT MAY UNDER SUBSECTION (C) APPOINT AN EXAMINER, IF THE APPOINTMENT WOULD SERVE THE INTERESTS OF THE ESTATE AND SECURITY HOLDERS. THE PURPOSE OF HIS APPOINTMENT IS SPECIFIED IN SECTION 1106(B).

SECTION 1105. TERMINATION OF TRUSTEE'S APPOINTMENT

THIS SECTION AUTHORIZES THE COURT TO TERMINATE THE TRUSTEE'S APPOINTMENT AND TO RESTORE THE DEBTOR TO POSSESSION AND MANAGEMENT OF THE PROPERTY OF THE ESTATE AND TO OPERATION OF THE DEBTOR'S BUSINESS. SECTION 1104(A) PROVIDES THAT THIS SECTION DOES NOT APPLY IN THE CASE OF A PUBLIC COMPANY, FOR WHICH THE APPOINTMENT OF A TRUSTEE IS MANDATORY.

SECTION 1106. DUTIES OF TRUSTEE AND EXAMINER

SUBSECTION (A) OF THIS SECTION PRESCRIBES THE TRUSTEE'S DUTIES. HE IS REQUIRED TO PERFORM THE DUTIES OF A TRUSTEE IN A LIQUIDATION CASE SPECIFIED IN SECTION 704(2), (4), (6), (7), (8), AND (9). THESE INCLUDE REPORTING AND INFORMATIONAL DUTIES, AND ACCOUNTABILITY FOR ALL PROPERTY RECEIVED. PARAGRAPH (2) OF THIS SUBSECTION REQUIRES THE TRUSTEE TO FILE WITH THE COURT, IF THE DEBTOR HAS NOT DONE SO, THE LIST OF CREDITORS, SCHEDULE OF ASSETS AND LIABILITIES, AND STATEMENT OF AFFAIRS REQUIRED UNDER SECTION 521(1).

PARAGRAPH (3) OF S. 1106 REQUIRES THE TRUSTEE TO INVESTIGATE THE ACTS, CONDUCT, ASSETS, LIABILITIES, AND FINANCIAL CONDITION OF THE DEBTOR, THE OPERATION OF THE DEBTOR'S BUSINESS, AND THE DESIRABILITY OF THE CONTINUANCE OF THE BUSINESS, AND ANY OTHER MATTER RELEVANT TO THE CASE OR TO THE FORMULATION OF A PLAN. PARAGRAPH (4) REQUIRES THE TRUSTEE TO REPORT **5902  *116  THE RESULTS OF HIS INVESTIGATION TO THE COURT AND TO CREDITORS' COMMITTEES, EQUITY SECURITY HOLDERS' COMMITTEES, INDENTURE TRUSTEES AND ANY OTHER ENTITY THE COURT DESIGNATES.

PARAGRAPH (5) REQUIRES THE TRUSTEE TO FILE A PLAN OR TO REPORT WHY A PLAN CANNOT BE FORMULATED, OR TO RECOMMEND CONVERSION TO LIQUIDATION OR TO AN INDIVIDUAL REPAYMENT PLAN CASE, OR DISMISSAL. IT IS ANTICIPATED THAT THE TRUSTEE WILL CONSULT WITH CREDITORS AND OTHER PARTIES IN INTEREST IN THE FORMULATION OF A PLAN, JUST AS THE DEBTOR IN POSSESSION WOULD.

PARAGRAPH (6) REQUIRES FINAL REPORTS BY THE TRUSTEE, AS THE COURT ORDERS.

# D Collier on Bankruptcy (i)(1)

Collier on Bankruptcy, Sixteenth Edition > App. Pt. 4 Bankruptcy Reform Act of 1978 > App. Pt. 4(f) House Debate on Compromise Bill, 124 Cong. Rec. H11,047-117 (daily ed. Sept. 28, 1978)

## (i)(1) House Debate on Compromise Bill, 124 Cong.

**LEGISLATIVE HISTORY—PUB. L. NO. 95–598 House Debate on Compromise Bill, 124 Cong. Rec. H11047-117 (daily ed. Sept. 28, 1978)**

After the Senate adopted its amendment in the nature of a substitute to H.R. 8200 and sent the bill back to the House, the floor managers in both Houses met and agreed upon a compromise bill. This bill was adopted by the House on September 28, 1978, as an amendment in the nature of a substitute to the Senate amendment to the House bill H.R. 8200. The floor managers also agreed on a joint explanatory statement, which each published in the Congressional Record immediately following the actual floor debates on the compromise bill. This joint explanatory statement of managers explains in detail the compromises that were reached and the interpretations of the new language. It also resolves some of the differences between the House and Senate Judiciary Committee Reports. It is similar in function and purpose to the Joint Explanatory Statement of Managers that accompanies a formal Conference Report of a Committee of Conference, and its effect should be the same.

### 95th CONGRESS, 2d SESSION

### *Vol. 124,* WASHINGTON, THURSDAY, SEPTEMBER 28, 1978, *No. 154*

### [H 11047]

### UNIFORM LAW ON BANKRUPTCIES

Mr. EDWARDS of California. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the bill (H.R. 8200) to establish a uniform law on the subject of bankruptcies, with a Senate amendment thereto, and concur in the Senate amendment with an amendment.

The Clerk read the title of the bill.

The Clerk read the Senate amendment.

Mr. EDWARDS of California (during the reading). Mr. Speaker, I ask unanimous consent to dispense with further reading of the Senate amendment.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from California?

There was no objection.

The Clerk read the House amendment to the Senate amendment, as follows:

### H.R. 8200

D Collier on Bankruptcy (i)(1)

[H 11070]

change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

## § 1103. Powers and duties of committees

**(a)** At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

**(b)** A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the case.

**(c)** A committee appointed under section 1102 of this title may—

**(1)** consult with the trustee or debtor in possession concerning the administration of the case;

**(2)** investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

**(3)** participate in the formulation of a plan, advise those represented by such committee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan;

**(4)** request the appointment of a trustee or examiner under section 1104 of this title, if a trustee or examiner, as the case may be, has not previously been appointed under this chapter in the case; and

**(5)** perform such other services as are in the interest of those represented.

**(d)** As soon as practicable after the appointment of a committee under section 1102 of this title, the trustee shall meet with such committee to transact such business as may be necessary and proper.

## § 1104. Appointment of trustee or examiner

**(a)** At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

**(1)** for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

(c) If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the court shall appoint one disinterested person to serve as trustee or examiner, as the case may be, in the case.

## § 1105. Termination of trustee's appointment

At any time before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate, and operation of the debtor's business.

## § 1106. Duties of trustee and examiner

(a) A trustee shall—

(1) perform the duties of a trustee specified in sections 704(2), 704(4), 704(6), 704(7), and 704(8) of this title;

(2) if the debtor has not done so, file the list, schedule, and statement required under section 521(1) of this title;

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

## D Collier on Bankruptcy (i)(2)

Collier on Bankruptcy, Sixteenth Edition  >  App. Pt. 4 Bankruptcy Reform Act of 1978  >  App. Pt. 4(f) House Debate on Compromise Bill, 124 Cong. Rec. H11,047-117 (daily ed. Sept. 28, 1978)

## (i)(2) House Debate on Compromise Bill, 124 Cong.

**LEGISLATIVE HISTORY—PUB. L. NO. 95–598 House Debate on Compromise Bill, 124 Cong. Rec. H11047-117 (daily ed. Sept. 28, 1978)**

> **CHAPTER 13— ADJUSTMENT OF DEBTS OF AN INDIVIDUAL WITH REGULAR INCOME**
>
> > **SUBCHAPTER I— OFFICERS, ADMINISTRATION, AND THE ESTATE**
> >
> > > **§ 1301. Stay of action against codebtor**
> > >
> > > > **(a)** Except as provided in subsection (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—
> > > >
> > > > > **(1)** such individual became liable on or secured such debt in the ordinary course of such individual's business; or
> > > > >
> > > > > **(2)** the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.
> > > >
> > > > **(b)** A creditor may present a negotiable instrument, and may give notice of dishonor of such an instrument,
> > > >
> > > > **(c)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—
> > > >
> > > > > **(1)** as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;
> > > > >
> > > > > **(2)** the plan filed by the debtor proposes not to pay such claim; or
> > > > >
> > > > > **(3)** such creditor's interest would be irreparably harmed by such stay.
> > >
> > > **§ 1302. Trustee**
> > >
> > > > **(a)** If the court has appointed an individual under subsection (d) of this section to serve as standing trustee in cases under this chapter and if such individual qualifies under section 322 of this title, then such individual shall serve as trustee in the case. Otherwise, the court shall appoint a person to serve as trustee in the case.
> > > >
> > > > **(b)** The trustee shall—

D Collier on Bankruptcy (i)(2)

what bankruptcy is all about. The debtor is given a fresh start. The practice under existing law, in most States, is that a valid consideration for a debt is the acknowledgment of renewal or reaffirmation of a debt which has been discharged in bankruptcy.

The evidence before us was overwhelming that a practice has developed to follow a discharge in bankruptcy with a reaffirmation of debt in consideration of an expanded debt. A debtor could come through bankruptcy to discharge a loan of $500 and find himself borrowing another $500 in order to get back on his feet. As a condition to the new loan the debtor is required by the lender to reaffirm the discharged debt, and as a result the debtor owes $1,000. We felt this option was being exploited. So in the House bill we took away the debtor's right to reaffirm debts after bankruptcy.

