## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 |
| Debtors. | (Jointly Administered) |
| ANDREW VARA, UNITED STATES TRUSTEE, | |
| Appellant, | Case No. 23-cv-00241 |
| v. | |
| FTX TRADING LTD., *et al.*, | |
| Appellees. | |

## APPELLEES DEBTORS' OBJECTION TO THE MOTION OF APPELLANT ANDREW R. VARA, UNITED STATES TRUSTEE, TO CERTIFY DIRECT APPEAL TO THE COURT OF APPEALS UNDER 28 U.S.C. § 158(d)(2)

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

Appellees FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this objection (this "Objection") to the *Motion of Appellant Andrew R. Vara, United States Trustee, to Certify Direct Appeal to the Court of Appeals Under 28 U.S.C. § 158(d)* (the "Certification Motion" or "Mot."; D.I. No. 14).  In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[1]

The Certification Motion is the latest effort by the U.S. Trustee to advance its own policy agenda at the expense of the Debtors and their creditors.  Just two months ago, the Bankruptcy Court heard unrefuted testimony from the Debtors' CEO and Chief Restructuring Officer, John J. Ray III, that an examiner investigation would be duplicative of the ongoing investigations being conducted by the Debtors, the Committee, and state, federal, and international government authorities, and that appointment of an examiner would be affirmatively harmful to the Debtors for numerous reasons including the resulting cost, delay, and increased cybersecurity risk.  Relying on that testimony, the Bankruptcy Court concluded that appointment of an examiner is not in the best interests of the Debtors or their creditors.  Displeased with the Bankruptcy Court's decision, the U.S. Trustee is pursuing an appeal on the

---

[1]   Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the body of this Objection.

following issue: "Did the bankruptcy court err in denying the United States Trustee's motion to appoint an examiner under 11 U.S.C. § 1104(c)?"[2]

The U.S. Trustee is determined to foist an examiner on the Debtors over the objections of their creditors and the sound discretion of the Bankruptcy Court. Now seeking to bypass this Court's review of the Bankruptcy Court's decision, the U.S. Trustee attempts to reframe its own statement of the issue on appeal—which necessarily involves whether the Bankruptcy Court's *factual and legal* conclusions were correct (they were)—as a *purely legal* question arising under 11 U.S.C. § 1104(c)(2). But that effort fails, and the U.S. Trustee has not overcome the high bar necessary to establish that direct certification to the Third Circuit is appropriate. The Certification Motion should be denied for at least four reasons.

*First*, appeals of decisions based on mixed questions of law and fact are not eligible for direct certification. The U.S. Trustee admits as much by attempting to re-characterize its issue on appeal for purposes of the Certification Motion as a purely legal question. This gamesmanship aside, the Bankruptcy Court's decision to deny the request to appoint an examiner was based on the facts of this highly unique case and the evidence presented at the hearing. If the U.S. Trustee is permitted to directly appeal to the Third Circuit Court of Appeals, the entire appeal,

---

[2]   *See Statement of Issues to Be Presented on Appeal*, D.I. 6-1.

including the factual findings supporting the Bankruptcy Court's decision, would be before the Third Circuit.  That is not the purpose of a direct appeal pursuant to section 158(d)(2)(A), which is reserved for certain limited types of purely legal questions.

*Second*, the U.S. Trustee asserts with no support that its appeal is a matter of public importance.  While the U.S. Trustee may be correct that the public at large is generally interested in the collapse of FTX, that is an insufficient basis to grant direct certification of the appeal.  The U.S. Trustee has the burden to establish that the specific issue on appeal—the denial of appointment of an examiner—is one of sufficient public importance to warrant direct certification to the Third Circuit.  Yet the Certification Motion fails to explain why anyone besides the U.S. Trustee would want an examiner to be appointed at this stage of the Debtors' chapter 11 cases.  Nor could it have, as evidenced by the fact the Committee, which has been appointed as a fiduciary to all unsecured creditors of the Debtors' estates, objected to the appointment of an examiner.

