No. 23-cv-00241

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

In re FTX TRADING LTD., *et al.*, Debtors.

---

ANDREW R. VARA, UNITED STATES TRUSTEE, Appellant,

v.

FTX TRADING LTD. *et al.*, Appellees.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

**BRIEF OF APPELLEE, THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

---

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
rpoppiti@ycst.com

PAUL HASTINGS LLP
Kristopher M. Hansen
Luc A. Despins
Kenneth Pasquale
Isaac S. Sasson
John F. Iaffaldano
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: krishansen@paulhastings.com
lucdespins@paulhastings.com
kenpasquale@paulhastings.com
isaacsasson@paulhastings.com
jackiaffaldano@paulhastings.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Bankruptcy Procedure 8012, Appellee, the Official Committee of Unsecured Creditors, is a statutorily designated entity and is not a corporation.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATEMENT OF THE ISSUE .......................................................................... 5

STANDARD OF REVIEW.................................................................................. 5

STATEMENT OF THE CASE ........................................................................... 5

SUMMARY OF THE ARGUMENT .................................................................. 8

ARGUMENT........................................................................................................ 9

I.       APPOINTMENT OF AN EXAMINER IS NOT MANDATORY ........................ 9

II.      APPOINTMENT OF AN EXAMINER IS NOT APPROPRIATE ..................... 13

         A.       The Debtors and the Committee Should and are Conducting the
                  Investigation ............................................................................... 13

         B.       An Examiner Will Not Benefit the Debtors' Stakeholders ........................ 15

III.     THE LEGISLATIVE HISTORY DOES NOT SUPPORT THE U.S.
         TRUSTEE'S POSITION.................................................................... 17

CONCLUSION ................................................................................................... 18

CERTIFICATE OF COMPLIANCE ............................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ACandS, Inc.*,
   Case No. 02-12687 (Bankr. D. Del. Nov. 18, 2002) ................................. 15

*In re Am. Home Mortg. Holdings, Inc*.,
   Case No. 07-11047 (Bankr. D. Del. Oct. 31, 2007)................................... 14

*In re CRED Inc., et al.*,
   Case No. 20-12836 (Bankr. D. Del. December 18, 2020)........................... 11

*Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel.*
   *Cybergenics Corp. v. Chinery*,
   330 F.3d 548 (3d Cir. 2003)....................................................... 17

*In re EV Energy Partners*,
   Case No. 18-10814 (Bankr. D. Del. May 16, 2018) ................................. 10

*In re IdleAire Techs. Corp.*,
   Case No. 08-10960 (Bankr. D. Del. June 13, 2008) ............................ 10, 15

*In re Kaiser Aluminum Corp.,*
   456 F.3d 328 (3d Cir. 2006)........................................................ 12

*In re Magna Entm't Corp*.,
   Case No. 09-10720 (Bankr. D. Del. Apr. 28, 2010) ................................. 15

*In re Residential Cap., LLC*,
   474 B.R. 112 (Bankr. S.D.N.Y. 2012) ............................................ 11, 12

*In re Trib. Media Co.*,
   587 B.R. 606 (D. Del. 2018) ......................................................... 5

*In re Visteon Corporation, et al.*,
   Case No. 09-11786 (Bankr. D. Del. May 12, 2010) ................................. 10

*In re Washington Mut., Inc*., *et al.*,
   Case No. 08-12229 (Bankr. D. Del. May 5, 2010) .................................. 16

**Statutes**

11 U.S.C. § 1102 ................................................................................................. 6
11 U.S.C. § 1103 ...................................................................................... 2, 6, 13
11 U.S.C. § 1104 .................................................................................... *passim*
11 U.S.C. § 1106 ............................................................................................... 17

**Other Authorities**

7 Collier on Bankruptcy ¶ 1103.05 (16th ed. 2022) ........................................ 17

# **INTRODUCTION**[1]

There is no dispute that the chapter 11 cases of the Debtors (the "Chapter 11 Cases") require a thorough investigation into a variety of issues surrounding FTX's "spectacular crash with billions worth of assets missing, allegations of gross mismanagement and massive fraud." Bench Ruling, A187:5-8.[2] However, that is not the issue presented in this Appeal. To the contrary, the question presented is not *whether* an investigation into these activities should take place, but rather, *who* should conduct the investigation. The Bankruptcy Court held that, in the circumstances of these bankruptcy cases, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 Cases, should conduct that investigation, and those fiduciaries have been pursuing that investigation before and after the decision below was issued.

