No. 23-cv-00241

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

In re FTX TRADING LTD., *et al.*, Debtors.

---

ANDREW R. VARA, UNITED STATES TRUSTEE, Appellant,

v.

FTX TRADING LTD. *et al.*, Appellees.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

**BRIEF OF APPELLEE-DEBTORS
FTX TRADING LTD., ET AL.**

---

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (*pro hac vice*)
James L. Bromley (*pro hac vice*)
Brian D. Glueckstein (*pro hac vice*)
Alexa J. Kranzley (*pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CORPORATE DISCLOSURE STATEMENT ......................................................i

STATEMENT OF THE CASE.................................................................1

   I.   Nature of the Case ..................................................................1

   II.  The FTX Debtors and Their Chapter 11 Cases ................................4

   III. The U.S. Trustee's Motion to Appoint an Examiner .....................5

   IV. The Examiner Motion Hearing ......................................................6

   V.  The Bankruptcy Court Denies the Examiner Motion.....................7

STATEMENT OF ISSUE AND STANDARD OF REVIEW .................................9

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT ....................................................................................12

   I.   The Bankruptcy Court Correctly Held that Section 1104(c)(2) Permits Discretion .........................................................................12

     A.  The Plain Reading of Section 1104(c) Gives Bankruptcy Courts Discretion to Determine Whether an Examiner Is Appropriate. ...............14

     B.  Mandatorily Imposing Examiners Under Section 1104(c)(2) Would Lead to Absurd Results.................................................................20

   II.  This Court Need Not Resort to the Ambiguous Legislative History .........26

   III. The U.S. Trustee Waived All Other Grounds For Appeal ........................27

CONCLUSION ....................................................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*In re Am. Home Mortgage Holdings, Inc.*,
No. 07-11047 (CSS) (Bankr. D. Del. Oct. 31, 2007) ............................ 12-13, 23

*Barnhart* v. *Thomas*,
540 U.S. 20 (2003) ................................................................................. 15

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgt. LLC* v. *Village at
Lakeridge, LLC*,
138 S. Ct. 960 (2018) ............................................................................. 10

*Cyan, Inc.* v. *Beaver Cnty. Emps. Ret. Fund*,
138 S. Ct. 1061 (2018) ........................................................................... 16

*Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel.
Cybergenics Corp.* v. *Chinery*,
330 F.3d 548 (3d Cir. 2003) .................................................................. 14

*Disabled in Action of Pennsylvania* v. *S.E. Pennsylvania Transp. Auth.*,
539 F.3d 199 (3d Cir. 2008) ..................................................... 14, 15, 17

*In re EV Energy Partners*,
No. 18-10814 (Bankr. D. Del. May 16, 2018) ....................................... 12

*In re Global Industry Technologies, Inc.*,
645 F.3d 201 (3d Cir. 2011) .................................................................. 24

*Gutierrez de Martinez* v. *Lamagno*,
515 U.S. 417 (1995) ............................................................................... 18

*In re HSH Delaware GP LLC*,
No. 10-10187 (MFW) (Bankr. D. Del. Apr. 23, 2010) ......................... 12

*In re IdleAire Techs. Corp.*,
No. 08-10960 (KG) (Bankr. D. Del. June 13, 2008) ............................. 12

*In re Kaiser Aluminum Corp.*,
456 F.3d 328 (3d Cir. 2006) .................................................................. 20

*Lafferty* v. *St. Riel*,
　495 F.3d 72 (3d Cir. 2007) ........................................................................ 18-19

*Lehman Bros. Holdings, Inc.* v. *Gateway Funding Diversified Mortg.*
　*Servs., L.P.*,
　785 F.3d 96 (3d Cir. 2015) ........................................................................10

*Long* v. *Tommy Hilfiger U.S.A., Inc.*,
　671 F.3d 371 (3d Cir. 2012) ......................................................................14

*In re Magna Entm't Corp.*,
　No. 09-10720 (Bankr. D. Del. Apr. 20, 2010)......................................12

*In re Mallinckrodt PLC*,
　No. 20-12522 (Bankr. D. Del. Nov. 23, 2021) .....................................12

*Allen ex rel. Martin* v. *LaSalle Bank, N.A.*,
　629 F.3d 364 (3d Cir. 2011) ......................................................................14

*Milner* v. *Dept. of Navy*,
　562 U.S. 562 (2011).....................................................................................26

*N.L.R.B.* v. *SW Gen., Inc.*,
　580 U.S. 288 (2017).....................................................................................27

*In re Neiman Marcus Group Ltd.*,
　No. 20-32519 (Bankr. S.D. Tex. May 29, 2020).................................23

*In re Paddock Ents., LLC*,
　No. 20-10028 (Bankr. D. Del. June 17, 2020)......................................12

*In re Price*,
　370 F.3d 362 (3d Cir. 2004) ................................................................ 14-15

*Ratzlaf* v. *United States*,
　510 U.S. 135 (1994).....................................................................................26

*In re Residential Capital, LLC*,
　474 B.R. 112 (Bankr. S.D.N.Y. 2012).................................................25

*In re Revco D.S., Inc.*,
　898 F.2d 498 (6th Cir. 1990) ....................................................................24

*In re SA Telecomms., Inc.*,
No. 97-2395 (Bankr. D. Del. Mar. 27, 1998) ......................................................13

*In re Schepps Food Stores, Inc.*,
148 B.R. 27 (S.D. Tex. 1992) ..............................................................24

*Shenango Inc.* v. *Apfel*,
307 F.3d 174 (3d Cir. 2002) ............................................................18

*In re Spansion, Inc.*,
2010 WL 1292837 (Bankr. D. Del. Apr. 1, 2010)............................................12

*In re Spansion, Inc.*,
426 B.R. 114 (Bankr. D. Del. 2010) ....................................................17

*Szehinskyj* v. *Atty. Gen. of United States*,
432 F.3d 253 (3d Cir. 2005) ............................................................27

*Tse* v. *Ventana Med. Sys., Inc.*,
297 F.3d 210 (3d Cir. 2002) ............................................................28

*United States* v. *Hayes*,
555 U.S. 415 (2009).....................................................................16

*United States* v. *Schneider*,
14 F.3d 876 (3d Cir. 1994) .............................................................15

*In re Visteon Corporation*,
No. 09-11786 (Bankr. D. Del. May 12, 2010)............................................12, 22

*Walton* v. *Cornerstone Ministries Investments, Inc.*,
398 B.R. 77 (N.D. Ga. 2008) ...........................................................24

*In re Washington Mutual, Inc.*,
No. 08-12229 (Bankr. D. Del. May 12, 2010)....................................................12

*In re Webcraft Techs., Inc.*,
No. 93-1210 (Bankr. D. Del. Nov. 4, 1993) ........................................................13

**Statutes**

11 U.S.C. § 1104.....................................................................*passim*

11 U.S.C. § 1109(b) ..................................................................22

11 U.S.C. § 1182 ......................................................................................4

## Other Authorities

Bryan Garner, Dictionary of Legal Usage 952–53 (3d ed. 2011) ..........................18

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 and Rule 8014 of the Federal Rules of Bankruptcy Procedure, FTX Trading Ltd., on behalf of itself and its affiliated debtors and debtors-in-possession (collectively, the "FTX Debtors"), states as follows based on information available to the FTX Debtors at the time of this filing:

1.    100% of the equity of Alameda Aus Pty Ltd. is owned by Alameda Research Ltd.