This was, we thought, a tremendous advance. The issue was raised in the Senate committee, and the Senate committee agreed with us. However, when it got to the floor, the Senate took a hard line on this portion of the bill and virtually put us back to the law as it was before our bill was passed. The House amendment resolves this by, I think, meeting a middle ground, as is pretty extensively discussed in the Chairman's (Mr. EDWARD's) description of the legislation.

Mr. ROUSSELOT. Further reserving the right to object, Mr. Speaker, could the gentleman give us the essence of the reaffirmational provisions.

Mr. BUTLER. If the gentleman will yield further, the essence of the right to reaffirm, as we have compromised it, is that the right to reaffirm is available in business situations. It is not available for consumer debts that are not secured by real property unless the court, after notice and rehiring, approves the reaffirmation and the court decides, on the basis of the evidence before it, that it is in the best interest of the debtor to reaffirm, and the reaffirmation does not impose any undue hardship on the debtor or his dependents.

This is principally directed to consumer financing. That is where the problem area is, so, in my judgment, this is a very reasonable compromise and a very fine middle ground that preserves what we were trying to do in the House bill.

Mr. ROUSSELOT. Mr. Speaker, I appreciate the gentleman's comments, and I withdraw my reservation of objection.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from California that the House amendment to the Senate amendment be considered as read and printed in the RECORD?

There was no objection.

(Mr. EDWARDS of California asked and was given permission to revise and extend his remarks.)

Mr. EDWARDS of California. Mr. Speaker, the amendment that I am offering today is the culmination of over 8 years' work by a congressional commission, two congressional committees, and numerous outside groups. The amendment accomplishes the substantial reform of the bankruptcy laws for the first time in 40 years. It is a major effort one that everyone involved can be proud of.

This bill passed the House last February 1, and passed the Senate with an amendment on September 7, just 3 weeks ago. In those 3 weeks, my distinguished colleague from

Virginia. CALDWELL BUTLER, and I have worked closely with the Senate managers of the bill, and we have reached an agreement on the resolution of the differences between the two bills. The agreement was reached after a public meeting this week, in which the final major issues were resolved. This amendment that I am offering is the substance of that agreement.

The amendment retains many of the important reforms included in the original House bill, yet adopts many of the fine and constructive changes made by the Senate. In summary, the amendment retains a strong independent bankruptcy court to handle the large number of bankruptcies filed every year. The amendment does not contain the article III court proposal in the original House bill, but the court that is established is one that everyone can live with very happily. It provides for Presidential appointment and 14-year terms for the new judges, beginning in 1984.

The U.S. trustee system contained in the House bill but not in the Senate amendment was scaled down to a pilot program that will expire in 1984. During that time, we will have time to see how it operates, before creating a nationwide program. In the nonpilot areas of the courtry, the administrative system for bankruptcies contained in the Senate bill was adopted.

The important consumer reforms from the House bill and the Senate amendment are retained, and will protect hardpressed consumer debtors from overreaching by their creditors. I am confident that this will be looked upon as a major step forward in consumer legislation.

The amendment also encourages business reorganizations by a streamlined new commercial reorganization chapter, that represents an excellent compromise between the House bill and the Senate amendment. It will protect the investing public, protect jobs, and help save troubled businesses.

In sum, this amendment represents a fine effort and a good compromise during the past 3 weeks. I hope that the Senate will act quickly to ratify the agreement contained in this amendment, and I urge my colleagues in the House to adopt it now so that we can send it to the Senate for their final approval.

House amendment to Senate amendment to H.R. 8200, a bill to establish a uniform law on the subject of bankruptcies.

The House amendment to the Senate amendment to H.R. 8200 resolves many differences between H.R. 8200 as passed by the House of Representatives and the amendment in the nature of a substitute to H.R. 8200, passed by the Senate. This statement is made in my capacity as chairman of the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, by and on behalf of the Subcommittee on Civil and Constitutional Rights and the House Committee on the Judiciary, in order to explain the House amendment to the Senate amendment to H.R. 8200.

Several provisions of the House-passed version of H.R. 8200 were adopted by the Senate without change in its amendment in the nature of a substitute to H.R. 8200. These provisions require no additional explanation. However, other provisions on which the two Houses differed or which are new in the House amendment to the Senate amendment in the nature of a substitute to H.R. 8200 require explanation.

condition or default of the kind specified in section 365(b)(2) of title II, the commodity broker may engage in such liquidation. To this extent, the commodity

### [H 11100]

broker's contract with his customer is treated no differently than any other contract under section 365 of title II.

Chapter 9 of the House amendment represents a compromise between chapter 9 of the House bill and 9 of the Senate amendment. In most respect this chapter follows current law with respect to the adjustment of debts of a municipality. Stylistic changes and minor substantive revisions have meen made in order to conform this chapter with other new chapters of the bankruptcy code. There are few major differences between the House bill and the Senate amendment on this issue. Section 901 indicates the applicability of other sections of title 11 in cases under chapter 9. Included are sections providing for creditors' committees under sections 1102 and 1103.

Section 902(2) of the Senate amendment is deleted since the bankruptcy court will have jurisdiction over all cases under chapter 9. The concept of a claim being materially and adversely affected reflected in section 902(1) of the Senate amendment has been deleted and replaced with the new concept of "impairment" set forth in section 1124 of the House amendment and incorporated by reference into chapter 9.

Section 903 of the House amendment represents a stylistic revision of section 903 of the Senate amendment. To the extent section 903 of the House bill would have changed present law, such section is rejected. Section 905 of the Senate amendment is incorporated as section 921(b) of the House amendment with the difference that the chief judge of the circuit embracing the district in which the case is commenced designates a bankruptcy judge to conduct the case in lieu of a district judge as under present law. It is intended that a municipality may commence a case in any district in which the municipality is located, as under present law. Section 906 of the Senate amendment has been adopted in substance in section 109(c) of the House amendment.

Section 923 of the House amendment represents a compromise with respect to the notice provisions contained in comparable provisions of the House bill and Senate amendment. As a general matter, title 11 leaves most procedural issues to be determined by the Rules of Bankruptcy Procedure. Section 923 of the House amendment contains certain important aspects of procedure that have been retained from present law. It is anticipated that the Rules of Bankruptcy Procedure will adopt rules similar to the present rules for chapter IX of the Bankruptcy Act.

Section 924 of the House amendment is derived from section 924 of the House bill with the location of the filing of the list of creditors to be determined by the rules of bankruptcy procedure. The detailed requirements of section 724 of the Senate bill are anticipated to be incorporated in the rules of bankruptcy procedure.

Section 925 of the Senate amendment regarding venue and fees has been deleted.

Section 926 of the House amendment is derived from section 928 of the Senate bill. The provision enables creditors to request the court to appoint a trustee to pursue avoiding powers if the debtor refuses to exercise those powers. Section 901 of the

D Collier on Bankruptcy (i)(2)

House amendment makes a corresponding change to incorporate avoiding powers included in the Senate amendment, but excluded from the House bill.

Section 927(b) of the House amendment is derived from section 927(b) of the Senate bill. The provision requires mandatory dismissal if confirmation of a plan is refused.

The House amendment deletes section 929 of the Senate amendment as unnecessary since the bankruptcy court has original exclusive jurisdiction of all cases under chapter 9.

The House amendment deletes section 930 of the Senate amendment and incorporates section 507(a)(1) by reference.

The House amendment deletes section 942 of the Senate amendment in favor of incorporating section 1125 by cross-reference. Similarly, the House amendment does not incorporate sections 944 or 945 of the Senate amendment since incorporation of several sections in chapter 11 in section 901 is sufficient.

Section 943(a) of the House amendment makes clear that a special taxpayer may object to confirmation of a plan. Section 943(b) of the House amendment is derived from section 943 of the House bill respecting confirmation of a plan under chapter 9. It must be emphasized that these standards of comfirmation are in addition to standards in section 1129 that are made applicable to chapter 9 by section 901 of the House amendment. In particular, if the requirements of section 1129(a)(8) are not complied with, then the proponent may request application of section 1129(b). The court will then be required to confirm the plan if it complies with the "fair and equitable" test and is in the best interests of creditors. The best interests of creditors test does not mean liquidation value as under chapter XI of the Bankruptcy Act. In making such a determination, it is expected that the court will be guided by standards set forth in *Kelley v. Everglades Drainage District,* 319 U.S. 415 (1943), and *Fano v. Newport Heights Irrigation Dist.,* 114 F.2d 563 (9th Cir. 1940), as under present law, the bankruptcy court should make findings as detailed as possible to support a conclusion that this test has been met. However, it must be emphasized that unlike current law, the fair and equitable test under section 1129(b) will not apply if section 1129(a)(8) has been satisfied in addition to the other confirmation standards specified in section 943 and incorporated by reference in section 901 of the House amendment. To the extent that *American United Mutual Life Insurance Co. v. City of Avon Park,* 311 U.S. 138 (1940) and other cases are to the contrary, such cases are overruled to that extent.

The House amendment deletes section 950 of the Senate amendment as unnecessary. The constitutionality of chapter 9 of the House amendment is beyond doubt.