*Third*, the U.S. Trustee concedes that there is no conflict among courts within this circuit on the issue of whether the appointment of an examiner pursuant to 11 U.S.C. § 1104(c)(2) is mandatory.  Courts within the Third Circuit unanimously hold that appointment of an examiner is not mandatory simply because the $5 million debt threshold is exceeded.  Instead, the U.S. Trustee posits that its appeal might resolve a conflict between the longstanding, consistent decisions of the

courts in this Circuit and two thinly reasoned out-of-circuit cases.  But intra-circuit conflicts are the only types of conflicts that may be certified, so any perceived inter-circuit conflict is irrelevant to this Court's analysis.

*Finally*, the U.S. Trustee does not even attempt to argue that this appeal would advance these cases, thereby conceding that it will not.  The Bankruptcy Court agreed, concluding in its decision that "under the facts and circumstances of these cases, the appointment of an examiner is not needed pursuant to 1104(c)(2) and appointing one would impose an unnecessary burden on the debtors and ultimately the creditors for whose benefit these cases are being pursued."  (Feb. 15, 2023 Hr'g Tr. 15:21–16:1.)    The U.S. Trustee cannot meet the stringent standard for certification of a direct appeal, and the Court should therefore deny the Motion.

## BACKGROUND

### A.    The Debtors and Their Chapter 11 Cases

On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the

Bankruptcy Court by entry of an order on November 22, 2022 [Bankr. D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Debtors' Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Bankr. D.I. 231].

Additional factual background relating to the Debtors' businesses and the commencement of the Debtors' Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [Bankr. D.I. 24] and the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [Bankr. D.I. 92].

**B.     The U.S. Trustee's Motion to Appoint an Examiner**

On December 1, 2022, the U.S. Trustee filed the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [Bankr. D.I. 176] (the "Examiner Motion") seeking an order appointing an examiner pursuant to section 1104(c) of the Bankruptcy Code.  The U.S. Trustee advanced two arguments in support of the appointment of an examiner:  (1) "appointment of an independent examiner would be in the interests of the Debtors' creditors and other parties in interest in the Debtors' estates, consistent with Code section 1104(c)(1)," and (2) "[t]he appointment of an examiner is mandatory under 11 U.S.C. § 1104(c)(2) because the Debtors' fixed, liquidated, unsecured debts to its customers

alone far exceed section 1104(c)(2)'s $5 million threshold." (*Id.* at 2.)  Notably, the U.S. Trustee did not propose a scope for the examiner's investigation in the Examiner Motion.  In colloquy at the Hearing, the U.S. Trustee suggested that the examiner's investigation could have no bounds.  (Feb. 6, 2023 Hr'g Tr. 86:3-89:7.) Certain state government agencies of Wisconsin, Vermont, and Texas filed joinders to the Examiner Motion.  [Bankr. D.I. 263, 339, 600.]

On January 25, 2023, the Debtors, the Committee, and the Joint Provisional Liquidators of FTX Digital Markets Ltd. each filed objections to the Examiner Motion.   [Bankr. D.I. 573, 571, 572.]   On February 1, 2023, the U.S. Trustee filed its reply to the filed objections.  [Bankr. D.I. 601.]

### C.    The Examiner Motion Hearing

On February 6, 2023, the Bankruptcy Court held a hearing on the Examiner Motion (the "Hearing").  The Bankruptcy Court heard extensive testimony at the Hearing from the Debtors' new CEO and Chief Restructuring Officer, John J. Ray, III.   Mr. Ray testified that based on his personal experience managing the debtors in the *Enron*, *Residential Capital*, *Nortel*, and *Overseas Shipholding* bankruptcies, it was his view that examiner reports generally failed to provide benefit to the estate commensurate with their enormous costs of $100 million or more.  (Feb. 6. 2023 Hr'g Tr. at 40:1–43:15.)

Among other things, Mr. Ray also testified about the scope of the ongoing investigations being conducted by the Debtors and the Committee in furtherance of maximizing recoveries to creditors while at the same time dedicating significant resources to cooperate with requests for information from law enforcement and regulators around the world. (*Id.* at 53:17–56:14.) Mr. Ray further testified that permitting an examiner and supporting professionals access to the Debtors' sensitive computing environment would expose the Debtors to unwarranted cybersecurity risks. (*Id.* at 66:14–67:9.)