In so holding, the Bankruptcy Court correctly relied upon the clear and unambiguous terms of section 1104(c) of the Bankruptcy Code: An examiner shall be appointed where ***either*** (1) "such appointment is in the interests of creditors, any equity

---

[1] Capitalized terms not defined have the meanings set forth for such terms in the Statement of the Case, *infra*.

[2] Citations to "A___" refer to either the Appellant's Appendix (A001 – A219) or the Appellee's Appendix (A220 – A648), as applicable. Citations to "A__(D.I.___)" refer to a docket entry on the docket sheet included in the Appellant's Appendix. Citations to "D.I.___" refer to the bankruptcy court's docket, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.).

security holders, and other interests of the estate," or (2) "the debtor's fixed, liquidated, unsecured debts . . . exceed $5,000,000" **and** the investigation of the debtor by an examiner "is appropriate." After an evidentiary hearing, during which the U.S. Trustee put forth no direct evidence (rather, it relied solely on cross-examination of the Debtors' witness), the Bankruptcy Court, in a well-reasoned and thorough Bench Ruling, found that, based on the facts and circumstances presented, appointment of an examiner in the Chapter 11 Cases was not appropriate. This Court should affirm that decision.

As the Bankruptcy Court recognized in its Bench Ruling, the prepetition conduct of the Debtors and their former management – none of whom remain employed by the Debtors – is already under a microscope. *See* Bench Ruling, A186:11-25. No fewer than three government agencies have publicly announced and commenced investigations, and a congressional committee is proceeding with its own independent investigation. On the eve of filing these Chapter 11 Cases, the Debtors' senior management was terminated and replaced with an experienced, independent team, which immediately began the necessary investigation and cooperating with the investigating governmental authorities. And, the U.S. Trustee appointed the nine-member Committee, which, immediately upon retaining professionals, began performing its statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor . . . ." 11 U.S.C. § 1103(c)(2).

The Bankruptcy Court correctly found that, in these "unique, unusual, highly complex, and unprecedented" circumstances (Bench Ruling, A187:1-2), it is the Debtors and Committee who should be conducting an investigation into the Debtors' prepetition conduct – not, an independent examiner. The Bankruptcy Court correctly recognized that an examiner will *not* benefit the creditors of the Debtors' estates, who would be forced to pay the examiner's bill and, as discussed below, are more than adequately represented by the Committee, which is statutorily authorized to investigate the Debtors' prepetition conduct.

Based upon the record before it, the Bankruptcy Court concluded that an examiner's investigation would delay progress and force the estates to incur significant incremental legal fees – which "would be in the tens of millions of dollars and would likely exceed $100 million" – for a report with *no* evidentiary value. Perhaps most importantly, the Bankruptcy Court held that appointment of an examiner would place the estate at serious risk of additional losses resulting from data leaks and hacks to and from the precarious technical systems to which an examiner would have to be granted access.

These circumstances are precisely why Congress intended to give bankruptcy courts discretion in applying section 1104(c)(2) to reject an investigation by an independent examiner where such an investigation would not be "appropriate." But, in the court below and by this appeal, the U.S. Trustee – seeking to make a policy

statement at the expense of the Debtors' creditors – asks this Court to ignore the Bankruptcy Court's factual findings and to reverse its decision, and find that a Bankruptcy Court has no discretion over appointment of an examiner, notwithstanding the "as is appropriate" qualifier in section 1104(c)(2). Yet, as exemplified by the U.S. Trustee's counsel's concession at the hearing that there were certain circumstances in which an examiner would not be appropriate,[3] it would be illogical if a party in interest was permitted to weaponize section 1104(c) by grinding a chapter 11 case to a complete halt at its whim, merely because the debtor has in excess of $5 million in unsecured debt (a low threshold in the world of complex chapter 11 cases). Nevertheless, that is the U.S. Trustee's position on this Appeal.