2.    100% of the equity of Alameda Global Services Ltd. is owned by Alameda Research LLC.

3.    100% of the equity of Alameda Research (Bahamas) Ltd. is owned by Alameda Research Ltd.

4.    100% of the equity of Alameda Research Holdings Inc. is owned by Alameda Research LLC.

5.    100% of the equity of Alameda Research KK is owned by Alameda Research LLC.

6.    There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Alameda Research LLC.

7.    100% of the equity of Alameda Research Ltd. is owned by Alameda Research LLC.

8.    100% of the equity of Alameda Research Pte Ltd. is owned by Alameda Research Ltd.

9.    99.9% of the equity of Alameda Research Yankari Ltd. is owned by Alameda Research Ltd.

10.    100% of the equity of Alameda TR Ltd. is owned by Alameda Research Ltd.

11.    100% of the equity of Alameda TR Systems S. de R. L. is owned by

Alameda Research Ltd.

12.     100% of the equity of Allston Way Ltd. is owned by FTX Trading Ltd.

13.     100% of the equity of Analisya Pte Ltd. is owned by FTX Trading Ltd.

14.     100% of the equity of Atlantis Technology Ltd. is owned by Alameda Research Holdings Inc. Services Ltd.

15.     100% of the equity of Bancroft Way Ltd. is owned by FTX Trading Ltd.

16.     Approximately 52% of the equity of Blockfolio, Inc. is owned by Blockfolio Holdings, Inc.

17.     100% of the equity of Blue Ridge Ltd. is owned by Alameda Research Ltd.

18.     100% of the equity of Cardinal Ventures Ltd. is owned by Alameda Research Ltd.

19.     100% of the equity of Cedar Bay Ltd. is owned by Alameda Research Ltd.

20.     There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Cedar Grove Technology Services, Ltd.

21.     There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Clifton Bay Investments LLC.

22.     100% of the equity of Clifton Bay Investments Ltd. is owned by Clifton Bay Investments LLC.

23.     100% of the equity of Cottonwood Grove Ltd. is owned by Alameda Research Ltd.

24.     100% of the equity of Cottonwood Technologies Ltd. is owned by Alameda Research Ltd.

25.     100% of the equity of Crypto Bahamas LLC is owned by FTX Trading Ltd.

26.     100% of the equity of DAAG Trading, DMCC is owned by FTX Europe AG.

27.     There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Deck Technologies Holdings

LLC.

28.　100% of the equity of Deck Technologies Inc.is owned by Deck Technologies Holdings LLC.

29.　100% of the equity of Deep Creek Ltd. is owned by FTX Trading Ltd.

30.　100% of the equity of Digital Custody Inc. is owned by West Realm Shires Inc.

31.　100% of the equity of Euclid Way Ltd. is owned by Alameda Research Ltd.

32.　100% of the equity of FTX (Gibraltar) Ltd. is owned by FTX Trading Ltd.

33.　100% of the equity of FTX Canada Inc. is owned by FTX Trading Ltd.

34.　100% of the equity of FTX Certificates GmbH is owned by FTX Europe AG.

35.　100% of the equity of FTX Crypto Services Ltd. is owned by FTX Trading Ltd.

36.　100% of the equity of FTX Digital Assets LLC is owned by West Realm Shires Financial Services Inc.

37.　100% of the equity of FTX Digital Holdings (Singapore) Pte Ltd. is owned by FTX Trading Ltd.

38.　100% of the equity of FTX EMEA Ltd. is owned by FTX Trading Ltd.

39.　100% of the equity of FTX Equity Record Holdings Ltd. is owned by FTX Trading Ltd.

40.　100% of the equity of FTX EU Ltd. (f/k/a K-DNA Financial Services Ltd) is owned by FTX Europe AG.

41.　100% of the equity of FTX Europe AG is owned by FTX Trading Ltd.

42.　100% of the equity of FTX Exchange FZE is owned by FTX Europe AG.

43.　100% of the equity of FTX Hong Kong Ltd. is owned by FTX Trading Ltd.

44.　100% of the equity of FTX Japan Holdings K.K. is owned by FTX Trading Ltd.

45.    100% of the equity of FTX Japan K.K. is owned by FTX Japan Holdings K.K.

46.    100% of the equity of FTX Japan Services KK is owned by FTX Japan Holdings K.K.

47.    100% of the equity of FTX Lend Inc. is owned by West Realm Shires Inc.

48.    100% of the equity of FTX Marketplace, Inc. is owned by West Realm Shires Inc.

49.    100% of the equity of FTX Products (Singapore) Pte Ltd. is owned by FTX Trading Ltd.

50.    100% of the equity of FTX Property Holdings Ltd. is owned by FTX Trading Ltd.

51.    100% of the equity of FTX Services Solutions Ltd. is owned by FTX Trading Ltd.

52.    100% of the equity of FTX Structured Products AG is owned by FTX Europe AG.

53.    100% of the equity of FTX Switzerland GmbH is owned by FTX Europe AG.

54.    100% of the equity of FTX Trading GmbH is owned by FTX Trading Ltd.

55.    Approximately 75% of FTX Trading Ltd. is owned by Paper Bird Inc.

56.    100% of the equity of FTX US Services, Inc. is owned by West Realm Shires Services Inc.

57.    100% of the equity of FTX US Trading, Inc. is owned by West Realm Shires Services Inc.

58.    100% of the equity of FTX Ventures Ltd. is owned by Paper Bird Inc.

59.    99.9% of the equity of FTX Zuma Ltd. is owned by FTX Trading Ltd.

60.    100% of the equity of GG Trading Terminal Ltd. is owned by FTX Trading Ltd.

61.    100% of the equity of Global Compass Dynamics Ltd. is owned by FTX

Trading Ltd.

62.   100% of the equity of Good Luck Games, LLC. is owned by West Realm Shires Inc.

63.   100% of the equity of Goodman Investments Ltd. is owned by Alameda Research Holdings Inc.

64.   100% of the equity of Hannam Group Inc. is owned by Alameda Research LLC.

65.   100% of the equity of Hawaii Digital Assets Inc. is owned by West Realm Shires Inc.

66.   There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Hilltop Technology Services LLC.

67.   100% of the equity of Hive Empire Trading Pty Ltd. is owned by FTX Trading Ltd.

68.   100% of the equity of Innovatia Ltd. is owned by FTX Trading Ltd.

69.   100% of the equity of Island Bay Ventures Inc. is owned by Paper Bird Inc.

70.   100% of the equity of Killarney Lake Investments Ltd. is owned by Alameda Research Holdings Inc.

71.   100% of the equity of Ledger Holdings Inc. is owned by West Realm Shires Inc.

72.   100% of the equity of LedgerPrime Bitcoin Yield Enhancement Fund, LLC is owned by Ledger Prime LLC.