Chapter 11 of the House amendment is derived in large part from chapter 11 as contained in the House bill. Unlike chapter 11 of the Senate amendment, chapter 11 of the House amendment does not represent an extension of chapter X of current law or any other chapter of the Bankruptcy Act. Rather chapter 11 of the House amendment takes a new approach consolidating subjects dealt with under chapter VIII, X, XI, and XII of the Bankruptcy Act. The new consolidated chapter 11 contains no special procedure for companies with public debt or equity security holders. Instead, factors such as the standard to be applied to solicitation of acceptances of a plan of reorganization are left to be determined by the court on a case-by-case basis. In order

to insure that adequate investigation of the debtor is conducted to determine fraud or wrongdoing on the part of present management, an examiner is required to be appointed in all cases in which the debtor's fixed, liquidated, and unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5 million. This should adequately represent the needs of public security holders in most cases. However, in addition, section 1109 of the House amendment enables both the Securities and Exchange Commission and any party in interest who is creditor, equity security holder, indenture trustee, or any committee representing creditors or equity security holders to raise and appear and be heard on any issue in a case under chapter 11. This will enable the bankruptcy court to evaluate all sides of a position and to determine the public interest. This approach is sharply contrasted to that under chapter X of present law in which the public interest is often determined only in terms of the interest of public security holders. The advisory role of the Securities and Exchange Commission will enable the court to balance the needs of public security holders against equally important public needs relating to the economy, such as employment and production, and other factors such as the public health and safety of the people or protection of the national interest. In this context, the new chapter 11 deletes archaic rules contained in certain chapters of present law such as the requirement of an approval hearing and the prohibition of prepetition solicitation. Such requirements were written in an age before the enactment of the Trust Indenture Act and the development of securities laws had occurred. The benefits of these provisions have long been outlived but the detriment of the provisions served to frustrate and delay effectivereorganization in those chapters of the Bankruptcy Act in which such provisions applied. Chapter 11 thus represents a much needed revision of reorganization laws. A brief discussion of the history of this important achievement is useful to an appreciation of the monumental reform embraced in chapter 11.

Under the existing Bankruptcy Act, debtors seeking reorganization may choose among three reorganization chapters, chapter X, chapter XI, and chapter XII. Individuals and partner-

### [H 11101]

ships may file under chapter XI or, if they own property encumbered by mortgage liens, they may file under chapter XII. A corporation may file under either chapters X or chapter XI, but is ineligible to file under chapter XII. Chapter X was designed to facilitate the pervasive reorganization of corporations whose creditors include holders of publicly issued debt securities. Chapter XI, on the other hand, was designed to permit smaller enterprises to negotiate composition or extension plans with their unsecured creditors. The essential differences between chapters X and XI are as follows. Chapter X mandates that, first, an independent trustee be appointed and assume management control from the officers and directors of the debtor corporation; second, the Securities and Exchange Commission must be afforded an opportunity to participate both as an adviser to the court and as a representative of the interests of public security holders; third, the court must approve any proposed plan of reorganization, and prior to such approval, acceptances of creditors and shareholders may not be solicited; fourth, the court must apply the absolute priority rule; and fifth, the court has the power to affect, and grant the debtor a discharge in respect of, all

types of claims, whether secured or unsecured and whether arising by reason of fraud or breach of contract.

The Senate amendment consolidates chapters X, XI, and XII, but establishes a separate and distinct reorganization procedure for "public companies." The special provisions applicable to "public companies" are tantamount to the codification of chapter X of the existing Bankruptcy Act and thus result in the creation of a "two-track system." The narrow definition of the term "public company" would require many businesses which could have been rehabilitated under chapter XI to instead use the more cumbersome procedures of chapter X, whether needed or not.

The special provisions of the Senate amendment applicable to a "public company" are as follows:

**(a)** Section 1101(3) defines a "public company" as a debtor who, within 12 months prior to the filing of the petition, had outstanding $5 million or more in debt and had not less than 1000 security holders;

**(b)** Section 1104(a) requires the appointment of a disinterested trustee irrespective of whether creditors support such appointment and whether there is cause for such appointment;

**(c)** Section 1125(f) prohibits the solicitation of acceptances of a plan of reorganization prior to court approval of such plan even though the solicitation complies with all applicable securities laws;

**(d)** Section 1128(a) requires the court to conduct a hearing on any plan of reorganization proposed by the trustee or any other party;

**(e)** Section 1128(b) requires the court to refer any plans "worthy of consideration" to the Securities and Exchange Commission for their examination and report, prior to court approval of a plan; and

**(f)** Section 1128(c) and Section 1130(a)(7) requires the court to approve a plan or plans which are "fair and equitable" and comply with the other provisions of Chapter 11.

The record of the Senate hearings on S. 2266 and the House hearings on H.R. 8200 is replete with evidence of the failure of the reorganization provisions of the existing Bankruptcy Act to meet the needs of insolvent corporations in today's business environment. Chapter X was designed to impose rigid and formalized procedures upon the reorganization of corporations and, although designed to protect public creditors, has often worked to the detriment of such creditors. As the House report has noted:

The negative results under Chapter X have resulted from the stilted procedures, under which management is always ousted and replaced by an independent trustee, the courts and the Securities and Exchange Commission examine the plan of reorganization in great detail, no matter how long that takes, and the court values the business, a time consuming and inherently uncertain procedure.

The House amendment deletes the "public company" exception, because it would codify the well recognized infirmities of chapter X, because it would extend the

chapter X approach to a large number of new cases without regard to whether the rigid and formalized procedures of chapter X are needed, and because it is predicated upon the myth that provisions similar to those contained in chapter X are necessary for the protection of public investors. Bankruptcy practice in large reorganization cases has also changed substantially in the 40 years since the Chandler Act was enacted. This change is, in large part, attributable to the pervasive effect of the Federal securities laws and the extraordinary success of the Securities and Exchange Commission in sensitizing both management and members of the bar to the need for full disclosure and fair dealing in transactions involving publicly held securities.

It is important to note that Congress passed the Chandler Act prior to enactment of the Trust Indenture Act of 1939 and prior to the definition and enforcement of the disclosure requirements of the Securities Act of 1933 and the Securities Exchange Act of 1934. The judgments made by the 75th Congress in enacting the Chandler Act are not equally applicable to the financial markets of 1978. First of all, most public debenture holders are neither weak nor unsophisticated investors. In most cases, a significant portion of the holders of publicly issued debentures are sophisticated institutions, acting for their own account or as trustees for investment funds, pension funds, or private trusts. In addition, debenture holders, sophisticated, and unsophisticated alike, are represented by indenture trustees, qualified under section 77ggg of the Trust Indenture Act. Given the high standard of care to which indenture trustees are bound, they are invariably active and sophisticated participants in efforts to rehabilitate corporate debtors in distress.

It is also important to note that in 1938 when the Chandler Act was enacted, public investors commonly held senior, nor subordinated, debentures and corporations were very often privately owned. In this environment, the absolute priority rule protected debenture holders from an erosion of their position in favor of equity holders. Today, however, if there are public security holders in a case, they are likely to be holders of subordinated debentures and equity and thus the application of the absolute priority rule under chapter X leads to the exclusion, rather than the protection, of the public.

The primary problem posed by chapter X is delay. The modern corporation is a complex and multifaceted entity. Most corporations do not have a significant market share of the lines of business in which they compete. The success, and even the survival, of a corporation in contemporary markets depends on three elements: First, the ability to attract and hold skilled management; second, the ability to obtain credit; and third, the corporation's ability to project to the public an image of vitality. Over and over again, it is demonstrated that corporations which must avail themselves of the provisions of the Bankruptcy Act suffer appreciable deterioration if they are caught in a chapter X proceeding for any substantial period of time.

There are exceptions to this rule. For example, King Resources filed a chapter X petition in the District of Colorado and it emerged from such proceeding as a solvent corporation. The debtor's new found solvency was not, however, so much attributable to a brilliant rehabilitation program conceived by a trustee, but rather to a substantial appreciation in the value of the debtor's oil and uranium properties during the pendency of the proceedings.

**Add. 25**

Likewise, Equity Funding is always cited as an example of a successful chapter X case. But it should be noted that in Equity Funding there was no question about retaining existing management. Rather, Equity Funding involved fraud on a grand scale. Under the House amendment with the deletion of the mandatory appointment of a trustee in cases involving "public companies," a bankruptcy judge, in a case like Equity Funding, would presumably have little difficulty in concluding that a trustee should be appointed under section 1140(b).

While I will not undertake to list the chapter X failures, it is important to note a number of cases involving corporations which would be "public companies" under the Senate amendment which have successfully skirted the shoals of chapter X and confirmed plans of arrangement in chapter XI. Among these are Daylin, Inc. ("Daylin") and Colwell Mortgage Investors ("Colwell").

Daylin filed a chapter XI petition on February 26, 1975, and confirmed its plan of arrangement on October 20, 1976. The success of its turnaround is best evidenced by the fact that it had consolidated net income of $6,473,000 for the first three quarters of the 1978 fiscal year.

Perhaps the best example of the contrast between chapter XI and chapter X is the recent case of In Re Colwell Mortgage Investors. Colwell negotiated a recapitalization plan with its institutional creditors, filed a proxy statement with

**[H 11102]**

the Securities and Exchange Commission, and solicited consents of its creditors and shareholders prior to filing its chapter XI petition. Thereafter, Colwell confirmed its plan of arrangement 41 days after filing its chapter XI petition. This result would have been impossible under the Senate amendment since Colwell would have been a "public company."