The U.S. Trustee did not present any affirmative testimony at the hearing in support of the Examiner Motion.

### D.    The Bankruptcy Court Denies the Examiner Motion

On February 15, 2023, the Bankruptcy Court issued a bench ruling denying the Examiner Motion (the "Bench Ruling").  It credited the Debtors' arguments and made a number of factual findings that led to the conclusion that appointment of an examiner was not in the creditors' best interests.  The Bankruptcy Court determined that there was "no question" that Mr. Ray and the Debtors' new Board of Directors are "completely independent," and that they had retained "highly qualified" professionals to investigate and assist with the asset recovery efforts. (*See* Bench Ruling at 7:16-8:18.)  The Bankruptcy Court noted that "[a]ll prior senior management of the debtors were removed" by Mr. Ray's team, to ensure new

management's impartiality.  (*Id.* at 8:6-9.)  The Bankruptcy Court found that the Debtors' team was "fully capable of conducting a thorough investigation."  (*Id.* at 14:16–17.)  The Bankruptcy Court further found that the cost of an examiner "would be in the tens of millions of dollars and would likely exceed $100 million," imposing "exponential cost to the estate which would have to be borne by the creditors."  (*Id.* at 9:17–24.)  The Bankruptcy Court determined an examiner would be duplicative of the "multiple investigations underway" and, accordingly, "[r]equiring creditors to bear the burden of yet another investigation does not comport with the requirements of Section 1104(c)."  (*Id.* at 10:6–14.)  The Bankruptcy Court further noted that in this case, there were "no secured creditors . . . only unsecured creditors," who had objected to the appointment of an examiner.  (*Id.* at 15:7–8.)  The Bankruptcy Court also credited the "uncontroverted testimony" that appointing an examiner would increase the cybersecurity "risk of further loss through inadvertent disclosures or hacking."  (*Id.* at 15:14–20.)  As a result, the Bankruptcy Court denied the U.S. Trustee's request to appoint an examiner pursuant to 11 U.S.C. § 1104(c)(1).  (*Id.* at 10:6-14.)

The Bankruptcy Court denied the request to appoint an examiner pursuant to 11 U.S.C. § 1104(c)(2) in reliance on the same evidence.  In doing so, the Bankruptcy Court rejected the U.S. Trustee's argument that it is divested of any discretion as to whether to appoint an examiner if the debt threshold of $5 million is

exceeded, noting that the out-of-circuit cases cited by the U.S. Trustee "ignore the additional language of section 1104 that states 'to conduct such an investigation of the debtors as is appropriate'" (Bench Ruling at 11:16–18), while other courts, "including every bankruptcy judge in this district to consider the issue has concluded that there is discretion" (*id.* at 12:16–17) because "the as appropriate language in 1104(c) permits a Bankruptcy Court to deny the appointment of an examiner in limited circumstances even if the debtor meets the debt requirements of (c)(2)." (*Id.* at 12:1–5.)  Ultimately, the Bankruptcy Court concluded that "[g]iven the facts and circumstances of this highly unique case I have no doubt that the appointment of an examiner would not be in the best interests of the creditors." (*Id.* at 10:6–8.)

On February 21, 2023, the Bankruptcy Court entered its *Order Denying the Motion for the Appointment of an Examiner*.  (D.I. 1-1.)  The U.S. Trustee filed its *Notice of Appeal and Statement of Election* thirteen days later, on March 6, 2023. [Bankr. D.I. 805.]  On March 23, 2023, the U.S. Trustee filed its *Statement of Issues to be Presented on Appeal* (the "Statement of Issues"), which states a single issue: "Did the bankruptcy court err in denying the United States Trustee's motion to appoint an examiner under 11 U.S.C. § 1104(c)?"  (D.I. 6-1.)

Although all parties knew that the Bankruptcy Court would lose jurisdiction over the appeal on April 6, 2023 (30 days after the filing of the notice of appeal), the U.S. Trustee did not submit a certification motion in the Bankruptcy

Court until March 23, 2023.  [Bankr. D.I. 1142.]  The day before, after business hours, the U.S. Trustee asked the Debtors and the Committee to agree to certify its appeal to the Third Circuit and to have such certification heard on shortened notice prior to April 5, 2023.  The Debtors and the Committee objected to the U.S. Trustee's motion to have the certification question heard on shortened notice, and the Bankruptcy Court denied that request.   [Bankr. D.I. 1152, 1153, 1185.]   The U.S. Trustee then filed the instant Certification Motion on April 6, 2023.