Accordingly, because an investigation by an examiner is not appropriate in these Chapter 11 Cases, this Court should affirm the Bankruptcy Court's order.

---

[3] "Even the Trustee concedes . . . that a Bankruptcy Court has some discretion in determining whether or not an examiner must be appointed under 1104(c)(2), for example, for a motion to appoint an examiner is being used by a creditor to obtain an advantage in plan negotiations. In other words, the Trustee agrees there are times when the appointment of an examiner would not be appropriate under 1104(c)(2)." (Bench Ruling, A191:2-9).

## STATEMENT OF THE ISSUE

Did the bankruptcy court correctly hold under 11 U.S.C. § 1104(c) that an examiner need not be appointed because such appointment is not appropriate in the circumstances of these bankruptcy cases?

## STANDARD OF REVIEW

This appeal presents a mixed question of law and fact. Accordingly, the Court must apply a "mixed standard of review, affording a clearly erroneous standard to integral facts, but exercising plenary review of the lower court's interpretation and application of those facts to legal precepts." *In re Trib. Media Co.*, 587 B.R. 606, 612 (D. Del. 2018) (citing *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010)).

## STATEMENT OF THE CASE

On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. and its affiliated entities (the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

On December 1, 2022, prior to its appointment of the Committee, the U.S. Trustee filed the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [A024 (D.I. 176)] (the "Examiner Motion"), seeking an order appointing an examiner to conduct an independent investigation into the

"allegations of fraud, dishonesty, misconduct, and mismanagement by the Debtors, the circumstances surrounding the Debtors' collapse, the apparent conversion of exchange customers' property, and whether colorable claims and causes of action exist to remedy losses." Examiner Motion at 2.

On December 15, 2022, the U.S. Trustee appointed nine members to the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code, having received a "tremendous response" from creditors "located all over the world" who wanted to serve on the Committee. *See Notice of Appointment of Committee of Unsecured Creditors* [A030 (D.I. 231)]; *In re FTX Trading, Ltd.*, Dec. 14 Hr'g Tr. at 13:4-10 [A030 (D.I. 235)]. The Committee is empowered by statute to act as a fiduciary for all of the estates' unsecured creditors. *See, e.g.*, 11 U.S.C. §§ 1102, 1103.

On January 25, 2023, the Committee, the Joint Provisional Liquidators of FTX Digital Markets Ltd. and the Debtors each filed an objection to the Examiner Motion [A069 (D.I. 571), A069 (D.I. 572) and A069 (D.I. 573)], respectively (each, an "Examiner Objection"). On February 1, 2023, the U.S. Trustee filed an omnibus reply to the Examiner Objections [A072 (D.I. 601)].

On February 15, 2023, after hearing testimony from the Debtors' Chief Executive Officer, John J. Ray III, and the parties' arguments, the Bankruptcy Court issued a bench ruling (the "Bench Ruling") denying the Examiner Motion, holding, among other things, that, "under the facts and circumstances of these cases,

appointment of an examiner is not needed." Bench Ruling, A195:21-23. In reaching

such conclusion, the Bankruptcy Court relied on the extensive evidentiary record

before it and found that:

- the Debtors are now being managed by "highly qualified professionals," who have ensured that "all prior senior management of the debtors were removed" (Bench Ruling, A187:16-A188:13);

- if appointed, an examiner would "have the same attributes as Mr. Ray and the independent directors," who are already deeply involved in the investigations (Bench Ruling, A189:8-16);

- permitting additional parties, such as an examiner, to access the Debtors' "extremely vulnerable electronic information containing crypto-assets that have already suffered hacking incidents," "would create an increased risk of further loss through inadvertent disclosures or hacking" (Bench Ruling, A188:18-24; A195:9-20);

- the cost of an examiner would be extremely high, "in the tens of millions of dollars and would likely exceed $100 million," which would be "borne by the creditors" (Bench Ruling, A189:17-A190:21);

- there are already "multiple investigations underway" and "[r]equiring the creditors to bear the burden of yet another investigation does not comport with the requirements of Section 1104(c)(1) or the general scheme of the bankruptcy code; that is to maximize recovery to creditors." (Bench Ruling, A190:6-14);