73.   100% of the equity of LedgerPrime Bitcoin Yield Enhancement Master Fund LP is owned by LedgerPrime Bitcoin Yield Enhancement Fund, LLC.

74.   100% of the equity of LedgerPrime Digital Asset Opportunities Fund, LLC is owned by Ledger Prime LLC.

75.   100% of the equity of LedgerPrime Digital Asset Opportunities Master Fund LP is owned by LedgerPrime Digital Asset Opportunities Fund, LLC.

76.   100% of the equity of Ledger Prime LLC is owned by Alameda Research

LLC.

77. 100% of the equity of LedgerPrime Ventures, LP is owned by Ledger Prime LLC.

78. Approximately 50% of the equity of Liquid Financial USA Inc. is owned by FTX Japan Holdings K.K. and approximately 50% is owned by third party investors.

79. 100% of the equity of LiquidEX LLC is owned by Liquid Financial USA Inc.

80. 100% of the equity of Liquid Securities Singapore Pte Ltd. is owned by FTX Trading Ltd.

81. 100% of the equity of LT Baskets Ltd. is owned by FTX Trading Ltd.

82. 100% of the equity of Maclaurin Investments Ltd. is owned by Alameda Research Ltd.

83. 100% of the equity of Mangrove Cay Ltd. is owned by FTX Trading Ltd.

84. 100% of the equity of North Dimension Inc. is owned by Alameda Research LLC.

85. 100% of the equity of North Dimension Ltd. is owned by Alameda Research Ltd.

86. 100% of the equity of North Wireless Dimension Inc. is owned by Alameda Research LLC.

87. There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Paper Bird Inc.

88. 100% of the equity of Pioneer Street Inc. is owned by West Realm Shires Inc.

89. 100% of the equity of Quoine India Pte Ltd. is owned by FTX Japan K.K.

90. 100% of the equity of Quoine Pte Ltd. is owned by FTX Japan Holdings K.K.

91. 100% of the equity of Quoine Vietnam Co. Ltd. is owned by FTX Japan K.K.

92.     100% of the equity of Strategy Ark Collective Ltd.  is owned by Alameda Research Ltd.

93.     100% of the equity of Technology Services Bahamas Limited is owned by FTX Trading Ltd.

94.     100% of the equity of Verdant Canyon Capital LLC is owned by Alameda Research LLC.

95.     100% of the equity of West Innovative Barista Ltd. is owned by FTX Trading Ltd.

96.     100% of the equity of West Realm Shires Financial Services Inc. is owned by West Realm Shires Inc.

97.     There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of West Realm Shires Inc.

98.     100% of the equity of West Realm Shires Services Inc. is owned by West Realm Shires Inc.

99.     100% of the equity of Western Concord Enterprises Ltd. is owned by FTX Trading Ltd.

100.    100% of the equity of Zubr Exchange Ltd. is owned by Innovatia Ltd.

## STATEMENT OF THE CASE

### I.      Nature of the Case

The U.S. Trustee's appeal is the latest effort in its policy crusade to divest bankruptcy courts of discretion to decide whether an examiner is appropriate under the specific circumstances of a chapter 11 case.  The U.S. Trustee invites this Court to confer that discretion on the U.S. Trustee itself and on *every other party in interest*, who would then decide if and when to impose an examiner on a debtor with more than $5,000,000 in debt.  This Court should reject that invitation, just as the Bankruptcy Court did.

These Chapter 11 Cases[1] follow from the abrupt collapse of the FTX group in November 2022 after it was revealed that Samuel Bankman-Fried and others participated in a wide-spread conspiracy to defraud the FTX Debtors' customers.   There is no debate that the FTX Debtors' bankruptcy proceedings present issues of fraud, dishonesty, incompetence, misconduct, mismanagement, and irregularity in the affairs of the FTX Debtors—by past, not current, management.  The FTX Debtors and their new management have been clear about that from the beginning, at times describing the state of affairs as more closely resembling a crime

---

[1]    Terms not defined shall have the meaning ascribed to them later in this brief.  Citations to A1-A219 refer to the *Appendix of Appellant Andrew R. Vara, United States Trustee* [D.I. 16], and citations to A220-A648 refer to the *Appendix of Appellee-Debtors FTX Trading Ltd., et al.* filed contemporaneously herewith.

scene than an operating business.  But the FTX Debtors have also been clear that a new, independent management team and Board of Directors is in place, led by John J. Ray, III as CEO and Chief Restructuring Officer of each of the FTX Debtors.  The record is uncontroverted that Mr. Ray and the Board are both qualified and independent, and are working diligently with the Committee to investigate their predecessors' wrongdoing.

The U.S. Trustee fails to recognize the importance that two comprehensive investigations are advancing.  At the Hearing, the U.S. Trustee did not offer any affirmative evidence.  Rather, the Bankruptcy Court heard unrefuted testimony from Mr. Ray that an examiner investigation would duplicate the ongoing investigations being conducted by the FTX Debtors, the Committee, and state, federal, and international government authorities, and that appointment of an examiner would be affirmatively harmful to the FTX Debtors for numerous reasons, including the resulting cost, delay, and increased cybersecurity risk.

Unsurprisingly, on the basis of the FTX Debtors' evidence, the Bankruptcy Court denied the U.S. Trustee's motion to appoint an examiner.  The Bankruptcy Court, consistent with the decision of every bankruptcy court in this District, rejected the U.S. Trustee's interpretation of section 1104(c)(2) as being "mandatory" in all circumstances and denied the appointment of an examiner.

The record is clear that an examiner in these Chapter 11 Cases would be extremely expensive—every dollar of such cost to be borne by the FTX Debtors' creditors and without any incremental value provided in return.  Accordingly, the U.S. Trustee now abandons any argument that an examiner should be appointed under 11 U.S.C. § 1104(c)(1) because it would be in the best interests of the FTX Debtors' creditors.

Instead, the U.S. Trustee argues in this appeal that an examiner with duties of unknown scope and duration *must* nonetheless be appointed to conduct another new investigation into the FTX Debtors pursuant to 11 U.S.C. § 1104(c)(2) simply because the U.S. Trustee requested it, no plan has been confirmed, and the FTX Debtors' fixed, liquidated unsecured debts exceed $5,000,000.

According to the U.S. Trustee, section 1104(c)(2) leaves the bankruptcy court *no* discretion to deny appointment of an examiner, even if the bankruptcy court determines that, as here:  (i) there is no appropriate investigation that the examiner could undertake that would not be duplicative of other investigations already underway, and is thus not necessary; and (ii) appointing an examiner would harm the creditors and the Debtors' estates.  (A503–14, Feb. 6. 2023 Hr'g Tr. at 91:1–102:17.)

The U.S. Trustee's reading of section 1104(c)(2) is wrong and would have profound negative consequences for chapter 11 cases in this jurisdiction, both

large and small.[2]  As a result, the Bankruptcy Court's ruling should be affirmed. Should this Court nonetheless determine that appointment of an examiner is mandatory, it should remand to provide the Bankruptcy Court an opportunity to determine the appropriate scope of any examination.