There are a number of other corporations with publicly held debt which have successfully reorganized under chapter XI. Among these are National Mortgage Fund (NMF), which filed a chapter XI petition in the northern district of Ohio on June 30, 1976. Prior to commencement of the chapter XI proceeding, NMF filed a proxy statement with the Securities and Exchange Commission and solicited acceptances to a proposed plan of arrangement. The NMF plan was subsequently confirmed on December 14, 1976. The Securities and Exchange Commission did not file a motion under section 328 of the Bankruptcy Act to transfer the case to chapter X and a transfer motion which was filed by private parties was denied by the court.

While there are other examples of large publicly held companies which have successfully reorganized in chapter XI, including Esgrow, Inc. (C.D. Cal. 73–02510), Sherwood Diversified Services Inc. (S.D.N.Y. 73–B–218), Sheffield Watch Corporation (S.D.N.Y. 71–B–544) and United Merchants and Manufacturers, Inc. (S.D.N.Y. 77–B–1513), the numerous successful chapter XI cases demonstrate two points: first, the complicated and time-consuming provisions of chapter X are not always necessary for the successful reorganization of a company with publicly held debt, and second, the more flexible provisions in chapter XI permit a debtor to obtain relief under the Bankruptcy Act in significantly less time than is required to confirm a plan of reorganization under chapter X of the Bankruptcy Act.

One cannot overemphasize the advantages of speed and simplicity to both creditors and debtors. Chapter XI allows a debtor to negotiate a plan outside of court and, having reached a settlement with a majority in number and amount of each class of creditors, permits the debtor to bind all unsecured creditors to the terms of the arrangement. From the perspective of creditors, early confirmation of a plan of arrangement: first, generally reduces administrative expenses which have priority over the claims of unsecured creditors; second, permits creditors to receive prompt distributions on their claims with respect to which interest does not accrue after the filing date; and third, increases the ultimate recovery on creditor claims by minimizing the adverse effect on the business which often accompanies efforts to operate an enterprise under the protection of the Bankruptcy Act.

Although chapter XI offers the corporate debtor flexibility and continuity of management, successful rehabilitation under chapter XI is often impossible for a number of reasons. First, chapter XI does not permit a debtor to "affect" secured creditors or shareholders, in the absence of their consent. Second, whereas a debtor corporation in chapter X, upon the consummation of the plan or reorganization, is discharged from all its debts and liabilities, a corporation in chapter XI may not be able to get a discharge in respect of certain kinds of claims including fraud claims, even in cases where the debtor is being operated under new management. The language of chapter 11 in the House amendment solves these problems and thus increases the utility and flexibility of the new chapter 11, as compared to chapter XI of the existing Bankruptcy Act.

Those who would urge the adoption of a two-track system have two major obstacles to meet. First, the practical experience of those involved in business rehabilitation cases, practitioners, debtors, and bankruptcy judges, has been that the more simple and expeditious procedures of chapter XI are appropriate in the great majority of cases. While attempts have been made to convince the courts that a chapter X proceeding is required in every case where public debt is present, the courts have categorically rejected such arguments. Second, chapter X has been far from a success. Of the 924 chapter X cases filed during the period of January 1, 1967, through December 31, 1977, only 482 have been terminated. Of those cases recorded as "terminated," only 92 resulted in consummated plans. This 19 percent success rate suggests one of the reasons for the unpopularity of chapter X.

In summary, it has been the experience of the great majority of those who have testified before the Senate and House subcommittees that a consolidated approach to business rehabilitation is warranted. Such approach is adopted in the House amendment.

Having discussed the general reasons why chapter 11 of the House amendment is sorely needed, a brief discussion of the differences between the House bill, Senate amendment, and House amendment is in order. Since chapter 11 of the House amendment rejects the concept of separate treatment for a public company, sections 1101(3), 1104(a), 1125(f), 1128, and 1130(a)(7) of the Senate amendment have been deleted.

Section 1102(a) of the House amendment adopts a compromise between the House bill and Senate amendment requiring appointment of a committee of creditors holding

D Collier on Bankruptcy (i)(2)

unsecured claims by the court; the alternative of creditor committee election is rejected.

Section 1102(b) of the House amendment represents a compromise between the House bill and the Senate amendment by preventing the appointment of creditors who are unwilling to serve on a creditors committee.

Section 1104 of the House amendment represents a compromise between the House bill and the Senate amendment concerning the appointment of a trustee or examiner. The method of appointment rather than election, is derived from the House bill; the two alternative standards of appointment are derived with modifications from the Senate amendment, instead of the standard stated in the House bill. For example, if the current management of the debtor gambled away rental income before the filing of the petition, a trustee should be appointed after the petition, whether or not postpetition mismanagement can be shown. However, under no circumstances will cause include the number of security holders of the debtor, or the amount of assets or liabilities of the debtor. The standard also applies to the appointment of an examiner in those circumstances in which mandatory appointment, as previously detailed, is not required.

The House amendment adopts section 1107(b) of the Senate amendment which clarifies a point not covered by the House bill. The House amendment adopts section 1108 of the House bill in preference to the style of an identical substantive provision contained in the Senate amendment. Throughout title 11 references to a "trustee" is read to include other parties under various sections of the bill. For example, section 1107 applies to give the debtor in possession all the rights and powers of a trustee in a case under chapter 11; this includes the power of the trustee to operate the debtor's business under section 1108.

Section 1109 of the House amendment represents a compromise between comparable provisions in the House bill and Senate amendment. As previously discussed the section gives the Securities and Exchange Commission the right to appear and be heard and to raise any issue in a case under chapter 11; however, the Securities and Exchange Commission is not a party in interest and the Commission may not appeal from any judgment, order, or decree entered in the case. Under section 1109(b) a party in interest, including the debtor, the trustee, creditors committee, equity securities holders committee, a creditor, an equity security holder, or an indentured trustee, may raise and may appear and be heard on any issue in a case under chapter 11. Section 1109(c) of the Senate amendment has been moved to subchapter IV pertaining to Railroad Reorganizations.

Section 1110 of the House amendment adopts an identical provision contained in the House bill without modifications contained in the Senate amendment. This section protects a limited class of financiers of aircraft and vessels and is intended to be narrowly construed to prevent secured parties or lessors from gaining the protection of the section unless the interest of such lessor or secured party is explicitly enumerated therein. It should be emphasized that under section 1110(a) a debtor in possession or trustee is given 60 days after the order for relief in a case under chapter 11, to have an opportunity to comply with the provisions of section 1110(a).

Add. 28

D Collier on Bankruptcy (i)(2)

meeting. The debtor must answer all questions relating to financial matters unless the debtor invokes the privilege against self incrimination and the U.S. attorney refuses to grant use immunity. As under present law, creditors will file proofs of claims and there will be hearings on complaints objecting to the debtor's discharge or to the dischargeability of a debt.

However, if a creditor sues to determine the nondischargeability of a debt based on an alleged written false financial statement and the creditor loses, then the debtor will be paid attorneys fees by the creditors except in the rarest of circumstances. The debtor will usually have the choice of selecting State or Federal exemptions and may avoid liens on household goods. The debtor must appear at the hearing on discharge at which time any reaffirmatins must be considered by the court. The debtor will be advised by the court of the consequences of reaffirming a debt and will be given a 30 day right of rescission.

In addition, if the debt is a consumer debt that is unsecured or secured by personal property the court may approve the reaffirmation only if it is in the best interest of the debtor and will not impose an undue hardship. An antidiscrimination provision in H.R. 8200 will protect the debtors fresh start by forbidding governmental agencies from denying the debtor basic rights on account of bankruptcy.

The typical business reorganization case will also be much different under H.R. 8200 than under the Bankruptcy Act. H.R. 8200 contains a single reorganization chapter for all cases. In large cases, an examiner is appointed to investigate the affairs of the debtor, but there is never a mandatory appointment of a trustee. The examiner's investigation will not slow down the reorganization in any way. The debtor will file a petition and schedules of claims. The schedules will constitute a proof of claim on behalf of the creditor unless the claim is listed as disputed, contingent, or unliquidated. The debtor in possession may use all collateral in the ordinary course of business without a hearing except for "cash collateral" which requires the opportunity for a hearing except in emergencies. No order to operate the business is needed. If the debtor proposes to sell property free and clear of a lien, notice is given to the creditor and the creditor is given the opportunity for a hearing. If the creditor does not object, the debtor may sell the property without court order. If a creditor is concerned that property is being misused or depreciating, the creditor can demand adequate protection or relief from the automatic stay. If the business of the debtor is being mismanaged, creditors can also request the court to order the appointment of a trustee to oust the debtor from possession. The number of securities holders of the debtor is not a factor in determining the appointment of a trustee.

During the first 120 days the debtor has an exclusive right to file a plan of arrangement, but the creditors may file a plan after the exclusive period expires or when a trustee is appointed. The debtor is given 60 additional days in which to obtain acceptances. The debtor will negotiate with a creditors committee appointed by the court as to the terms of the plan. Prepetition acceptances are permitted if they comply with otherwise applicable law. Postpetition acceptances are permitted only if solicited by means of a disclosure statement which contains adequate information concerning the debtor and the plan.