## ARGUMENT

As the only moving party, the U.S. Trustee bears the burden of satisfying the requirements of section 158(d)(2)(A).  *See, e.g.*, *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 43–44 (D. Del. 2009) (placing burden on movant to "raise[] . . . issues . . . directly linked to the Bankruptcy Court decision," "identif[y] conflicting decisions," and "persuade[]" the court of the public importance of the case); *In re Conex Holdings, LLC*, 534 B.R. 606, 610–612 (D. Del. 2015) (denying certification because appellant's arguments were insufficient).  The U.S. Trustee argues that "at least two" bases for certifying a direct appeal to the Third Circuit pursuant to 11 U.S.C. § 158(d)(2)(A) are satisfied (while arguing three):  that its appeal (i) raises a purely legal issue about which there is no controlling Third Circuit precedent; (ii) involves a matter of public importance; and (iii) involves a question

of law requiring resolution of conflicting decisions.   (Mot. at 10–18.)   Upon examination, *none* of the statutory elements are present here.

### A.   The U.S. Trustee's Issue on Appeal is a Mixed Question of Law and Fact That is Not Appropriate for Certification.

The U.S. Trustee argues that "[t]his appeal raises the purely legal issue of whether a bankruptcy court has discretion under 11 U.S.C. § 1104(c)(2) to decline to order the appointment of an examiner upon request when the statutory debt threshold is met."   (Mot. at 13.)   But that misrepresents the U.S. Trustee's own statement of the actual issue on appeal.   The Statement of Issues challenges the denial of U.S. Trustee's "motion to appoint an examiner under 11 U.S.C. § 1104(c)"—thus implicating the denial both under sections 1104(c)(1) and 1104(c)(2) as discussed by the Bankruptcy Court in its decision and necessarily challenging *both* the legal and factual conclusions of the Bankruptcy Court set forth in the Bench Ruling.

Courts in this District have repeatedly held that appeals raising mixed questions of law and fact are not appropriate for direct certification.  *See, e.g.*, *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. at 44 (noting "mixed questions that implicate the particular circumstances of this case . . . are not pure legal questions warranting direct certification"); *In re Trib. Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) (holding that bankruptcy court's assessment of mixed question "[was] not a pure legal issue; it is not appropriate for direct appeal").

Section 158(d)(2)(A)(i) does not empower this Court to rewrite or narrow the issues it certifies for appeal, and there would be no basis for the Third Circuit to consider less than the entirety of the appeal—an appeal here that includes the Bankruptcy Court's factual findings set forth in the Bench Ruling. The U.S. Trustee must present only a question of pure law to which there is no controlling Third Circuit decision, and it has not done so. *See In re Goody's Fam. Clothing, Inc.*, 2009 WL 2355705, at *2 (D. Del. July 30, 2009) (holding "[t]he Court need not conclude that this case presents a question of first impression merely because [the U.S. Trustee] innovated a novel argument").

None of the cases cited by the U.S. Trustee support direct certification of appeals presenting mixed questions of law and fact, as the U.S. Trustee's appeal does here. Neither *In re IMMC Corp.*, 2016 WL 356026 (D. Del. Jan. 28, 2016) nor *In re Trib. Media Co.*, 2016 WL 1451161 (D. Del. Apr. 12, 2016) involved any factual issues on appeal. Nor did *In re Essar*, which is also distinguishable on the more fundamental basis that in that case, both the appellants and appellees agreed that certification should be granted and thus independently satisfied section 158(d)(2)(B)(ii). *In re Essar Steel Minn. LLC*, 2020 WL 3574743, at *4 (D. Del. July 1, 2020).