- that the appointment of an examiner is not mandatory pursuant to 11 U.S.C. § 1104(c)(2) because, among other reasons, "[e]ven the Trustee concedes . . . that a Bankruptcy Court has some discretion in determining whether or not an examiner must be appointed under 1104(c)(2), for example, for a motion to appoint an examiner is being used by a creditor to obtain an advantage in plan negotiations. In other words, the Trustee agrees there are times when the appointment of an examiner would not be appropriate under 1104(c)(2)" (Bench Ruling, A191:2-9);

- that "every bankruptcy judge in this district to consider the issue has concluded that there is discretion" to appoint an examiner under 11 U.S.C.

§ 1104(c)(2) inasmuch as an examiner may only be appointed when the circumstances are "appropriate" (Bench Ruling, A192:2-15 (collecting authority)); and

- that "under the facts and circumstances of these cases, appointment of an examiner is not needed pursuant to 1104(c)(2) and appointing one would impose an unnecessary burden on the debtors and ultimately the creditors for whose benefit these cases are being pursued. Contrary to the Trustees position this is not inconsistent with the language of the statute or the legislative history." (Bench Ruling, A195:21-A196:3).

The Bankruptcy Court entered the *Order Denying Motion for the Appointment of an Examiner* [A087 (D.I. 746)] (the "Examiner Order") on February 21, 2023, denying the Examiner Motion for the reasons stated in the Bench Ruling. On March 6, 2023, the U.S. Trustee filed its notice of appeal [A097 (D.I. 805)] (the "Notice of Appeal"), commencing the appeal (the "Appeal") from the Examiner Order.

## SUMMARY OF THE ARGUMENT

The appointment of an examiner pursuant to section 1104(c)(2) is not mandatory in every case in which an examiner is requested and a debtor has in excess of $5 million of unsecured, non-insider indebtedness. The U.S. Trustee's statutory interpretation to the contrary ignores the qualifier "as is appropriate." Section 1104(c) provides that "the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate* . . . ." 11 U.S.C. § 1104(c) (emphasis added). As the Bankruptcy Court found, where, as here, multiple investigations are already being conducted by the Debtors' independent management and the Committee, among others, a duplicative examination by an examiner is inappropriate and would

8

cause the estates to incur significant incremental legal fees at the expense of unsecured creditors. *See* Bench Ruling, A189:17-A190:21. Accordingly, based on the record before it, the Bankruptcy Court correctly denied the U.S. Trustee's motion to appoint an examiner because it found that an investigation *by an examiner* would not be appropriate. This Court should affirm the Bankruptcy Court's ruling.

## ARGUMENT

### I. Appointment of an Examiner is Not Mandatory

The U.S. Trustee's narrow argument is that appointment of an examiner is mandatory because the financial criterion set forth in section 1104(c)(2) is met and it has requested the appointment of an examiner.[4] As the Bankruptcy Court recognized below, section 1104(c)(2) is not so restrictive and, accordingly, appointment of an examiner is never mandatory. *See* Bench Ruling, A186:20-25. Specifically, section 1104(c) of the Bankruptcy Code provides:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate* . . . if –
>
> (1) such an appointment is in the interests of creditors, and equity security holders, and other interests of the estate; or

---

[4] The U.S. Trustee does not argue on this Appeal that appointment of an examiner is warranted in this case pursuant to section 1104(c)(1). Rather, its Appeal is solely with respect to the Bankruptcy Court's holding applying section 1104(c)(2).

> (2) the debtor's fixed, liquidated unsecured debtors, other than debts for goods, services, or taxes or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c) (emphasis added).