## II.     The FTX Debtors and Their Chapter 11 Cases

On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the FTX Debtors filed with the Bankruptcy Court voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  The FTX Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the FTX Debtors' cases (the "Chapter 11 Cases") was authorized by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") by entry of an order on November 22, 2022.  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the FTX Debtors' Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code.

---

[2]     Pursuant to Subchapter V of the Bankruptcy Code, the debt threshold to qualify for a small business reorganization is $7.5 million or less, which notable is $2.5 million more than the $5 million threshold in section 1104(c)(2) of the Bankruptcy Code.  *See* 11 U.S.C. § 1182(1)(A).

### III.   The U.S. Trustee's Motion to Appoint an Examiner

On December 1, 2022, the U.S. Trustee filed the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [Bankr. D.I. 176] (the "Examiner Motion") seeking an order appointing an examiner pursuant to section 1104(c) of the Bankruptcy Code.  (A220–48.)  The U.S. Trustee advanced two arguments in support of the appointment of an examiner: (1) "appointment of an independent examiner would be in the interests of the Debtors' creditors and other parties in interest in the Debtors' estates, consistent with Code section 1104(c)(1)," and (2) "[t]he appointment of an examiner is mandatory under 11 U.S.C. § 1104(c)(2) because the Debtors' fixed, liquidated, unsecured debts to its customers alone far exceed section 1104(c)(2)'s $5 million threshold." (A238.)  Notably, the U.S. Trustee did not propose a scope for the examiner's investigation in the Examiner Motion.  In colloquy at the Hearing, the U.S. Trustee instead suggested that the examiner's investigation might have no bounds.  (A498–501, Feb. 6, 2023 Hr'g Tr. 86:3–89:7.)

On January 25, 2023, the FTX Debtors, the Committee, and the Joint Provisional Liquidators of FTX Digital Markets Ltd. each filed objections to the Examiner Motion.  (A249-72, A273–403, A404–12.)

## IV.    The Examiner Motion Hearing

On February 6, 2023, the Bankruptcy Court held a hearing on the Examiner Motion (the "Hearing").  The U.S. Trustee offered no witnesses in support of the Examiner Motion.  The Bankruptcy Court heard extensive testimony at the Hearing from the FTX Debtors' new CEO and Chief Restructuring Officer, John J. Ray, III.  Mr. Ray testified that based on his personal experience managing the debtors in the *Enron*, *Residential Capital*, *Nortel*, and *Overseas Shipholding* bankruptcies, it was his view that examiner reports generally failed to provide benefit to the estate commensurate with their enormous costs of $100 million or more.  (A452–55, Feb. 6. 2023 Hr'g Tr. at 40:1–43:15.)

Among other things, Mr. Ray offered uncontradicted testimony about the scope of the ongoing investigations being conducted by the FTX Debtors and the Committee in furtherance of maximizing recoveries to creditors while at the same time dedicating significant resources to cooperate with requests for information from law enforcement and regulators around the world.  (A465–66, *id.* at 53:17–54:7.) Mr. Ray further testified that permitting an examiner and supporting professionals access to the FTX Debtors' sensitive computing environment would expose the FTX Debtors to unwarranted cybersecurity risks.  (A478–79, *id.* at 66:14–67:9.)

## V.     The Bankruptcy Court Denies the Examiner Motion

On February 15, 2023, the Bankruptcy Court issued a bench decision denying the Examiner Motion (the "Decision").  It credited the FTX Debtors' arguments and made a number of factual findings based on Mr. Ray's testimony that led to the conclusion that appointment of an examiner was not in the creditors' best interests.  The Bankruptcy Court determined there was "no question" that Mr. Ray and the FTX Debtors' new Board of Directors are "completely independent," and that they had retained "highly qualified" professionals to investigate and assist with the asset recovery efforts.  (A187–88, Decision at 8:16–8:18.)  The Bankruptcy Court noted that "[a]ll prior senior management of the debtors were removed" by Mr. Ray's team, to ensure new management's impartiality.  (A188, *id.* at 8:6–13.)  The Bankruptcy Court found that the FTX Debtors' team was "fully capable of conducting a thorough investigation."  (A194, *id.* at 14:16–17.)  The Bankruptcy Court further found that the cost of an examiner "would be in the tens of millions of dollars and would likely exceed $100 million," imposing "exponential cost to the estate which would have to be borne by the creditors."  (A189, *id.* at 9:17–24.)  The Bankruptcy Court determined an examiner would be duplicative of the "multiple investigations underway" and, accordingly, "[r]equiring the creditors to bear the burden of yet another investigation does not comport with the requirements of Section 1104(c) . . . ."  (A190, *id.* at 9:6–14.)  The Bankruptcy Court further noted

that in this case, there were "no secured creditors . . . only unsecured creditors," who had objected to the appointment of an examiner. (A195, *id.* at 15:7–8.) The Bankruptcy Court also credited the "uncontroverted testimony" that appointing an examiner would increase the cybersecurity "risk of further loss through inadvertent disclosures or hacking." (A195, *id.* at 15:14–20.) As a result, the Bankruptcy Court denied the U.S. Trustee's request to appoint an examiner pursuant to 11 U.S.C. § 1104(c)(1).

The Bankruptcy Court denied the request to appoint an examiner pursuant to 11 U.S.C. § 1104(c)(2) as not appropriate in reliance on the same evidence. In doing so, the Bankruptcy Court rejected the U.S. Trustee's argument that it is divested of any discretion as to whether to appoint an examiner if the debt threshold of $5 million is exceeded. (A191.) In doing so the Bankruptcy Court noted that the out-of-circuit cases cited by the U.S. Trustee "**ignore the additional language of section 1104 that states 'to conduct such an investigation of the debtors as is appropriate**'" (A191, Decision at 11:16–18 (emphasis added)), while other courts, "including every bankruptcy judge in this district to consider the issue has concluded that there is discretion" (A192, *id.* at 12:16–17) because "the as appropriate language in 1104(c) permits a Bankruptcy Court to deny the appointment of an examiner in limited circumstances even if the debtor meets the debt requirements of (c)(2)." (A191, *id.* at 11:1–5.) Ultimately, the Bankruptcy

-8-

Court concluded that "[g]iven the facts and circumstances of this highly unique case I have no doubt that the appointment of an examiner would not be in the best interests of the creditors." (A190, *id.* at 10:6–8.)