## D Collier on Bankruptcy (iii)

Collier on Bankruptcy, Sixteenth Edition  >  App. Pt. 4 Bankruptcy Reform Act of 1978  >  App. Pt. 4(f) House Debate on Compromise Bill, 124 Cong. Rec. H11,047-117 (daily ed. Sept. 28, 1978)

## (iii) Senate Debate on Compromise Bill, 124 Cong. Rec. S17403-34 (daily ed. Oct. 6, 1978)

### LEGISLATIVE HISTORY—PUB. L. NO. 95–598 Senate Debate on Compromise Bill, 124 Cong. Rec. S17403-34 (daily ed. Oct. 6, 1978)

After the House adopted the compromise bill on September 28, 1978, it was sent to the Senate for final action. The Senate considered the bill on October 5, 1978. This excerpt from the Congressional Record contains the Senate debate on the compromise bill, and the Senate floor manager's version of the joint explanatory statement. The Senate version differs slightly from the House version reprinted above, because the Senate adopted some amendments to the compromise bill before passing the bill. These amendments are set forth and explained in the Congressional Record, and are generally reflected in the joint explanatory statement.

(Though the Senate acted on October 5, 1978, the debates were printed in the October 6 Record, because Senate action was too late in the day to be included in the October 5 Record.)

### 95th Congress, 2d Session
*Reprinted from* 124 Cong. Rec. S17403-34 (daily ed. Oct. 6, 1978)

### [S 17403]

### LEGISLATIVE PROGRAM TONIGHT

Mr. ROBERT C. BYRD. Mr. President, there will be no more rollcall votes tonight, but the distinguished Senator from Arizona (Mr. DE CONCINI) will ask the Chair in a moment to lay before the Senate a message from the House of Representatives on which there is a 20-minute time agreement, to be equally divided and controlled by Mr. DE CONCINI and Mr. THURMOND.

Mr. SASSER will call up a conference report on which he and Mr. STEVENS will control the time. The time on that conference report is only 10 minutes.

There may be other conference reports, but there will be no more rollcall votes tonight.

### UNIFORM LAW ON BANKRUPTCIES

Mr. ROBERT C. BYRD. Mr. President, I ask the Chair to lay before the Senate a message from the House of Representatives on H.R. 8200.

The PRESIDING OFFICER laid be-

### [S 17404]

fore the Senate the amendment of the House of Representatives to H.R. 8200, an act to establish a uniform law on the subject of bankruptcies.

(The amendment of the House is printed in the RECORD of September 28, 1978, beginning at page H11047.

Mr. DE CONCINI. Mr. President, I ask unanimous consent that Bob Feidler and Harry Dixon of the staff of the Subcommittee on Judicial Machinery be accorded the privilege of the floor during the consideration of the message from the House on H.R. 8200.

The PRESIDING OFFICER. Without objection, it is so ordered.

Mr. DE CONCINI. Mr. President, it is with great pleasure that I support the House amendment to H.R. 8200. Several weeks ago the Senate passed its version of the bankruptcy reform bill which differed significantly from the House version. Since that time the Senate has appointed conferees but the House has rejected the request for conference for parlimentary reasons. Instead, the House has passed an amendment to the Senate amendment. The provisions of the House amendment were arrived at in negotiations between the House and Senate managers of the legislation. I concur in the House amendment and am prepared to accept it with several amendments I shall propose.

Both Houses should take pride in the final compromise product. It represents give and take by both sides and the result should be workable and satisfactory to all reasonable parties. The Senate prevailed in the concept that the new courts will not have article III judges. While the new judges will not have life tenure they will be elevated to a status far above that of the present day referee. The new courts will be adjuncts of the district courts and should provide a respected and highly qualified judicial forum for the handling of bankruptcy cases.

The Senate also generally prevailed in its position that private trustee as opposed to public trustees should continue to play the predominant role in estate administration. However, we did agree that there have been occasions of trustee mishandling of cases and that it would be worth a trial experiment to test the theory and workings of a public trustee. To that end, we accepted the concept of pilot U.S. trustee programs that will be placed in several judicial districts.

In the area of exemptions, it was agreed that a Federal exemption standard will be codified but that the States could at any time reject them in which case the State exemption laws would continue to prevail.

In the business reorganization chapter the Senate succeeded in obtaining special protection for the large cases having great public interest. There will be automatically appointed an examiner in those cases, but not a trustee as in the Senate passed bill. I am convinced that debtor and creditor interests, as well as the public interest, will be preserved and enhanced by these provisions. I want to at this point thank the members and staff of the Security and Exchange Commission for their fine assistance in formulating these public interest provisions.

The Houses were in substantial agreement initially on the handling of chapter 13, so-called wage earner cases. This chapter will be broadened to include small business debtors. Debtors under this chapter will be able to voluntarily pay off their debts while being under the protection of the court. This allows for greater payouts to creditors than would probably occur if the debtor took straight bankruptcy, and it preserves the debtors self-

**Add. 31**

commodity broker is entitled to liquidate a position as a result of a condition specified in a contract, other than a condition or default of the kind specified in section 365(b)(2) of title II, the commodity broker may engage in such liquidation. To this extent, the commodity broker's contract with his customer is treated no differently than any other contract under section 365 of title II.

Chapter 9 of the House amendment represents a compromise between chapter 9 of the House bill and 9 of the Senate amendment. In most respects this chapter follows current law with respect to the adjustment of debts of a municipality. Stylistic changes and minor substantive revisions have been made in order to conform this chapter with other new chapters of the bankruptcy code. There are few major differences between the House bill and the Senate amendment on this issue. Section 901 indicates the applicability of other sections of title II in cases under chapter 9. Included are sections providing for creditors' committees under sections 1102 and 1103.

Section 902(2) of the Senate amendment is deleted since the bankruptcy court will have jurisdiction over all cases under chapter 9. The concept of a claim being materially and adversely affected reflected in section 902(1) of the Senate amendment has been deleted and replaced with the new concept of "impairment" set forth in section 1124 of the House amendment and incorporated by reference into chapter 9.

Section 903 of the House amendment represents a stylistic revision of section 903 of the Senate amendment. To the extent section 903 of the House bill would have changed present law, such section is rejected. Section 905 of the Senate amendment is incorporated as section 921(b) of the House amendment with the difference that the chief judge of the circuit embracing the district in which the case is commenced designates a bankruptcy judge to conduct the case in lieu of a district judge as under present law. It is intended that a municipality may commence a case in any district in which the municipality is located, as under present law. Section 906 of the Senate amendment has been adopted in substance in section 109(c) of the House amendment.

Section 923 of the House amendment represents a compromise with respect to the notice provisions contained in comparable provisions of the House bill and Senate amendment. As a general matter, title II leaves most procedural issues to be determined by the Rules of Bankruptcy Procedure. Section 923 of the House amendment contains certain important aspects of procedure that have been retained from present law. It is anticipated that the Rules of Bankruptcy Procedure will adopt rules similar to the present rules for chapter IX of the Bankruptcy Act.

Section 924 of the House amendment is derived from section 924 of the House bill with the location of the filing of the list of creditors to be determined by the rules of bankruptcy procedure. The detailed requirements of section 724 of the Senate bill are anticipated to be incorporated in the rules of bankruptcy procedure.

Section 925 of the Senate amendment regarding venue and fees has been deleted.

Section 926 of the House amendment is derived from section 928 of the Senate bill. The provision enables creditors to request the court to appoint a trustee to pursue avoiding powers if the debtor refuses to exercise those powers. Section 901 of the House amendment makes a corresponding change to incorporate

**[S 17417]**

Add. 32

avoiding powers included in the Senate amendment, but excluded from the House bill.

Section 927(b) of the House amendment is derived from section 927(b) of the Senate bill. The provision requires mandatory dismissal if confirmation of a plan is refused.

The House amendment deletes section 929 of the Senate amendment as unnecessary since the bankruptcy court has original exclusive jurisdiction of all cases under chapter 9.

The House amendment deletes section 930 of the Senate amendment and incorporates section 507(a)(1) by reference.

The House amendment deletes section 942 of the Senate amendment in favor of incorporating section 1125 by cross-reference. Similarly, the House amendment does not incorporate sections 944 or 945 of the Senate amendment since incorporation of several sections in chapter 11 in section 901 is sufficient.

Section 943(a) of the House amendment makes clear that a special taxpayer may object to confirmation of a plan. Section 943(b) of the House amendment is derived from section 943 of the House bill respecting confirmation of a plan under chapter 9. It must be emphasized that these standards of confirmation are in addition to standards in section 1129 that are made applicable to chapter 9 by section 901 of the House amendment. In particular, if the requirements of section 1129(a)(8) are not complied with, then the proponent may request application of section 1129(b). The court will then be required to confirm the plan if it complies with the "fair and equitable" test and is in the best interests of creditors. The best interests of creditors test does not mean liquidation value as under chapter XI of the Bankruptcy Act. In making such a determination, it is expected that the court will be guided by standards set forth in _Kelley v. Everglades Drainage District,_ 319 U.S. 415 (1943), and _Fano v. Newport Heights Irrigation Dist.,_ 114 F. 2d 563 (9th Cir. 1940), as under present law, the bankruptcy court should make findings as detailed as possible to support a conclusion that this test has been met. However, it must be emphasized that unlike current law, the fair and equitable test under section 1129(b) will not apply if section 1129(a)(8) has been satisfied in addition to the other confirmation standards specified in section 943 and incorporated by reference in section 901 of the House amendment. To the extent that _American United Mutual Life Insurance Co. v. City of Avon Park,_ 311 U.S. 138 (1940) and other cases are to the contrary, such cases are overruled to that extent.