**B.      The U.S. Trustee Also Fails to Carry the Heavy Burden of Proving the Appeal is of Public Importance.**

The U.S. Trustee incorrectly argues that certification is appropriate under section 158(d)(2)(A)(i) because its appeal qualifies as a matter of public importance.  Courts interpret "public importance" in this context "narrowly."  *In re Nortel Networks Corp.*, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010). "The bar for certification under this standard should be set high."  1 COLLIER ON BANKRUPTCY ¶ 5.06 (Alan R. Resnick & Henry J. Sommer eds., 16th ed. 2022). That an appellant calls its issue on appeal one of "public importance" does not make it so.  *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 715-16 (Bankr. D. Del. 2016) (even so-called "public policy issue" of "third-party releases [which was] in no way inconsequential and [was] unqualifiedly important," and likely to recur, nevertheless did "not rise to the level of public importance").

The U.S. Trustee first argues in conclusory fashion that its appeal is a matter of public importance given some nonspecific "concerns not only about the management of [FTX] but about the cryptocurrency industry generally."  (Mot. at 16.)  But the U.S. Trustee does not identify a single decision in the Third Circuit actually holding that the nebulous "interest" of "the public at large" in *an entire case* satisfies section § 158(d)(2)(A)(i).  Instead, public importance arises where the outcome *of a specific dispute* receives "substantial public scrutiny."  *In re Nortel Networks Inc.*, 2016 WL 2899225, at *5 (D. Del. May 17, 2016).  The U.S. Trustee

does not attempt to explain how the public's alleged interest *in the Debtors' cases* constitutes interest *in an appeal seeking the appointment of an examiner*. It suggests elsewhere in its brief that this "question is one of significance because of the relevance of an examiner's report to those affected by this major corporate failure . . . ." (Mot. at 4.)  But tellingly, the Committee—the fiduciary for the millions of creditors with the principal financial stake in these Chapter 11 Cases—objected to the Examiner Motion.

The U.S. Trustee's position, if adopted, would permit any appeal in any case in which the public has a spectator-like interest to bypass the District Court and be certified immediately for consideration by the Third Circuit.  That is not what section 158(d)(2)(A)(i) provides.  Courts are entitled to reject an appellant's "attempt to manufacture an issue of public importance by contending that *the public at large* must share [its own] concern regarding" the issue on appeal.  *In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *5 (D. Del. Feb. 14, 2020) (emphasis added).  Doing so is especially appropriate where, as here, the appellant offers no explanation for how direct appeal would significantly advance jurisprudence.  *See id.*

The same logic dooms the U.S. Trustee's attempt to conjure "public importance" by vaguely linking the issue on appeal to "concerns" about the cryptocurrency industry.  *See In re Trib. Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) (declining to find an issue one of "public importance" simply because

appellant claimed it was "a matter of concern to the public markets"). If generalized policy concerns could elevate an issue to the level of "public importance," the U.S. Trustee would have an automatic direct appeal in most cases. Section 158 does not reflect Congress having that broad intent.

The U.S. Trustee next implies that the issue on appeal is a matter of public importance because the issue of whether the appointment of an examiner is mandatory has "ramifications" for other cases. (Mot. at 16 (citing *Aerogroup*, 2020 WL 757892, at *5).) The issue set forth in the Statement of Issues is not so limited. Beyond that, the U.S. Trustee fails to articulate why the denial of the request for an examiner in this case, over the objections of all economic stakeholders, has ramifications for other cases. In any event, courts routinely deny certification when a movant frames the issue on appeal as one that generally arises in a particular type of case. *See, e.g.*, *In re Maxus Energy Corp.*, 627 B.R. 259, 270 (Bankr. D. Del. 2021) ("[Appellant]'s generalities prove too much. If [Appellant] is correct, then *every* bankruptcy court decision involving professional ethics would qualify for direct appeal. *Clearly, more is needed*." (emphasis added)); *In re IMMC Corp.*, 2016 WL 356026, at *6 (D. Del. Jan. 28, 2016) (finding issue of bankruptcy court's power to transfer cases pursuant to section 1631 "not 'a matter of public importance'" even though said power was implicated in *every* section 1631 transfer case).