The Bankruptcy Court correctly found that mere satisfaction of the monetary debt threshold is not sufficient to require appointment of an examiner. As recognized below, bankruptcy courts in this district have repeatedly held that an examiner's appointment is not mandatory simply because the chapter 11 case meets the $5 million debt threshold set forth in the statute. Rather, given the statutory language, the appropriate inquiry is whether an examiner has an *appropriate* investigation to pursue. *See* Bench Ruling, A192:16-A193:5 (collecting authority); *see also* Hr'g Tr. at 196:22-25 (A355:22-25), *In re EV Energy Partners*, No. 18-10814 (Bankr. D. Del. May 16, 2018) (Sontchi, J.) ("I don't believe, and I've said this in numerous cases and my colleagues have said it, that it's just mandatory to appoint an examiner, as long as someone asks for one."); Hr'g Tr. at 45:11-15 (A617:11-14), *In re IdleAire Techs. Corp.*, No. 08-10960 (Bankr. D. Del. June 13, 2008) (Gross, J.) ("I don't think that [§ 1104(c)(2)] is mandatory based upon my reading of the legislative history . . . the language of the statute itself, and particularly, the as appropriate clause."); Hr'g Tr. at 170:16-20 (A601:16-20), *In re Visteon Corporation, et al*., No. 09-11786 (Bankr. D. Del. May 12, 2010) (Sontchi, J.) ("[I]t would be an absurd result to find that in every case where the financial criteria is met and a party-in-interests asks, the Court must

appoint an examiner. There has to be an appropriate investigation that needs to be done."); Hr'g Tr. at 97:12-18 (A646:12-18), *In re CRED Inc., et al.*, No. 20-12836 (Bankr. D. Del. December 18, 2020) (Dorsey, J.) ("I disagree with the UST's position that the appointment of . . . an examiner is mandatory. The language of . . . 1104(c) provides the Court with some discretion. . . . [I]t says that the Court shall appoint an examiner to conduct such an investigation . . . of the debtor as is appropriate. So the question becomes: Is it appropriate in this case?"); *see also In re Residential Cap., LLC*, 474 B.R. 112, 118 n.6 (Bankr. S.D.N.Y. 2012) ("For example, an examiner investigation might not be appropriate in cases where the SEC has completed a lengthy investigation and commenced an enforcement action laying out the specific misconduct of the debtor's prior management, or *where the company or its senior managers were indicted*, or where the creditors committee had already completed and reported on a lengthy investigation of its own.") (emphasis added). As the Bankruptcy Court correctly found, where, as here, there have already been multiple indictments of the Debtors' prepetition management and multiple criminal investigations are in progress (in addition to the investigations by the Debtors' new independent management and the Committee), an investigation by an examiner is simply not appropriate. *See* Bench Ruling, A193:6-A196:3.

The U.S. Trustee argued below and on Appeal that the phrase "as is appropriate" only modifies the scope of an examiner's investigation, and not the mandatory nature

of an examiner's appointment. *See Brief of Appellant Andrew R. Vara, United States Trustee* [D.I. 15] (the "Brief") at 14-15. The Bankruptcy Court, however, properly addressed and dismissed those arguments. Initially, in response to questioning at oral argument, the U.S. Trustee conceded that, notwithstanding its position that appointment of an examiner is mandatory, there are times when the appointment of an examiner would not be appropriate *under section 1104(c)(2)*. *See* Bench Ruling, A191:2-9. Indeed, the Bankruptcy Court correctly recognized the practical absurdity of the U.S. Trustee's position, noting that courts have discretion to extremely limit the scope of an investigation, even to a nullity, were an examiner required to be appointed. *See* Bench Ruling, A193:8-13 (quoting *Residential Cap.* 474 B.R. at 118 n.6 ("If the as is appropriate language provides such discretion with respect to the nature, extent, and duration of the investigation, then why doesn't the same language provide discretion to just say no to an examiner investigation where it may not be justified on the particular facts and circumstances of the case.")). This Court should not, as the U.S. Trustee asks, endorse such a reading of the Bankruptcy Code. *See In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006) ("A basic principle of statutory construction is that we should avoid a statutory interpretation that leads to absurd results.").

## II.    Appointment of an Examiner is Not Appropriate

Having held that the appointment of an examiner is not mandatory, the Bankruptcy Court also correctly held that the appointment of an examiner was not appropriate in these bankruptcy cases.