On February 21, 2023, the Bankruptcy Court entered its *Order Denying the Motion for the Appointment of an Examiner*. (A213–A214.) The U.S. Trustee filed its *Notice of Appeal and Statement of Election* thirteen days later, on March 6, 2023. (A215–A219.) On March 23, 2023, the U.S. Trustee filed its *Statement of Issues to be Presented on Appeal* (the "Statement of Issues"), which stated a single issue: "Did the bankruptcy court err in denying the United States Trustee's motion to appoint an examiner under 11 U.S.C. § 1104(c)?" (A553.)[3]

## STATEMENT OF ISSUE AND STANDARD OF REVIEW

The sole remaining question presented by the U.S. Trustee's appeal as briefed is whether 11 U.S.C. § 1104(c)(2) requires the bankruptcy court to appoint an examiner in all circumstances if requested by the U.S. Trustee or another party-in-interest where no trustee has been appointed, no plan has been confirmed, and the

---

[3]   The U.S. Trustee filed its Brief [D.I. 15] prematurely alongside other filings, including the uncontested motion to waiver mediation [D.I. 18], which remains pending. Pursuant to the Standing Order dated September 11, 2012 (the "Standing Order"), all briefing in connection with an appeal from the Bankruptcy Court is deferred during the pending of mediation unless the Court determines otherwise or an order or an order is entered withdrawing the matter from mediation. *See Standing Order* ¶ 2(a)-(b). The Debtors nonetheless are filing their Appellee Brief now, when it would otherwise be due, but the Debtors do not waive and expressly reserve all rights and arguments with respect to scheduling matters in this Appeal and otherwise with respect to any filings by the U.S. Trustee.

debtor's fixed, liquidated, unsecured debts (other than debts for goods, services, or taxes, or owing to an insider) exceed $5,000,000.

On appeal from a bench trial, the appellate court reviews the lower court's "conclusions of law de novo." *Lehman Bros. Holdings, Inc.* v. *Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 100 (3d Cir. 2015). But "[b]y well-settled rule, [the bankruptcy court's] factual findings are reviewable only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgt. LLC* v. *Village at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018).[4]

## SUMMARY OF THE ARGUMENT

This Court should affirm the Bankruptcy Court's February 15, 2023 Decision denying the U.S. Trustee's motion to appoint an examiner for numerous reasons.

*First*, the Bankruptcy Court correctly determined the plain-language construction of section 1104(c)(2). The word "shall" is not controlling when read in the context of the entire statutory provision. The relevant statutory phrase is that "the court shall order the appointment of an examiner to conduct such an investigation of the Debtor as is appropriate . . . ." 11 U.S.C. § 1104(c). The term

---

[4]  The U.S. Trustee in its Brief abandons its arguments with respect to 11 U.S.C. § 1104(c)(1) and does not even attempt to challenge any of the Bankruptcy Court's factual findings.

"as is appropriate" must be given weight and could undoubtedly cause a court to conclude, in particular circumstances, that *no* examiner is appropriate. That construction comports best with the statutory scheme and with logic.

In contrast, the construction urged by the U.S. Trustee yields absurd consequences. In particular, the U.S. Trustee's construction of section 1104(c)(2) attacks the Bankruptcy Court's ability to manage the case before it. The U.S. Trustee's interpretation of the statute, if accepted, would permit *any* party-in-interest—from the U.S. Trustee itself to a holdout creditor seeking to disrupt the process for leverage—to at any time move for and immediately obtain the appointment of an examiner if the $5,000,000 debt threshold is met. Whether appointing an examiner would derail the restructuring, harm creditors or the estate, or enable a party-in-interest to improve its own litigation position at the expense of all other stakeholders is of no consequence to the U.S. Trustee. This new world order would be of significant consequence to the FTX Debtors—and to all debtors and creditors, and courts overseeing chapter 11 cases. Such an interpretation also creates the possibility that the Bankruptcy Court would need to appoint an examiner with no duties or budget to prevent stakeholders from being harmed.

*Second*, because there is a plain-language interpretation of the statute that avoids absurd and damaging consequences, the Court need not resort to the legislative history upon which the U.S. Trustee relies. That said, even review of the

-11-

legislative history reveals that Congress's intent is not nearly as clear as the U.S. Trustee portrays.  And there is significant consensus among modern bankruptcy courts, particularly within the District of Delaware, that the U.S. Trustee's position is wrong.

*Third*, the U.S. Trustee fails in its brief to challenge the Bankruptcy Court's factual findings and resulting denial of an examiner based upon them pursuant to sections 1104(c)(1) and (c)(2), and thus waives those arguments.

## **ARGUMENT**

### I.   **The Bankruptcy Court Correctly Held that Section 1104(c)(2) Permits Discretion**

Like every other bankruptcy court in this district that has construed the statute, the Bankruptcy Court correctly held that section 1104(c)(2) gives bankruptcy courts discretion to determine whether *any* examiner investigation is appropriate under the specific circumstances of a case.  (A195, Decision at 15:21–25.)[5]

---

[5]   *Accord* Hr'g Tr. at 40:5–7, *In re Mallinckrodt PLC*, No. 20-12522 (Bankr. D. Del. Nov. 22, 2021) (Dorsey, J.) (A570-79) (declining to appoint examiner notwithstanding satisfaction of debt threshold); Hr'g Tr. at 197:3–5, *In re EV Energy Partners*, No. 18-10814 (Bankr. D. Del. May 16, 2018) (A580-84) (same); Hr'g Tr. at 7:16–17, *In re Paddock Ents., LLC*, No. 20-10028 (Bankr. D. Del. June 17, 2020) (Silverstein, J.) (A585-87) (same); Hr'g Tr. at 97:5–13, *In re Washington Mutual, Inc.*, No. 08-12229 (Bankr. D. Del. May 12, 2010) (A588-96) (Walrath, J.) (same); Hr'g Tr. at 170:16–20, *In re Visteon Corporation*, No. 09-11786 (Bankr. D. Del. May 12, 2010) (Sontchi, J.) (A597-602) (same); *In re Spansion, Inc.*, 2010 WL 1292837, at *8 (Bankr. D. Del. Apr. 1, 2010) (same); Hr'g Tr. 31:18–22, *In re HSH Delaware GP LLC*, No. 10-10187 (Bankr. D. Del. Apr. 23, 2010) (Walrath, J.) (A603-06) (same); Hr'g Tr. 13:4–14:14; 14:22–23, *In re Magna Entm't Corp.*, No. 09-10720 (Bankr. D. Del. Apr. 20, 2010) (Walrath, J.) (A607-12) (same); *see also* Hr'g Tr. 45:11–14, *In re IdleAire Techs. Corp.*, No. 08-10960 (Bankr. D. Del. June 13, 2008) (Gross, J.) (A613-19) (same); Hr'g Tr. 76:9–16, *In re Am. Home Mortgage Holdings, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del. Oct. 31, 2007)

Section 1104(c) states in relevant part:

If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, **the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate**, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c) (emphasis added).

The emphasized clause provides that appointment of an examiner to investigate is mandatory only *when such an investigation "is appropriate"* and when either that appointment would be in creditors' interests or when the debtor's debts exceed $5 million.  Read as a whole, section 1104(c) plainly gives a bankruptcy court discretion to appoint—or to decline to appoint—an examiner when it

---

(Sontchi, J.) ((A620-26) (same); Hr'g Tr. 23:16–18, *In re SA Telecomms., Inc.*, Nos. 97-2395 to 97-2401 (Bankr. D. Del. Mar. 27, 1998) (Walsh, J.) (A627-29) (same; "[T]his Court has for years consistently viewed [section] 1104(c)(2) as not being a mandatory provision."); Hr'g Tr. 104:3–19, *In re Webcraft Techs., Inc.*, No. 93-1210 (HSB) (Bankr. D. Del. Nov. 4, 1993) (Balick, J.)  (A630-33) (same).

determines that the circumstances so warrant.  As explained below, concluding that courts retain discretion as to whether to appoint an examiner based on the facts and circumstances of a particular chapter 11 case comports with a plain reading of the text of the statute and is the only reading that reflects the realities of administering complex bankruptcy cases—the very reason why courts in this district have uniformly rejected the U.S. Trustee's "mandatory" interpretation.