The House amendment deletes section 950 of the Senate amendment as unnecessary. The constitutionality of chapter 9 of the House amendment is beyond doubt.

Chapter 11 of the House amendment is derived in large part from chapter 11 as contained in the House bill. Unlike chapter 11 of the Senate amendment, chapter 11 of the House amendment does not represent an extension of chapter X of current law or any other chapter of the Bankruptcy Act. Rather chapter 11 of the House amendment takes a new approach consolidating subjects dealt with under chapter VIII, X, XI, and XII of the Bankruptcy Act. The new consolidated chapter 11 contains no special procedure for companies with public debt or equity security holders. Instead, factors such as the standard to be applied to solicitation of acceptances of a plan or reorganization are left to be determined by the court on a case-by-case basis. In order to insure that adequate investigation of the debtor is conducted to determine fraud or wrongdoing on the part of present management, an examiner is required to be appointed in all cases in which the debtor's fixed, liquidated, and unsecured debts, other than debts for goods, services, or

**Add. 33**

taxes, or owing to an insider, exceed $5 million. This should adequately represent the needs of public security holders in most cases. However, in addition, section 1109 of the House amendment enables both the Securities and Exchange Commission and any party in interest who is creditor, equity security holder, indenture trustee, or any committee representing creditors or equity security holders to raise and appear and be heard on any issue in a case under chapter 11. This will enable the bankruptcy court to evaluate all sides of a position and to determine the public interest. This approach is sharply contrasted to that under chapter X of present law in which the public interest is often determined only in terms of the interest of public security holders. The advisory role of the Securities and Exchange Commission will enable the court to balance the needs of public security holders against equally important public needs relating to the economy, such as employment and production, and other factors such as the public health and safety of the people or protection of the national interest. In this context, the new chapter 11 deletes archaic rules contained in certain chapters of present law such as the requirement of an approval hearing and the prohibition of prepetition solicitation. Such requirements were written in an age before the enactment of the Trust Indenture Act and the development of securities laws had occurred. The benefits of these provisions have long been outlived but the detriment of the provisions served to frustrate and delay effective reorganization in those chapters of the Bankruptcy Act in which such provisions applied. Chapter 11 thus represents a much needed revision of reorganization laws. A brief discussion of the history of this important achievement is useful to an appreciation of the monumental reform embraced in chapter 11.

Under the existing Bankruptcy Act, debtors seeking reorganization may choose among three reorganization chapters, chapter X, chapter XI, and chapter XII. Individuals and partnerships may file under chapter XI or, if they own property encumbered by mortgage liens, they may file under chapter XII. A corporation may file under either chapters X [sic] or chapter XI, but is ineligible to file under chapter XII. Chapter X was designed to facilitate the pervasive reorganization of corporations whose creditors include holders of publicly issued debt securities. Chapter XI, on the other hand, was designed to permit smaller enterprises to negotiate composition or extension plans with their unsecured creditors. The essential differences between chapters X and XI are as follows. Chapter X mandates that, first, an independent trustee be appointed and assume management control from the officers and directors of the debtor corporation; second, the Securities and Exchange Commission must be afforded an opportunity to participate both as an adviser to the court and as a representative of the interests of public security holders; third, the court must approve any proposed plan of reorganization, and prior to such approval, acceptances of creditors and shareholders may not be solicited; fourth, the court must apply the absolute priority rule; and fifth, the court has the power to affect, and grant the debtor a discharge in respect of, all types of claims, whether secured or unsecured and whether arising by reason of fraud or breach of contract.

The Senate amendment consolidates chapters X, XI, and XII, but establishes a separate and distinct reorganization procedure for "public companies." The special provisions applicable to "public companies" are tantamount to the codification of chapter X of the existing Bankruptcy Act and thus result in the creation of a "two-track system." The narrow definition of the term "public company" would require many businesses which

could have been rehabilitated under chapter XI to instead use the more cumbersome procedures of chapter X, whether needed or not.

The special provisions of the Senate amendment applicable to a "public company" are as follows:

(a) Section 1101(3) defines a "public company" as a debtor who, within 12 months prior to the filing of the petition, had outstanding $5 million or more in debt and had not less than 1000 security holders;

(b) Section 1104(a) requires the appointment of a disinterested trustee irrespective of whether creditors support such appointment and whether there is cause for such appointment;

(c) Section 1125(f) prohibits the solicitation of acceptances of a plan of reorganization prior to court approval of such plan even though the solicitation complies with all applicable securities laws;

(d) Section 1128(a) requires the court to conduct a hearing on any plan of reorganization proposed by the trustee or any other party;

(e) Section 1128(b) requires the court to refer any plans "worthy of consideration" to the Securities and Exchange Commission for their examination and report, prior to court approval of a plan; and

(f) Section 1128(c) and Section 1130(a)(7) requires the court to approve a plan or plans which are "fair and equitable" and comply with the other provisions of Chapter 11.

The record of the Senate hearings on S. 2266 and the House hearings on H.R. 8200 is replete with evidence of the failure of the reorganization provisions of the existing Bankruptcy Act to meet the needs of insolvent corporations in today's business environment. Chapter X was designed to impose rigid and formal-

**[S 17418]**

ized procedures upon the reorganization of corporations and, although designed to protect public creditors, has often worked to the detriment of such creditors. As the House report has noted:

The negative results under Chapter X have resulted from the stilted procedures, under which management is always ousted and replaced by an independent trustee, the courts and the Securities and Exchange Commission examine the plan of reorganization in great detail, no matter how long that takes, and the court values the business, a time consuming and inherently uncertain procedure.

The House amendment deletes the "public company" exception, because it would codify the well recognized infirmities of chapter X, because it would extend the chapter X approach to a large number of new cases without regard to whether the rigid and formalized procedures of chapter X are needed, and because it is predicated upon the myth that provisions similar to those contained in chapter X are necessary for the protection of public investors. Bankruptcy practice in large reorganization cases has also changed substantially in the 40 years since the Chandler Act was enacted. This change is, in large part, attributable to the pervasive effect of the Federal securities laws and the extraordinary success of the Securities and Exchange Commission in sensitizing both

**Add. 35**

management and members of the bar to the need for full disclosure and fair dealing in transactions involving publicly held securities.

It is important to note that Congress passed the Chandler Act prior to enactment of the Trust Indenture Act of 1939 and prior to the definition and enforcement of the disclosure requirements of the Securities Act of 1933 and the Securities Exchange Act of 1934. The judgments made by the 75th Congress in enacting the Chandler Act are not equally applicable to the financial markets of 1978. First of all, most public debenture holders are neither weak nor unsophisticated investors. In most cases, a significant portion of the holders of publicly issued debentures are sophisticated institutions, acting for their own account or as trustees for investment funds, pension funds, or private trusts. In addition, debenture holders, sophisticated, and unsophisticated alike, are represented by indenture trustees, qualified under section 77ggg of the Trust Indenture Act. Given the high standard of care to which indenture trustees are bound, they are invariably active and sophisticated participants in efforts to rehabilitate corporate debtors in distress.

It is also important to note that in 1938 when the Chandler Act was enacted, public investors commonly held senior, not subordinated, debentures and corporations were very often privately owned. In this environment, the absolute priority rule protected debenture holders from an erosion of their position in favor of equity holders. Today, however, if there are public security holders in a case, they are likely to be holders of subordinated debentures and equity and thus the application of the absolute priority rule under chapter X leads to the exclusion, rather than the protection, of the public.

The primary problem posed by chapter X is delay. The modern corporation is a complex and multifaceted entity. Most corporations do not have a significant market share of the lines of business in which they compete. The success, and even the survival, of a corporation in contemporary markets depends on three elements: First, the ability to attract and hold skilled management; second, the ability to obtain credit; and third, the corporation's ability to project to the public an image of vitality. Over and over again, it is demonstrated that corporations which must avail themselves of the provisions of the Bankruptcy Act suffer appreciable deterioration if they are caught in a chapter X proceeding for any substantial period of time.

There are exceptions to this rule. For example, King Resources filed a chapter X petition in the District of Colorado and it emerged from such proceeding as a solvent corporation. The debtor's new found solvency was not, however, so much attributable to a brilliant rehabilitation program conceived by a trustee, but rather to a substantial appreciation in the value of the debtor's oil and uranium properties during the pendency of the proceedings.

Likewise, Equity Funding is always cited as an example of a successful chapter X case. But it should be noted that in Equity Funding there was no question about retaining existing management. Rather, Equity Funding involved fraud on a grand scale. Under the House amendment with the deletion of the mandatory appointment of a trustee in cases involving "public companies," a bankruptcy judge, in a case like Equity Funding, would presumably have little difficulty in concluding that a trustee should be appointed under section 1104(6).

While I will not undertake to list the chapter X failures, it is important to note a number of cases involving corporations which would be "public companies" under the Senate

**Add. 36**

amendment which have successfully skirted the shoals of chapter X and confirmed plans of arrangement in chapter XI. Among these are Daylin, Inc. ("Daylin") and Colwell Mortgage Investors ("Colwell").

Daylin filed a chapter XI petition on February 26, 1975, and confirmed its plan of arrangement on October 20, 1976. The success of its turnaround is best evidenced by the fact that it had consolidated net income of $6,473,000 for the first three quarters of the 1978 fiscal year.