Nor does this appeal involve any fundamental bankruptcy protection. (Mot. at 16–17.)   The U.S. Trustee does not substantiate how interpreting and applying section 1104(c) implicates any fundamental bankruptcy protection of parties in interest.   In fact, few protections are held so fundamental that they satisfy the "public importance" requirement for certification of a direct appeal.   *See In re Nortel Networks Corp.*, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010) (declining to find "public importance" and denying certification even where appeal implicated "the fundamental protection of the automatic stay").   To establish public importance, the U.S. Trustee is obligated to do more than "rehash [its] position on the merits."   *In re Aerogroup Int'l., Inc.*, 2020 WL 757892, at *5.   The Certification Motion barely presents any argument at all.   Even if section 1104(c)(2) required the appointment of an examiner in every case if the debt threshold is met—and it does not—there is no dispute that the statute gives a bankruptcy court broad discretion to circumscribe an examiner's investigation, including by limiting its nature, extent, and duration.   Thus, the act of appointing an examiner certainly cannot be considered a fundamental bankruptcy protection.

Indeed, the only case the U.S. Trustee cites in which a court determined that the implicated protection was "fundamental" to bankruptcy involved "the Bankruptcy Court's authority to enforce the discharge injunction in its own Confirmation Order."   *In re Essar Steel Minn. LLC*, 2020 WL 3574743, at *6.   The

U.S. Trustee also cites to a passing mention of "special protection for the large cases having great public interest" in a 1978 Senate debate. (Mot. at 17.) However, it identifies nothing in that debate, in other legislative history, or any case law corroborating its pronouncement that 1104(c) creates "fundamental" protections for any party in interest.

In reality, the U.S. Trustee's appeal is nothing more than an effort by a party with no economic stake in these Chapter 11 Cases to "achieve [its] own agenda" at the expense of the Debtors' estates and creditors, which "weighs heavily against certification." *In re Nortel Networks Corp.*, 2010 WL 1172642, at *2 (denying motion for certification). The issue on appeal accordingly is not one of "public importance," direct appeal should not be granted on that basis, and the U.S. Trustee's argument that section 158(d)(2)(A)(i) provides a basis for direct certification fails.

### C. A Direct Appeal Will Not Reconcile Conflicting Decisions Because No Conflict Exists.

The U.S. Trustee acknowledges that "there is no conflict within this circuit." (Mot. at 17.) That admission conclusively determines that the requirements of 28 U.S.C. § 158(d)(2)(A)(ii) are not satisfied. As the Bankruptcy Court explained in its Bench Ruling, "every bankruptcy judge in this district to consider the issue has concluded that there is discretion" to deny the appointment of an examiner if

appropriate given the facts and circumstances of a particular case.  (Bench Ruling at 12:16–13:5 (citing cases).)

Instead, the U.S. Trustee argues that direct certification is warranted to "help resolve 'conflicting decisions' between the Bankruptcy Court and other jurisdictions regarding the question presented."  (Mot. at 17.)  But conflict between the widely accepted interpretation among courts in this district and two out-of-circuit cases (one of which is only a page long) is not the type of "conflict" that can trigger certification under section 158(d)(2)(A)(ii).

"The requisite conflict for § 158(d)(2)(A)(ii) can 'exist among bankruptcy judges in the same district or different districts, among district courts in the same district or different district, or among appellate panels in the same circuit." *In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *4.  But where "no split of authority exists *in the Third Circuit*," certification must be denied.  *In re Goody's Family Clothing, Inc.*, 2009 WL 2355705, at *2 (D. Del. 2009) (emphasis added); *Aerogroup Int'l*, 2020 WL 757892, at *4 (denying certification and collecting cases).

Indifferent to this black-letter rule, the U.S. Trustee points unavailingly to the "split" created by the "out-of-circuit" decisions in *Revco* and *Walton*.[3]  (Mot.

---

[3]   The U.S. Trustee wrongly characterizes *In re Loral Space & Commun., Ltd.*, as a "reported" appellate decision.  It is not.  2004 WL 2979785 (S.D.N.Y. Dec. 23, 2004).  In any event, the prevailing view in the reported cases of the Southern District of New York's bankruptcy courts is that appointment of an examiner is discretionary.  *See, e.g.*, *In re Residential*

17–18.)   However, "inter-circuit splits do not satisfy section 158(d)(2)."   *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 714 (Bankr. D. Del. 2016) (collecting cases).   The U.S. Trustee suggests that "resolution of the question presented would provide definitive guidance," but as it concedes, that is not the standard.   In any event, having repeatedly considered and rejected the U.S. Trustee's interpretation of section 1104(c)(2), courts in this Circuit have no need for immediate guidance from the Third Circuit.[4]

---

*Capital, LLC*, 474 B.R. 112, 120 (Bankr. S.D.N.Y. 2012); *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 639 (Bankr. S.D.N.Y. 2012).