### A. The Debtors and the Committee Should and Are Conducting the Investigation

Initially, as the Bankruptcy Court recognized, the Debtors and the Committee are conducting, and should be the parties conducting, the investigation into the Debtors' prepetition activities. *See* Bench Ruling, A190:9-10. Congress, through section 1103 of the Bankruptcy Code, provided the Committee with broad powers to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business, and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2); 7 Collier on Bankruptcy ¶ 1103.05 (16th ed. 2022) ("The investigative authority granted to a committee is extremely broad and a committee may undertake whatever investigation is appropriate to enable it to fulfill its duty to monitor the operations of the debtor and participate in formulation of a plan.").

Consistent with their statutory duty, the Committee and the Debtors were and are conducting the necessary investigation to not only explain what transpired prepetition at FTX, but to determine, as estate fiduciaries, how to maximize recoveries for the Debtors' customers and other unsecured creditors. As the Bankruptcy Court

13

recognized, any appointment of an examiner would be duplicative of the investigation already taking place and would restart the investigation anew, wasting the momentum achieved to date in the these Chapter 11 Cases. *See* Hr'g Tr. at 77:2-8 (A625:2-8), *In re Am. Home Mortg. Holdings, Inc.*, Case No. 07-11047, (Bankr. D. Del. Oct. 31, 2007) (Sontchi, J.) (noting that because there were already ongoing investigations, the Court did not "think . . . there would be anything to be gained by appointing an examiner . . . .").

Moreover, the U.S. Trustee is simply wrong in contending, as applied here, that a creditors' committee (including this Committee) should not conduct an investigation because it is not a neutral party, as an advocate for general unsecured creditors. *See* Brief at 3 (arguing that an investigation conducted by the Committee would merely "advance their constituencies' economic interests"). Although the U.S. Trustee's arguments *might* have some level of merit in a typical mega chapter 11 case – where the Committee represents but one constituency in a complex capital structure – such concerns are completely inapplicable in these Chapter 11 Cases. Here, it is undisputed that the vast majority of the claims against the Debtors' estates are those of unsecured creditors. *See* Bench Ruling, A195:7-8 ("Here, there are no secured creditors. There are only unsecured creditors."). Therefore, the Committee is in the best position – and has a fiduciary responsibility – to perform the investigation on behalf of the *entire* body of the Debtors' creditors.

In sum, where, as here, an investigation is already being conducted by the Debtors' disinterested management and by the Committee, an examiner's investigation is not only inappropriate, but would be "futile." *See* Hr'g Tr. at 13:4-14:14 (A611:4-A612:14), *In re Magna Entm't Corp.*, No. 09-10720 (Bankr. D. Del. Apr. 28, 2010) (Walrath, J.) ("[S]ince all of the roles that an Examiner would play in this case have already been fulfilled [by the creditor's committee], I find it's a futile act and will not appoint an examiner."); Hr'g Tr. at 46:2-8 (A362:2-8), *In re IdleAire Techs. Corp.*, (Bankr. D. Del. June 13, 2008) (Gross, J.) (declining to appoint an examiner under § 1104(c)(2) when the "[creditor's] Committee's doing a very, very capable job"); Hr'g Tr. at 130:18-131:5 (A638:18-A639:5), *In re ACandS, Inc.*, No. 02-12687, (Bankr. D. Del. Nov. 18, 2002) (Newsome, J.) (denying an investigation by an examiner because it was an "utter and complete waste of money as well as time" when other parties were already investigating "the very same sets of transactions").

## B. An Examiner Will Not Benefit the Debtors' Stakeholders

The U.S. Trustee further contends that an examiner is necessary given the public interest in the cases and "the wider implications that FTX's collapse may have for the crypto industry." Brief at 11. The wider implications that FTX's collapse may have for the crypto industry are certainly of interest, but are not within the scope of the investigative duties described in the Bankruptcy Code, and, as the Bankruptcy Court concluded, are not costs that should be unnecessarily borne by the Debtors' estates.