### A. The Plain Reading of Section 1104(c) Gives Bankruptcy Courts Discretion to Determine Whether an Examiner Is Appropriate.

When tasked with determining the meaning of a statute, courts must begin with its text.  *Allen ex rel. Martin* v. *LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011).  Courts must also analyze "the specific context in which that language is used, and the broader context of the statute as a whole."  *Long* v. *Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 374-75 (3d Cir. 2012) (quoting *Disabled in Action of Pa.* v. *S.E. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008)).  "As the Supreme Court has often noted, statutory construction [] is a holistic endeavor, and this is especially true of the Bankruptcy Code."  *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 559 (3d Cir. 2003) (internal citation omitted).

When the court "can arrive at a natural reading of a [Bankruptcy] Code provision, informed not only by the language of the provision itself *but also by its context*, the burden to persuade [it] to adopt a different reading is 'exceptionally

-14-

heavy.'" *In re Price*, 370 F.3d 362, 369 (3d Cir. 2004) (emphasis added and internal citation omitted).  The Supreme Court has "urg[ed] courts to 'not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'"  *Id.* (quoting *Kelly* v. *Robinson*, 479 U.S. 36, 43 (1986)).  A statutory provision is not ambiguous simply because "by itself, [it is] susceptible to differing constructions."  *Disabled in Action of Pa.*, 539 F.3d at 210. Instead, a particular construction is most persuasive when it comports with the overall "object and policy" of the statute, *United States* v. *Schneider*, 14 F.3d 876, 879 (3d Cir. 1994), and avoids "odd" or "absurd results" "inconsistent with common sense," *Disabled in Action of Pa.*, 539 F.3d. at 210.  A reading of section 1104(c) of the Bankruptcy Code that affords discretion to appoint an examiner even when (c)(2) is satisfied follows most naturally from the language and context of section 1104 as a whole.

      *First*, to force section 1104(c)(2) to mean that the bankruptcy court must appoint an examiner when the debt threshold is met, the U.S. Trustee claims that under the "last antecedent" canon of statutory construction, the modifying phrase "as is appropriate" necessarily affects only "such investigation as is appropriate," not "shall order the appointment of an examiner."  (App. Br. 15-17.) This is wrong.  In fact, the modifying phrase "as is appropriate" plainly applies to "shall order the appointment of an examiner to conduct such an investigation of the

debtor."  According to the canon, a modifying phrase "should ordinarily be read as modifying only the noun *or phrase* that it immediately follows."   *Barnhart* v. *Thomas*, 540 U.S. 20, 26 (2003) (emphasis added) (internal citation omitted).

Here, section 1104(c) commands the court to appoint an examiner specifically to conduct an investigation.  The phrases "shall order the appointment of an examiner" and "to conduct an investigation as appropriate" cannot plausibly be separated from each other.  Accordingly, the Court should logically conclude that the "shall order" clause "hangs together as a unified whole, referring to a single thing."  *Cyan, Inc.* v. *Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018). "As is appropriate" modifies that whole, since the only thing an examiner can be appointed to do is conduct an appropriate investigation.  If there is no appropriate investigation, then there is no examiner who shall be appointed.  Section 1104(c)(2) is therefore discretionary.

That said, the U.S. Trustee's invocation of the canon is unavailing even under its reading.  "The rule of the last antecedent, however, 'is not an absolute and can assuredly be overcome by other indicia of meaning.'"  *United States* v. *Hayes*, 555 U.S. 415, 425 (2009) (quoting *Barnhart*, 540 U.S. at 26).  Courts may decline to strictly apply the last antecedent canon where doing so would require them to accept "unlikely premises" or absurd results.  *See Hayes*, 555 U.S. at 425.

Here, confining the effect of "as is appropriate" to solely the scope of the investigation produces those "absurd results" that are "inconsistent with common sense." *Disabled in Action of Pa.*, 539 F.3d. at 210–11 (rejecting illogical invocation of rule of the last antecedent). In particular, the U.S. Trustee's construction would force a bankruptcy court to appoint an examiner even if it determines that *no* investigation is appropriate. A construction of section 1104(c)(2) requiring that a court *must* waste the time and creditor resources to appoint an examiner to conduct an unwarranted investigation is precisely the kind of absurd interpretation that courts seek to avoid. Alternatively, as discussed below, bankruptcy courts would be faced with needing to appoint an examiner and then provide no meaningful scope or budget to control the process. *E.g.*, *In re Spansion, Inc.*, 426 B.R. 114, 127 (Bankr. D. Del. 2010) ("To appoint an examiner with no meaningful duties strikes me as a wasteful exercise, a result that could not have been intended by Congress.")

The U.S. Trustee argues at length that the text of section 1104(c) uses the word "shall" and that the word "shall" must mean the appointment of an examiner to be mandatory. (App. Br. at 13-14.) Not so. Of course, if the FTX Debtors and the Bankruptcy Court are correct, the phrase "as is appropriate" applies to shall, and thus the Bankruptcy Court correctly exercised discretion. But in any event, the use of "shall" itself in this context should appropriately be read to reflect the Bankruptcy Court having discretion.

This construction is consistent with the text. The Supreme Court itself has observed that "[t]hough 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'" *Gutierrez de Martinez* v. *Lamagno*, 515 U.S. 417, 432 n.9 (1995) (collecting statutory examples); *see also Shenango Inc.* v. *Apfel*, 307 F.3d 174, 193 (3d Cir. 2002) ("[W]e cannot satisfactorily resolve that question [of statutory interpretation] by focusing upon a single word in a statute, even when that word appears to be as conclusive of congressional intent as 'shall' appears to be."). "[C]ourts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and *vice versa*." Bryan Garner, Dictionary of Legal Usage 952 (3d ed. 2011) (emphasis in original). There is no dispute that the bankruptcy court retains discretion whether to appoint an examiner under section 1104(c)(1) despite being subject to the same predicate "shall order the appointment of an examiner . . . as is appropriate." 11 U.S.C. § 1104(c).

*Second*, the Court must consider section 1104(c) in the context of the entire statute. Section 1104 of the Bankruptcy Code governs the "[a]ppointment of a trustee or an examiner," with section 1104(a) governing when a court may appoint a trustee and section 1104(c) governing when a court may appoint an examiner. The two subsections closely mirror each other and should therefore be interpreted similarly. *Cf. Lafferty* v. *St. Riel*, 495 F.3d 72, 81–82 (3d Cir. 2007) (subsequent

history omitted) ("This interpretation finds additional support in the common canon of statutory construction that *similar statutes are to be construed similarly*." (emphasis added)).