Perhaps the best example of the contrast between chapter XI and chapter X is the recent case of In Re Colwell Mortgage Investors. Colwell negotiated a recapitalization plan with its institutional creditors, filed a proxy statement with the Securities and Exchange Commission, and solicited consents of its creditors and shareholders prior to filing its chapter XI petition. Thereafter, Colwell confirmed its plan of arrangement 41 days after filing its chapter XI petition. This result would have been impossible under the Senate amendment since Colwell would have been a "public company."

There are a number of other corporations with publicly held debt which have successfully reorganized under chapter XI. Among these are National Mortgage Fund (NMF), which filed a chapter XI petition in the northern district of Ohio on June 30, 1976. Prior to commencement of the chapter XI proceeding, NMF filed a proxy statement with the Securities and Exchange Commission and solicited acceptances to a proposed plan of arrangement. The NMF plan was subsequently confirmed on December 14, 1976. The Securities and Exchange Commission did not file a motion under section 328 of the Bankruptcy Act to transfer the case to chapter X and a transfer motion which was filed by private parties was denied by the court.

While there are other examples of large publicly held companies which have successfully reorganized in chapter XI, including Esgrow, Inc. (C.D. Cal. 73–02510), Sherwood Diversified Services Inc. (S.D.N.Y. 73–B–213), and United Merchants and Manufacturers, Inc. (S.D.N.Y. 77–B–1513), the numerous successful chapter XI cases demonstrate two points: first, the complicated and time-consuming provisions of chapter X are not always necessary for the successful reorganization of a company with publicly held debt, and second, the more flexible provisions in chapter XI permit a debtor to obtain relief under the Bankrutpcy Act in significantly less time than is required to confirm a plan of reorganization under chapter X of the Bankruptcy Act.

One cannot overemphasize the advantages of speed and simplicity to both creditors and debtors. Chapter XI allows a debtor to negotiate a plan outside of court and, having reached a settlement with a majority in number and amount of each class of creditors, permits the debtor to bind all unsecured creditors to the terms of the arrangement. From the perspective of creditors, early confirmation of a plan of arrangement: first, generally reduces administrative expenses which have priority over the claims of unsecured creditors; second, permits creditors to receive prompt distributions on their claims with respect to which interest does not accrue after the filing date; and third, increases the ultimate recovery on creditor claims by minimizing the adverse effect on the business which often accompanies efforts to operate an enterprise under the protection of the Bankruptcy Act.

Although chapter XI offers the corporate debtor flexibility and continuity of management, successful rehabilitation under chapter XI is often impossible for a number of reasons.

**Add. 37**

D Collier on Bankruptcy (iii)

First, chapter XI does not permit a debtor to "affect" secured creditors or shareholders, in the absence of their consent. Second, whereas a debtor corporation in chapter X, upon the consummation of the plan or reorganization, is discharged from all its debts and liabilities, a corporation in chapter XI may not be able to get a discharge in respect of certain kinds of claims including fraud claims, even in cases where the debtor is being operated

**[S 17419]**

under new management. The language of chapter 11 in the House amendment solves these problems and thus increases the utility and flexibility of the new chapter 11, as compared to chapter XI of the existing Bankruptcy Act.

Those who would urge the adoption of a two-track system have two major obstacles to meet. First, the practical experience of those involved in business rehabilitation cases, practitioners, debtors, and bankruptcy judges, has been that the more simple and expeditious procedures of chapter XI are appropriate in the great majority of cases. While attempts have been made to convince the courts that a chapter X proceeding is required in every case where public debt is present, the courts have categorically rejected such arguments. Second, chapter X has been far from a success. Of the 991 chapter X cases filed during the period of January 1, 1967, through December 31, 1977, only 664 have been terminated. Of those cases recorded as "terminated," only 140 resulted in consummated plans. This 21 percent success rate suggests one of the reasons for the unpopularity of chapter X.

In summary, it has been the experience of the great majority of those who have testified before the Senate and House subcommittees that a consolidated approach to business rehabilitation is warranted. Such approach is adopted in the House amendment.

Having discussed the general reasons why chapter 11 of the House amendment is sorely needed, a brief discussion of the differences between the House bill, Senate amendment, and House amendment is in order. Since chapter 11 of the House amendment rejects the concept of separate treatment for a public company, sections 1101(3), 1104(a), 1125(f), 1128, and 1130(a)(7) of the Senate amendment have been deleted.

Section 1102(a) of the House amendment adopts a compromise between the House bill and Senate amendment requiring appointment of a committee of creditors holding unsecured claims by the court; the alternative of creditor committee election is rejected.

Section 1102(b) of the House amendment represents a compromise between the House bill and the Senate amendment by preventing the appointment of creditors who are unwilling to serve on a creditors committee.

Section 1104 of the House amendment represents a compromise between the House bill and the Senate amendment concerning the appointment of a trustee or examiner. The method of appointment rather than election, is derived from the House bill; the two alternative standards of appointment are derived with modifications from the Senate amendment, instead of the standard stated in the House bill. For example, if the current management of the debtor gambled away rental income before the filing of the petition, a trustee should be appointed after the petition, whether or not postpetition mismanagement can be shown. However, under no circumstances will cause include the number of security holders of the debtor, or the amount of assets or liabilities of the

**Add. 38**

debtor. The standard also applies to the appointment of an examiner in those circumstances in which mandatory appointment, as previously detailed, is not required.

The House amendment adopts section 1107(b) of the Senate amendment which clarifies a point not covered by the House bill. The House amendment adopts section 1108 of the House bill in preference to the style of an identical substantive provision contained in the Senate amendment. Throughout title II references to a "trustee" is read to include other parties under various sections of the bill. For example, section 1107 applies to give the debtor in possession all the rights and powers of a trustee in a case under chapter 11; this includes the power of the trustee to operate the debtor's business under section 1108.

Section 1109 of the House amendment represents a compromise between comparable provisions in the House bill and Senate amendment. As previously discussed the section gives the Securities and Exchange Commission the right to appear and be heard and to raise any issue in a case under chapter 11; however, the Securities and Exchange Commission is not a party in interest and the Commission may not appeal from any judgment, order, or decree entered in the case. Under section 1109(b) a party in interest, including the debtor, the trustee, creditors committee, equity securities holders committee, a creditor, an equity security holder, or an indentured trustee, may raise and may appear and be heard on any issue in a case under chapter 11. Section 1109(c) of the Senate amendment has been moved to subchapter IV pertaining to Railroad Reorganizations.

Section 1110 of the House amendment adopts an identical provision contained in the House bill without modifications contained in the Senate amendment. This section protects a limited class of financiers of aircraft and vessels and is intended to be narrowly construed to prevent secured parties or lessors from gaining the protection of the section unless the interest of such lessor or secured party is explicitly enumerated therein. It should be emphasized that under section 1110(a) a debtor in possession or trustee is given 60 days after the order for relief in a case under chapter 11, to have an opportunity to comply with the provisions of section 1110(a).

During this time the automatic stay will apply and may not be lifted prior to the expiration of the 60-day period. Under section 1110(b), the debtor and secured party or lessor are given an opportunity to extend the 60-day period, but no right to reduce the period is intended. It should additionally be noted that under section 1110(a) the trustee or debtor in possession is not required to assume the executory contract or unexpired lease under section 1110; rather, if the trustee or debtor in possession complies with the requirements of section 1110(a), the trustee or debtor in possession is entitled to retain the aircraft or vessels subject to the normal requirements of section 365. The discussion regarding aircraft and vessels likewise applies with respect to railroad rolling stock in a railroad reorganization under section 1168.

A discussion of section 1111(b) of the House amendment is best considered in the context of confirmation and will, therefore, be discussed in connection with section 1129.

Section 1112 of the House amendment represents a compromise between the House bill and Senate amendment with respect to the factors constituting cause for conversion of a case to chapter 7 or dismissal. The House amendment combines two separate factors contained in section 1112(b)(1) and section 1112(b)(2) of the Senate amendment. Section 1112(b)(1) of the House amendment permits the court to convert a case to a case under chapter 7 or to dismiss the case if there is both a continuing loss to or diminution of the

**Add. 39**

and will be represented on the Judicial Conference and the Board of the Federal Judicial Center.

In addition, bankruptcy judges will be removed from the administration of bankruptcy cases that has proved to be time consuming and a source of bias under the Bankruptcy Act. Bankruptcy judges will no longer preside at the first meeting of creditors. Trustees will no longer be a patronage appointment of the bankruptcy judge; rather, appointment is to be made from a private panel on a random basis or by the U.S. trustee.

The U.S. trustees will serve under the Attorney General in the Department of Justice on a trial basis during a 5 year transition period. The U.S. trustees will serve in 10 pilot programs covering 14 judicial districts during that time and will be responsible for supervision of panels of trustees and of the administration of bankruptcy cases in general. The U.S. trustee will also serve in no asset cases when no private trustee is willing to serve. Several administrative functions that have plagued bankruptcy judges under the Bankruptcy Act are transferred to the U.S. trustees under the pilot program established by H.R. 8200.

The separation of judicial and administrative functions in H.R. 8200, especially in the pilot districts served by a U.S. trustee, will result in a dramatic change in the way bankruptcy cases are conducted. For example, in the consumer no asset straight bankruptcy which comprises 80 percent of the cases year in and year out, the petition will be filed with schedules, but a U.S. trustee will most likely serve in the case.