[4]   *See* Hr'g Tr. at 40:5–7, *In re Mallinckrodt PLC*, No. 20-12522 (Bankr. D. Del. Nov. 23, 2021) (Dorsey, J.) (declining to appoint examiner notwithstanding satisfaction of debt threshold); Hr'g Tr. at 197:3–5, *In re EV Energy Partners*, No. 18-10814 (Bankr. D. Del. May 16, 2018) (same); Hr'g Tr. at 7:16–17, *In re Paddock Ents., LLC*, No. 20-10028 (Bankr. D. Del. June 17, 2020) (Silverstein, J.) (same); Hr'g Tr. at 97:6–13, *In re Washington Mutual, Inc.*, No. 08-12229 (MFW) (Bankr. D. Del. May 12, 2010) (same) (Walrath, J.); Hr'g Tr. at 170:16–20, *In re Visteon Corporation*, No. 09-11786 (Bankr. D. Del. May 12, 2010) (Sontchi, J.) (same; noting "I think it would be an absurd result to find that in every case where the financial criteria is met and a party-in-interest asks, the Court must appoint an examiner. There has to be an appropriate investigation that needs to be done."); *In re Spansion, Inc.*, 2010 WL 1292837, at *8 (Bankr. D. Del. Apr. 1, 2010) (same); Hr'g Tr. 31:18–22, *In re HSH Delaware GP LLC*, No. 10-10187 (MFW) (Bankr. D. Del. Apr. 23, 2010) (Walrath, J.) (same; "I do agree that there is some discretion in 1104(c)(2) that the Court must exercise, not only in determining whether and the amount of the unsecured non-trade debt but also in determining whether, in fact, any investigation is appropriate."); Hr'g Tr. 13:4–14:14, *In re Magna Entm't Corp.*, No. 09-10720 (MFW) (Bankr. D. Del. Apr. 20, 2010) (Walrath, J.) (same); Hr'g Tr. 45:11–14, *In re IdleAire Techs. Corp.*, No. 08-10960 (KG) (Bankr. D. Del. June 13, 2008) (Gross, J.), (same; "I don't think that it is mandatory based upon my reading of the legislative history, and just as the parties have pointed out, the language of the statute itself and, particularly, the as appropriate clause."); Hr'g Tr. 76:9–16, *In re Am. Home Mortgage Holdings, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del. Oct. 31, 2007) (Sontchi, J.) (same); Hr'g Tr. 23:16–18, *In re SA Telecomms., Inc.,* Nos. 97-2395 to 97-2401 (PJW) (Bankr. D. Del. Mar. 27, 1998) (Walsh, J.) (same; "[T]his Court has for years consistently viewed l104(c)(2) as not being a mandatory provision."); Hr'g Tr. 104:3–19, *In re Webcraft Techs., Inc.*, No. 93-1210 (HSB) (Bankr. D. Del. Nov. 4, 1993) (Balick, J.), (same).

**D.** **Direct Appeal Would Not Materially Advance This Case.**

Finally, the U.S. Trustee does not attempt to argue that its direct appeal satisfies 158(d)(2)(A)(iii) and thereby concedes that direct appeal would not materially advance this case.

## <u>CONCLUSION</u>

For the foregoing reasons, the U.S. Trustee's Certification Motion must be denied.

Dated:  April 20, 2023
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Appellees Debtors*
*and Debtors-in-Possession*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing brief complies with Federal Rule of Bankruptcy Procedure 8013(f) and this Court's Standing Order Regarding Briefing in All Cases because it contains 4,897 words and was prepared in 14-point Times New Roman font.

Dated: April 20, 2023                    */s/ Kimberly A. Brown*
                                         Kimberly A. Brown