Indeed, investigations into certain systemic issues in the crypto industry are already being conducted by a number of government agencies, including the Securities Exchange Commission, the Department of Justice and the Commodity Futures Trading Commission, and a congressional committee – not to mention journalists worldwide. The public is being served by those investigations without the need for the creditors of these Debtors to fund, through their potential recoveries (which, as the Bankruptcy Court noted, "will likely not come close to recovering the full amount of their losses" (Bench Ruling, A190:1-3)), an investigation that does not have as its primary goal increasing those very recoveries. *See* Hr'g Tr. at 98:12-100:6 (A593:12-A595:6), *In re Washington Mut., Inc.*, *et al.*, Case No. 08-12229, (Bankr. D. Del. May 5, 2010) (Walrath, J.) (denying the appointment of an examiner where the creditor committee is "fully able to conduct the investigation" and the "debtor has been investigated to death" for both criminal and civil proceedings, and noting that it would be "[un]fair to the creditors in this case to be saddled with the cost of an investigation into systematic problems, that would only benefit future parties but not benefit the parties in this case").

The record below was uncontested that it is the unsecured creditors that would pay for an examiner's investigation and report, over and above the other administrative expenses of these Chapter 11 Cases. *See* Bench Ruling, A189:17-20 ("There is no question that if an examiner was appointed here the cost of the examination, given the

16

scope suggested by the Trustee at the hearing, would be in the tens of millions of dollars and would likely exceed $100 million."). The Bankruptcy Court correctly noted that even if it were to appoint an examiner, "the debtors and the committee could not merely sit idly by while a months long investigation unfolded leading to exponential costs to the estate which would have to be borne by the creditors." Bench Ruling, A189:21-24.

The Debtors and Committee are already in the process of conducting an investigation and, significantly, any investigation conducted by an examiner will still have to be overseen and subject to diligence by the Debtors and the Committee – the parties who will ultimately have standing and need to make the decision whether any claims or causes of action should be prosecuted. Accordingly, an examiner's investigation would be redundant, a waste of estate resources and inappropriate. *See Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 578 (3d Cir. 2003) ("Critically, [sections 1106(a)(3)-(4)] permit only investigating and reporting on that investigation [by an examiner] – they stop far short of authorizing examiners to litigate based on their findings.").

## III.    The Legislative History Does Not Support the U.S. Trustee's Position

The legislative history of section 1104(c)(2) is of no help to the U.S. Trustee's position. *See* Brief at 20-24. The U.S. Trustee spends a significant portion of its brief arguing *which* legislative history – citing to dueling House Reports – should be relied

upon. This is a red herring. Neither of the House Reports explain what Congress intended by inclusion of the phrase "as is appropriate." Moreover, the U.S. Trustee does not cite to any legislative history that actually supports its statutory interpretation that the Bankruptcy Court has no discretion over appointment of an examiner. To the contrary, as the U.S. Trustee conceded and the Bankruptcy Court recognized, section 1104(c)(2), by it plains terms, provides the Bankruptcy Court with discretion over appointment of an examiner "as is appropriate" in the specific facts and circumstances of a given case. *See* Bench Ruling, A191:2-9.

## <u>CONCLUSION</u>

For these reasons, the Committee respectfully requests that this Court affirm the Examiner Order.

Dated: May 8, 2023          YOUNG CONAWAY STARGATT &
        Wilmington, Delaware     TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
       rpoppiti@ycst.com

-and-

PAUL HASTINGS LLP
Kristopher M. Hansen*
Luc A. Despins*
Kenneth Pasquale*
Isaac S. Sasson*
John F. Iaffaldano*
200 Park Avenue
New York, NY 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
       lucdespins@paulhastings.com
       kenpasquale@paulhastings.com
       isaacsasson@paulhastings.com
       jackiaffaldano@paulhastings.com

*Admitted pro hac vice*

*Counsel to the Official Committee of Unsecured Creditors*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. Bankr. P. 8015(h), the undersigned hereby certifies that this response complies with the type-volume limitation of Fed. R. Bankr. P. 8013(f)(3)(A), as well as the type, font and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases. Exclusive of the exempted portions specified in Fed. R. Bankr. P. 8015(g), the response contains 4,146 words. The response has been prepared using Microsoft Word. The undersigned has relied upon the word count feature of this word processing software in preparing this certificate.

May 8, 2023                                        */s/ Robert F. Poppiti, Jr.*
                                                   Robert F. Poppiti, Jr.