Like section 1104(c), section 1104(a) provides that a court "shall" appoint a trustee "for cause" or "if such appointment is in the interests of creditors, equity security holders, and other interests of the estate."  The U.S. Trustee acknowledges that bankruptcy courts retain discretion as to whether to appoint a trustee under section 1104(a) despite the use of the word "shall."  (App. Br. 17-18.)

Section 1104(a)(2) permits the bankruptcy court to appoint a trustee if such an appointment is in the interest of creditors, but expressly without regard to the amount of liabilities of the debtor.  11 U.S.C. § 1104(a)(2).  Section 1104(c)(2) preserves the discretion but makes a notable change with respect to the appointment of an examiner:  a bankruptcy court is empowered to appoint an examiner "as is appropriate" but based solely on the amount of the debt if that debt exceeds $5,000,000.  Thus, sections 1104(c)(1) and 1104(c)(2) have different roles.  Even if the party-in-interest requesting the examiner fails to show that the requirements of section 1104(c)(1) are satisfied, the bankruptcy court may still appoint an examiner as an alternative to a trustee "*as is appropriate*" solely because of the amount of debt at issue.  To the extent that Congress "intended to provide special treatment for bankruptcies that meet the $5 million debt threshold" (App. Br. at 18), section

-19-

1104(c)(2) does so by giving bankruptcy courts an ability to appoint an examiner in higher debt bankruptcies—but does not make it mandatory.

### B.      Mandatorily Imposing Examiners Under Section 1104(c)(2) Would Lead to Absurd Results.

The U.S. Trustee's alternative interpretation of section 1104(c)(2) is not the plain reading and should be rejected.   Beyond that, requiring that a bankruptcy judge appoint an examiner whenever requested by the U.S. Trustee or any other party in interest whenever debts exceed $5,000,000 would lead to absurd results by eviscerating the Bankruptcy Court's ability to prevent interference in cases before it.  *See In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006) ("A basic principle of statutory construction is that we should avoid a statutory interpretation that leads to absurd results.").

Examples of those absurd results are plentiful.  When pressed at the Hearing, the U.S. Trustee explained its position that if the debt requirement is satisfied and the other provisions of section 1104(c)(2) are met, upon request, then in *every single circumstance* the bankruptcy court *must* appoint an examiner to conduct an investigation.  (A503–08, Feb. 6, 2023 Hr'g Tr. 91:3-96:20.)  This would include situations where, as the Bankruptcy Court posited, a creditor requests an examiner a week before the confirmation hearing on some unspecified wrongful

conduct and derails that confirmation process.  (A504–06, *id.* 92:23:94–16.)[6]  This would also include a hypothetical situation where the cost of an examination would push the debtor into administrative insolvency.  (A506, *id.* 94:17–25.)  According to the U.S. Trustee, the Bankruptcy Court could not consider the motives of the party requesting an examiner even if they are plainly abusive.  These exchanges highlight the absurdity of the U.S. Trustee's position:  it removes from the Bankruptcy Court any ability to prevent harm to the debtor's estate and its stakeholders from an examination that is requested as a litigation tactic by a single creditor or could imperil the debtor's prospects of reorganization.

---

[6]   The U.S Trustee expressly took this position before the Bankruptcy Court.  The Bankruptcy Court asked the U.S. Trustee the following question:

> "Say a debtor meets the debt threshold under 1104(c)(2) and, a week before the confirmation hearing, a creditor comes in and says we want you, Judge, to appoint an examiner . . . .  Am I obligated to appoint an examiner in that circumstance and put off confirmation of the plan for however long it takes the examiner to do a report?"

(A505-05, Feb. 6, 2023 Hr'g Tr. 92:23–93:6.)

After a clarifying aside, the U.S. Trustee answered as follows:

> "[I]f somebody comes in and makes allegations that seem to be, you know, motivated by, you know, a litigation tactic or something that doesn't seem to be in good faith, then the Code provision does state that *an examiner still has to be appointed if that threshold is met*, but the examiner can look into are there any grounds for these allegations, I mean, is there anything."

(A506, *id.* at 94:6–12 (emphasis added).

The threat of appointment of an examiner at any time would be unwarranted leverage in the hands of potentially thousands (or in the case of the FTX Debtors, millions) of individual parties in interest.  Courts construe the term party-in-interest "broadly" to include any party with "a sufficient stake in the proceeding so as to require representation." *In re Glob. Indus. Techs.*, Inc., 645 F.3d 201, 211 (3d Cir. 2011) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)). Debtors, trustees, creditors, equity holders, and various committees may all be parties in interest.  11 U.S.C. § 1109(b).  The U.S. Trustee's reading of the statute enables any one of them to foist an examiner upon the other parties at will.  That reading is irreconcilable with rest of the Bankruptcy Code, which provides parties in interest a "broad right of *participation* in Chapter 11 cases." *Id.* at 210 (emphasis added); 11 U.S.C. § 1109(b).

Because nothing in the Bankruptcy Code indicates that parties in interest should have the power to override the judgment of the Bankruptcy Court, every bankruptcy court in this District has rejected the U.S. Trustee's position. *See, e.g.*, Hr'g Tr. at 170:16–20, *In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. May 12, 2010) (Sontchi, J.), ECF. No. 3145, ("[I]t would be an absurd result to find that in every case where the financial criteria is met and a party-in-interest asks, the Court must appoint an examiner. There has to be an appropriate investigation that needs to be done."); Hr'g Tr. at 76:09–12, *In re Am. Home Mortg. Holdings, Inc.*, No. 07-

11047 (Bankr. D. Del. Oct. 31, 2007) (Sontchi, J.), ECF No. 1997, ("[T]he other piece of the [(c)(2)] puzzle is that there has to be an investigation to perform that's appropriate. . . . *I think that's a more nuanced approach than sort of saying it is what it is, and if you cry 'examiner' in a crowded case, you get one.*" (emphasis added)).

Some other courts have attempted to avoid resulting harm by appointing an examiner and then preclude any actual examination taking place through scope and budget limitations. *See, e.g.*, Hr'g Tr. at 188:21–189:24, *In re Neiman Marcus Group Ltd.*, No. 20-32519 (Bankr. S.D. Tex. May 29, 2020), ECF No. 827 (appointing an examiner notwithstanding own findings that an examiner was unmerited, but limiting examiner's budget and duration to $100,000 and three weeks, resulting in withdrawal of motion to appoint examiner); *In re Parmalat USA Corp.*, No. 04-11139 (Bankr. S.D.N.Y. May 17, 2004), ECF No. 383 (same, but limiting examiner's budget and duration to $5,000 and two weeks). Forcing courts to proceed in this manner would be extremely inefficient and cannot be Congress's intended result.

Neither section 1104 nor section 1106 of the Bankruptcy Code limit a bankruptcy court's power to restrict an examiner's investigative duties. In fact, section 1104 is silent on the issue, while section 1106 expressly provides that an examiner shall perform its investigative duties "except to the extent that the court orders otherwise." 11 U.S.C. § 1106(b). Thus, nothing in the Code prevents a

bankruptcy court from limiting an examiner's investigative duties to zero if it determines that further investigation of the debtor is inappropriate.  Here, the U.S. Trustee did not even attempt to propose a scope of investigation in its Motion, expressly reserving that for a later date.  (A220–48.)