H.R. 8200 deletes the $150 discretionary fee and provides a private trustee only $20 in a no asset case, so there is little likelihood that a private trustee

### [S 17433]

will serve unless forced. The debtor will attend the first meeting of creditors, but the bankruptcy judge may not attend or preside. Instead, the first meeting will operate like a deposition with the debtor's attorney or the U.S. trustee presiding. If objections are made, they will be resolved later by an unbiased bankruptcy judge who was not present at the first meeting. The debtor must answer all questions relating to financial matters unless the debtor invokes the privilege against self incrimination and the U.S. attorney refuses to grant use immunity. As under present law, creditors will file proofs of claims and there will be hearings on complaints objecting to the debtor's discharge or to the dischargeability of a debt.

However, if a creditor sues to determine the nondischargeability of a debt based on an alleged written false financial statement and the creditor loses, then the debtor will be paid attorneys fees by the creditors except in the rarest of circumstances. The debtor will usually have the choice of selecting State or Federal exemptions and may avoid liens on household goods. The debtor must appear at the hearing on discharge at which time any reaffirmations must be considered by the court. The debtor will be advised by the court of the consequences of reaffirming a debt and will be given a 30 day right of rescission.

In addition, if the debt is a consumer debt that is unsecured or secured by personal property the court may approve the reaffirmation only if it is in the best interest of the debtor and will not impose an undue hardship. An antidiscrimination provision in H.R. 8200 will protect the debtors fresh start by forbidding governmental agencies from denying the debtor basic rights on account of bankruptcy.

Add. 40

D Collier on Bankruptcy (iii)

The typical business reorganization case will also be much different under H.R. 8200 than under the Bankruptcy Act. H.R. 8200 contains a single reorganization chapter for all cases. In large cases, an examiner is appointed to investigate the affairs of the debtor, but there is never a mandatory appointment of a trustee. The examiner's investigation will not slow down the reorganization in any way. The debtor will file a petition and schedules of claims. The schedules will constitute a proof of claim on behalf of the creditor unless the claim is listed as disputed, contingent, or unliquidated. The debtor in possession may use all collateral in the ordinary course of business without a hearing except for "cash collateral" which requires the opportunity for a hearing except in emergencies. No order to operate the business is needed. If the debtor proposes to sell property free and clear of a lien, notice is given to the creditor and the creditor is given the opportunity for a hearing. If the creditor does not object, the debtor may sell the property without court order. If a creditor is concerned that property is being misused or depreciating, the creditor can demand adequate protection or relief from the automatic stay. If the business of the debtor is being mismanaged, creditors can also request the court to order the appointment of a trustee to oust the debtor from possession. The number of securities holders of the debtor is not a factor in determining the appointment of a trustee.

During the first 120 days the debtor has an exclusive right to file a plan of arrangement, but the creditors may file a plan after the exclusive period expires or when a trustee is appointed. The debtor is given 60 additional days in which to obtain acceptances. The debtor will negotiate with a creditors committee appointed by the court as to the terms of the plan. Prepetition acceptances are permitted if they comply with otherwise applicable law. Postpetition acceptances are permitted only if solicited by means of a disclosure statement which contains adequate information concerning the debtor and the plan.

After the requisite acceptances have been obtained from two-thirds in amount and a majority in number of each class impaired by the plan, the court will confirm the plan. If acceptances are not obtained to meet those standards, then the debtor may ask the court to "cram-down" confirmation. The court will then confirm the plan only if the plan is fair and equitable with respect to each dissenting class and every class junior to it. A corporation or partnership debtor receives a complete discharge but an individual is not discharged from certain debts.

The above procedure indicates that an expeditious, inexpensive procedure will be available to permit debtors to extend or compose their debts.

• Mr. MATHIAS. Mr. President, I have four questions regarding subchapter IV of chapter 7 of title I of the bill, which deals with commodity related bankruptcies. I note that the bill now before the Senate deletes section 766(b) and (c) of the bill as originally passed by the Senate, S. 2266. I also note, however, that the distinguished Senator's floor statement indicates that the protections previously sought to be provided under section 766(b) and (c) to commodity brokers, forward contract merchants and clearing organizations are now intended to be covered under section 764(c) and section 548(d)(2) of the bill now before us. Is that correct?

Mr. DeCONCINI. Yes.

Mr. MATHIAS. Am I correct in my understanding of the Senator's statement that the intent of section 764 and section 548(d)(2) is to provide that margin payments and settlement payments previously made by a bankrupt to a commodity broker, forward

**Add. 41**

PUBLIC LAW 95-598—NOV. 6, 1978          92 STAT. 2549

Public Law 95-598
95th Congress

## An Act

To establish a uniform Law on the Subject of Bankruptcies.

*Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,*

Nov. 6, 1978
[H.R. 8200]

Title 11, USC.
Bankruptcy.

## TITLE I—ENACTMENT OF TITLE 11 OF THE UNITED STATES CODE

SEC. 101. The law relating to bankruptcy is codified and enacted
as title 11 of the United States Code, entitled "Bankruptcy", and may
be cited as 11 U.S.C. §   , as follows:

11 USC prec. 101
note.

### TITLE 11—BANKRUPTCY

| CHAPTER | Sec. |
|---|---|
| 1. GENERAL PROVISIONS | 101 |
| 3. CASE ADMINISTRATION | 301 |
| 5. CREDITORS, THE DEBTOR, AND THE ESTATE | 501 |
| 7. LIQUIDATION | 701 |
| 9. ADJUSTMENT OF DEBTS OF A MUNICIPALITY | 901 |
| 11. REORGANIZATION | 1101 |
| 13. ADJUSTMENT OF DEBTS OF AN INDIVIDUAL WITH REGULAR INCOME | 1301 |
| 15. UNITED STATES TRUSTEES | 1501 |

## CHAPTER 1—GENERAL PROVISIONS

Sec.
101. Definitions.
102. Rules of construction.
103. Applicability of chapters.
104. Adjustment of dollar amounts.
105. Power of court.
106. Waiver of sovereign immunity.
107. Public access to papers.
108. Extension of time.
109. Who may be a debtor.

### § 101. Definitions

11 USC 101.

In this title—

(1) "accountant" means accountant authorized under applicable law to practice public accounting, and includes professional accounting association, corporation, or partnership, if so authorized;

(2) "affiliate" means—

(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity

**Add. 42**

## § 1103. Powers and duties of committees

11 USC 1103.

(a) At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

(b) A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the case.

(c) A committee appointed under section 1102 of this title may—

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title, if a trustee or examiner, as the case may be, has not previously been appointed under this chapter in the case; and

*Infra.*

(5) perform such other services as are in the interest of those represented.

(d) As soon as practicable after the appointment of a committee under section 1102 of this title, the trustee shall meet with such committee to transact such business as may be necessary and proper.

## § 1104. Appointment of trustee or examiner

11 USC 1104.

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

**Add. 43**

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

(c) If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the court shall appoint one disinterested person to serve as trustee or examiner, as the case may be, in the case.

*Ante,* p. 2562.
*Ante,* p. 2562.

11 USC 1105.

## § 1105. Termination of trustee's appointment

At any time before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate, and operation of the debtor's business.

11 USC 1106.

## § 1106. Duties of trustee and examiner

(a) A trustee shall—

*Ante,* p. 2605.

(1) perform the duties of a trustee specified in sections 704(2), 704(4), 704(6), 704(7), and 704(8) of this title;

*Ante,* p. 2586.

(2) if the debtor has not done so, file the list, schedule, and statement required under section 521(1) of this title;

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates;

(5) as soon as practicable, file a plan under section 1121 of this title, file a report of why the trustee will not file a plan, or recommend conversion of the case to a case under chapter 7 or 13 of this title or dismissal of the case;

*Ante,* p. 2603.

(6) for any year for which the debtor has not filed a tax return required by law, furnish, without personal liability, such information as may be required by the governmental unit with which such tax return was to be filed, in light of the condition of the debtor's books and records and the availability of such information; and

(7) after confirmation of a plan, file such reports as are necessary or as the court orders.

(b) An examiner appointed under section 1104(c) of this title shall perform the duties specified in paragraphs (3) and (4) of subsection (a) of this section, and any other duties of the trustee that the court orders the debtor in possession not to perform.

11 USC 1107.

## § 1107. Rights, powers, and duties of debtor in possession

(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensa-

SEC. 411. Section 40a of the Bankruptcy Act (11 U.S.C. 68(a)) is amended by striking out "$37,800" and inserting "$50,000" in lieu thereof, and by striking out "$18,900" and inserting "$25,000" in lieu thereof.

Approved November 6, 1978.

LEGISLATIVE HISTORY:

HOUSE REPORT No. 95-595 (Comm. on the Judiciary).
SENATE REPORTS: No. 95-989 accompanying S. 2266 (Comm. on the Judiciary) and
          No. 95-1106 accompanying S. 2266. (Comm. on Finance).
CONGRESSIONAL RECORD:
     Vol. 123 (1977): Oct. 27, 28, considered in House.
     Vol. 124 (1978): Feb. 1, considered and passed House.
                      Sept. 7, considered and passed Senate, amended, in lieu of
                        S. 2266.
                      Sept. 22, passage vitiated; amendment in the nature of a
                        substitute agreed to by Senate.
                      Sept. 28, House concurred in Senate amendment with an
                        amendment.
                      Oct. 5, Senate concurred in House amendment with an
                        amendment.
                      Oct. 6, House concurred in Senate amendment.