Neither the U.S. Trustee nor the cases it relies on so much as attempt to explain why a bankruptcy court would not have the discretion to limit a mandatorily appointed examiner's duties to nothing.  *See, e.g.*, *In re Revco D.S., Inc.*, 898 F.2d 498, 501 (6th Cir. 1990) (conceding without further analysis that "the bankruptcy court retains broad discretion to direct the examiner's investigation," including to avoid abuse); *Walton* v. *Cornerstone Ministries Investments, Inc.*, 398 B.R. 77, 83 (N.D. Ga. 2008) (concluding without analysis that the bankruptcy court's "complete discretion over the scope—and by extension, the existence—of the examiner's investigation" nevertheless does not "allow[] the court to determine . . . the appointment itself"); *In re Schepps Food Stores, Inc.*, 148 B.R. 27, 30 (S.D. Tex. 1992) (conceding that "the statute allows the court to determine the scope, length, and conduct of the investigation, rather than the appointment itself," but ignoring the possibility that the appropriate scope, length, and conduct might be nothing).

And there are appropriate circumstances under which a bankruptcy court might make that finding.  For example, if other parties or government agencies have investigated a debtor to the bankruptcy court's satisfaction, the court may find

nothing appropriate for an examiner to do.  *See, e.g.*, *In re Residential Capital, LLC*, 474 B.R. 112, 121 (Bankr. S.D.N.Y. 2012).  Here, the Bankruptcy Court already heard testimony from Mr. Ray, and determined on an uncontroverted record that:

> Given the facts and circumstances of this highly unique case I have no doubt that the appointment of an examiner would not be in the best interests of the creditors.  There are already multiple investigations underway by incredibly competent and independent parties.  Requiring creditors to bear the burden of yet another investigation does not comport with the requirements of Section 1104(c)(1) or the general scheme of the bankruptcy code; that is to maximize [] recovery to creditors.

(A190, at 10:6–14.)  Forcing the Bankruptcy Court to appoint an examiner would serve no purpose under the circumstances.

As Southern District of New York Chief Bankruptcy Judge Glenn asked in *Residential Capital*, "[i]f the 'as is appropriate' language provides [] discretion with respect to the nature, extent and duration of the investigation, then why doesn't the same language provide the discretion to 'just say no' to an examiner investigation where it may not be justified on the particular facts and circumstances of the case?"  *In re Residential Capital, LLC*, 474 B.R. at 118.  The correct interpretation is that section 1104(c)(2) does provide that discretion.  *Id.* (holding that 1104(c)(2) is not mandatory).

The plain meaning of the statute entitled the Bankruptcy Court to consider whether appointing an examiner under section 1104(c)(2) was appropriate.

To make that determination, the court appropriately looked to the "facts and circumstances of these cases." (A195–96, Decision at 15:21–16:1.) Finding nothing for an examiner to investigate, the Bankruptcy Court declined to appoint one in the FTX Debtors' Chapter 11 Cases.   Accordingly, this Court should affirm the Decision.

## II.     This Court Need Not Resort to the Ambiguous Legislative History

Because this Court can interpret section 1104(c)(2) based on its plain language in a manner that avoids absurd results, this Court need not consult legislative history.  *Ratzlaf* v. *United States*, 510 U.S. 135, 147–48 (1994) (finding no need to "resort to legislative history to cloud a statutory text that is clear"). However, should the Court decide to review the legislative history—and it should not—the legislative history cited by the U.S. Trustee is at best inconclusive, and does not dispel any "ambiguity" surrounding the meaning of section 1104(c)(2).  This Court should therefore disregard it.  *Milner* v. *Dep't of Navy*, 562 U.S. 562, 572 (2011) ("We will not take the . . . tack of allowing ambiguous legislative history to muddy clear statutory language.").

Here, section 1104(c)(2) is susceptible at most to two readings:  it is either mandatory or discretionary.  The mandatory reading yields impractical and absurd results, leaving only the discretionary reading.  *See United Sav. Ass'n*, 484 U.S. 365 at 371 (1988).  To rescue the mandatory reading, the U.S. Trustee relies on

-26-

floor statements about section 1104 from "House and Senate floor managers." (Appellant's Br. at 21–22.)  But the Supreme Court has noted that "[f]loor statements by individual legislators rank among the least illuminating forms of legislative history." *N.L.R.B.* v. *SW Gen., Inc.*, 580 U.S. 288, 307 (2017).  Moreover, the Third Circuit has held that "what individual legislators say a statute will do, and what the language of the statute provides, may be far apart indeed." *Szehinskyj* v. *Atty. Gen. of United States*, 432 F.3d 253, 256 (3d Cir. 2005).  "The law is what Congress enacts, not what its members say on the floor." *Id.*  As explained herein, the law Congress enacted cannot be read to deprive the Bankruptcy Court of discretion whether to appoint an examiner under section 1104(c)(2) without disregarding operative language and disrupting the statutory scheme.  The Court may, therefore, disregard the floor statements cited by the U.S. Trustee.  With no other legislative history to hang its hat on, the U.S. Trustee's legislative history argument fails.

## III.   The U.S. Trustee Waived All Other Grounds For Appeal

Finally, the U.S. Trustee's exclusive focus on whether section 1104(c)(2) imposes a mandatory requirement to appoint an examiner waived its right to challenge either the Bankruptcy Court's factual findings concerning whether an examiner investigation is necessary or appropriate for the FTX Debtors or the denial of the request to appoint an examiner under section 1104(c)(1).  (*See* A553, *Statement of Issues on Appeal*, Ex. A ("Did the bankruptcy court err in

-27-

denying the United States Trustee's motion to appoint an examiner under 11 U.S.C. § 1104(c)?")).  The law is clear that "an issue is waived unless a party raises it in its opening brief."  *Tse* v. *Ventana Med. Sys., Inc.*, 297 F.3d 210, 225 n.6 (3d Cir. 2002).  Thus, the sole issue remaining on appeal is the legal question of whether section 1104(c)(2) is mandatory or discretionary.[7]

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should affirm the Bankruptcy Court's order denying the U.S. Trustee's motion to appoint an examiner.

---

[7] Even if the U.S. Trustee has not waived those appeal rights (and it has), the Bankruptcy Court's findings were neither erroneous nor an abuse of discretion.  The U.S. Trustee presented no evidence to contradict those finds at the Hearing.

Dated:  May 8, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Adam G. Landis*

Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Appellee FTX Debtors
and Debtors-in-Possession*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), the undersigned hereby certifies the foregoing brief complies with Federal Rule of Bankruptcy Procedure 8013(f) and this Court's Standing Order Regarding Briefing in All Cases because it contains 6,868 words, excluding the parts of the document exempted by Federal Rule of Bankruptcy Procedure 8015(g), and was prepared in 14-point Times New Roman font.  The foregoing brief has been prepared using Microsoft Word and the undersigned has relied on the word count feature of this word processing software in preparing this certification.

May 8, 2023                                         */s/ Adam G. Landis*
                                                          Adam G. Landis