No. 23-cv-00241

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re FTX TRADING LTD. *et al.*, Debtors.

ANDREW R. VARA, UNITED STATES TRUSTEE, Appellant,

v.

FTX TRADING LTD. *et al.*, Appellees.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

**REPLY BRIEF OF APPELLANT ANDREW R. VARA,
UNITED STATES TRUSTEE**

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
SUMI K. SAKATA
Trial Attorneys

Department of Justice
Executive Office for
 United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.:  (202) 307-1399
Fac.:  (202) 307-2397
frederick.g.hall@usdoj.gov
sumi.sakata@usdoj.gov

ANDREW R. VARA
United States Trustee
 for Regions 3 & 9
JOSEPH J. MCMAHON, JR.
Assistant United States Trustee
BENAJMIN A. HACKMAN
JULIET M. SARKESSIAN
Trial Attorneys

Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207,
 Lockbox 35
Wilmington, DE 19801
Tel.:  (302) 573-6491
Fac.:  (302) 573-6497
benjamin.a.hackman@usdoj.gov
juliet.m.sarkessian@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................... ii

PRELIMINARY STATEMENT ................................................1

ARGUMENT ........................................................................3

   I.   The Text, Structure, and Legislative History of Section 1104 Underscores That Appointment of an Examiner Under Section 1104(c)(2) Is Mandatory in Cases Like This One. ...............................................................3

      A.   The text of section 1104(c)(2) requires that examiner appointment is mandated when the statutory criteria are met. .....................................3

      B.   FTX's structural argument does violence to the statute. ......................8

      C.   The legislative history confirms the clear meaning of the text...........11

   II.  The Alleged Costs of an Examiner Do Not Permit Parties To Ignore the Statute's Mandate.........................................................................15

   III. The Committee Incorrectly Suggests That the United States Trustee Conceded That the Bankruptcy Court Has Discretion Under Section 1104(c)(2)..................................................................................17

CONCLUSION ..................................................................20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Begier v. IRS,*
   496 U.S. 53 (1990)...........................................................................14

*In re Calabrese,*
   689 F.3d 312 (3d Cir. 2012) ................................................11, 14, 15

*Czyzewski v. Jevic Holding Corp.,*
   580 U.S. 451 (2017)...........................................................................7

*Doe v. Chao,*
   540 U.S. 614 (2004)...................................................................14, 16

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.,*
   902 F.3d 147 (3d Cir. 2018) .........................................................5, 8

*In re FTX Trading Ltd.,*
   Case No. 22-11068 (JTD) (Bankr. D. Del.).......................................6

*In re Juzwiak,*
   89 F.3d 424 (7th Cir. 1996) .............................................................1

*In re LTL Mgmt., LLC,*
   64 F.4th 84 (3d Cir. 2023) ..............................................................15

*Obduskey v. McCarthy & Holthus LLP,*
   139 S. Ct. 1029 (2019)...............................................................13, 14

*Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,*
   461 U.S. 190 (1983)...................................................................14, 16

*In re Revco D.S., Inc.,*
   898 F.2d 498 (6th Cir. 1990) ...................................................*passim*

*Riccio v. Sentry Credit, Inc.,*
   954 F.3d 582 (3d Cir. 2020) (en banc) ...........................................5

*Robbins v. Chronister*,
435 F.3d 1238 (10th Cir. 2006) (en banc) ............................................................5

*In re Schepps Food Stores, Inc.*,
148 B.R. 27 (S.D. Tex. 1992) ...............................................................................4

*Sturges v. Crowninshield*,
17 U.S. (4 Wheat.) 122 (1819) .............................................................................5

*In re UAL Corp.*,
307 B.R. 80 (Bankr. N.D. Ill. 2004) ...................................................................18

*Walton v. Cornerstone Ministries Invs., Inc.*,
398 B.R. 77 (N.D. Ga. 2008) ............................................................................4, 7

**Statutes**

11 U.S.C. § 330(a) .................................................................................................16

11 U.S.C. § 507(a)(8) .............................................................................................15

11 U.S.C. § 1104 ...............................................................................................1, 2, 3

11 U.S.C. § 1104(a) .................................................................................................9

11 U.S.C. § 1104(a)(2) ...........................................................................................11

11 U.S.C. § 1104(c) .................................................................................7, 9, 11, 19

11 U.S.C. § 1104(c)(1) ...............................................................................2, 9, 10, 11

11 U.S.C. § 1104(c)(2) .....................................................................................*passim*

11 U.S.C. § 1106(a)(3) ...........................................................................................17

11 U.S.C. § 1106(a)(4)(A) .......................................................................................8

11 U.S.C. § 1106(b) .................................................................................................8

11 U.S.C. § 1107(a) .................................................................................................17

**Other Authorities**

7 *Collier on Bankruptcy* ¶ 1104.03 (16th ed. 2023) .............................................18

H.R. 8200, 95th Cong. § 1104(b) (Sept. 8, 1977)......................................................15

U.S. Dep't of Justice, United States Trustee Program Policy &
   Practices Manual § 3-6.2 (2022)................................................................................ 19

## PRELIMINARY STATEMENT

Obtaining bankruptcy relief is a privilege, not a right.  *See*, *e.g.*, *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).  And Congress determined that the powerful benefit of chapter 11 relief should be tempered by a number of statutory rules and restrictions.

Relevant here is the mandatory appointment of a neutral examiner in cases where the debtor has over $5 million of qualifying liabilities.  Congress made clear—through the text, structure, and legislative history of section 1104—that examiners must be appointed under the circumstances of this case.

As the United States Trustee explained in his opening brief, Congress mandated the appointment of an examiner here.  The Bankruptcy Code states that the bankruptcy court "shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate" when the criteria of section 1104(c)(2) are met.  11 U.S.C. § 1104(c)(2).  "[S]hall" is a clear statement of a requirement.  FTX and the Committee mistakenly argue that the phrase "as is appropriate" converts section 1104(c)(2) into a discretionary choice by the bankruptcy court.  But the most natural reading of "as is appropriate" is that it applies to the scope of the examiner's investigation.  Appellees have no clear answer to this.

The United States Trustee also established that the structure of section 1104 confirms that section 1104(c)(2) in particular is compulsory.  Whereas section 1104(c)(1) uses the phrase "in the interests of creditors, any equity security holders, and other interests of the estate," invoking the discretion and judgment of the bankruptcy court, section 1104(c)(2) does not use discretionary language; it uses an objective criterion.  Further, reading section 1104(c)(2) to be discretionary renders it superfluous, as reflected in the bankruptcy court's analysis below. Appellees have no answer to this either.

Finally, the United States Trustee explained that the evolution of this statutory language through negotiations between the two legislative chambers, in addition to the statements of the House and Senate floor managers, reflects Congress's intent that section 1104(c)(2) be mandatory.  Tellingly, neither appellee defends the bankruptcy court's erroneous reliance upon legislative history of a bill never enacted or its inexplicable disregard for legislation that actually became law.

Appellees have failed to counter the United States Trustee's arguments that the bankruptcy court committed legal error.  The bankruptcy court's order denying the United States Trustee's motion to appoint an examiner under section 1104(c)(2) must be reversed.

# ARGUMENT

I.  **The Text, Structure, and Legislative History of Section 1104 Underscores That Appointment of an Examiner Under Section 1104(c)(2) Is Mandatory in Cases Like This One.**

A.  **The text of section 1104(c)(2) requires that examiner appointment is mandated when the statutory criteria are met.**

The plain language of section 1104(c)(2) provides that the bankruptcy court must appoint an examiner when the debtor's qualifying liabilities are more than $5 million and the other statutory criteria are satisfied.  In particular, section 1104(c)(2) states that, upon the request of a party in interest or the United States Trustee, "the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if . . . the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000."  11 U.S.C. § 1104(c)(2).  By pairing the mandatory "shall" with the objective criterion regarding the size of the debtor's debts, Congress made clear that bankruptcy courts lack discretion to deny a request for appointment of an examiner in such bankruptcy proceedings.  UST Brief at 13-14.

FTX and the Committee contend that the phrase "as is appropriate" grants the court discretion over the appointment of an examiner.  FTX Brief at 15-17;

Committee Brief at 10-12.  But as the United States Trustee explained, the phrase "as is appropriate" modifies only the words that immediately precede it—"such an investigation of the debtor"—thereby authorizing the bankruptcy court to determine the appropriate scope of the examiner's investigation.  UST Brief at 14-17; *see also In re Schepps Food Stores, Inc.*, 148 B.R. 27, 30 (S.D. Tex. 1992) (holding that "as is appropriate" modifies "investigation" and rejecting Appellees' argument as "both grammatically and contextually wrong"); *Walton v. Cornerstone Ministries Invs., Inc.*, 398 B.R. 77, 83 (N.D. Ga. 2008) (quoting *Schepps Food Stores*).  That reading, moreover, is confirmed by the words that immediately follow "as is appropriate," all of which describe different types of allegations that an examiner could investigate.  In short, while section 1104(c)(2) affords the bankruptcy court discretion to determine the contours of the examiner's investigation, it leaves the court no discretion to decline to appoint an examiner altogether.[1]

---

[1] FTX suggests (at 15-16) that "as is appropriate" modifies the entire phrase "shall order the appointment of an examiner to conduct such an investigation of the debtor."  Such a reading strains English grammar and syntax beyond reason.  If Congress truly had intended such a reading, it had far more straight-forward syntax options to choose from.  It could have used "may" instead of "shall."  Or it could have created a new enumerated subsection requiring that the appointment be appropriate.  The most likely reason for Congress's choice of phrasing is the simplest:  "as is appropriate" modifies its immediate antecedent, the investigation of the debtor.  UST Brief at 15-16.

Unable to contend with the clear statutory text, Appellees ask this Court simply to ignore it because—in their view—complying with the ordinary meaning of the statutory text would be "absurd."  FTX Brief at 20-26; Committee Brief at 10-12.  But purported absurdity applies in only the most extreme of cases and is almost never a basis to ignore a statute's plain meaning.  *See Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202-03 (1819) (absurdity must be "so monstrous, that all mankind would, without hesitation, unite in rejecting" it); *Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc) (requiring an absurdity "so gross as to shock the general moral or common sense").  Appellees' arguments do not approach that high standard.

To begin with, it is incorrect that accepting the statutory language at its face value would lead to "absurd" results.  FTX Brief at 16, 20-26; Committee Brief at 12.  "An absurd interpretation is one that defies rationality or renders the statute nonsensical and superfluous."  *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018).  And, as the Third Circuit recently exhorted en banc, "[a]s long as Congress could have *any* conceivable justification for a result—even if the result carries negative consequences—that result *cannot* be absurd." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020) (en banc) (emphasis added).

5

The justification here is not merely "conceivable"—it is apparent.  The examiner provision allows individual creditors and the government to obtain an objective look in cases with more than $5 million in qualifying debt.  This affords "special protection" for bankruptcies of "great public interest" by ensuring an investigation of the debtor and a public report by a neutral examiner where there are allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the debtor—exactly the transparency that Congress directed.  Add. 31[2]; *see also infra* section I.C.  Although FTX conjectures a parade of horribles that would result from the government's interpretation, FTX Brief at 22, the position urged by the United States Trustee has been the law of the Sixth Circuit for three decades, *see In re Revco D.S., Inc.*, 898 F.2d 498, 500-01 (6th Cir. 1990).  Appellees have cited no examples of "abusive" examiner appointments within the Sixth Circuit in that time.

Appellees express concern that the government's reading of section 1104(c)(2) will force a court to appoint an examiner even when no investigation is warranted or the request is made in bad faith.  But courts have statutory discretion

---

[2] Citations to "Add. __" refer to the legislative history addendum attached to the United States Trustee's opening brief, D.I. 15-1.  Citations to "A__" refer to the United States Trustee's Appendix, D.I. 16.  Citations to "SA__" refer to FTX's (supplemental) appendix, D.I. 35.  Citations to "Bankr. D.I. __" refer to the bankruptcy court's docket, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.).

over budget and scope to handle requests for an examiner that might be in bad faith.[3]  *See Revco*, 898 F.2d at 501 (noting court's discretion to direct investigation in response to allegation that its interpretation would invite abuse).  They may, thus, appoint an examiner to determine whether there is a basis for further investigation and allocate a budget that corresponds to that smaller scope.  But the ability of a court to shape the scope and budget of an examiner investigation does not mean it can extinguish the investigation entirely.[4]

There can be no doubt that an investigation is appropriate here.  FTX's new management has made clear that one or more of the enumerated examiner investigation targets in section 1104(c) is present, so there can be no claim of bad faith.  UST Brief at 6-7.  The United States Trustee made his request for an examiner within a month of the bankruptcy petitions being filed, so there can be no claim for laches.  The sole complaint from FTX and the Committee is that they are

---

[3] Courts might also apply the doctrine of laches to find a forfeiture of the right of a party in interest to request an examiner.  *See Walton*, 398 B.R. at 81 n.9 (citing two cases).  But the possibility of finding forfeiture based on laches does not impact a case, such as this one, where the United States Trustee promptly moved for an examiner appointment.  *Id*.  Further, even if bad faith were another basis to find a forfeiture, a notion wholly divorced from the statutory text, it is irrelevant here where everyone agrees that an investigation is warranted.

[4] *Cf. Czyzewski v. Jevic Holding Corp*., 580 U.S. 451, 466 (2017) (rejecting argument that certain statutory flexibility provided to bankruptcy court authorized it to make an end run around the Code's priority scheme).

already conducting investigations, so an examiner's investigation is unnecessary and costly. But neither FTX nor the Committee is committed to publicly reporting the findings of their investigations, as an examiner would do. *See* 11 U.S.C. § 1106(a)(4)(A) & (b). And cost to the estate is not a relevant concern in a case like this. *See infra* section II.

Ultimately, the bankruptcy court here substituted its judgment for Congress's. The court effectively rewrote the statute because it claimed that the text as interpreted by the Sixth Circuit and other courts produces what it viewed as inefficient and costly results. The court and Appellees simply disagree with the policy that Congress adopted, and that disagreement does not render Congress's choice "absurd." Even supposing that "[r]easonable minds might conclude that the procedural result demonstrates a need for a change in the law. . . , if such change is required, it is Congress—not the Judiciary—that must act." *Encompass*, 902 F.3d at 154.

**B.    FTX's structural argument does violence to the statute.**

Comparing the discretionary language of sections 1104(a) and (c)(1) with the mandatory language of section 1104(c)(2) underscores the absence of discretion in this case. Section 1104(c)(2) provides that "the court shall order the appointment of an examiner . . . if . . . the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed

8

$5,000,000." In contrast, section 1104(a) provides that a court "shall" order the appointment of a chapter 11 trustee "for cause" under subsection (a)(1), or "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor" under subsection (a)(2). And section 1104(c)(1) provides that a court "shall" order the appointment of an examiner "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." Under Appellees' reading, the appointment provision of section 1104(c)(2) would be superfluous. UST Brief at 18-20.

FTX now advances two novel contentions. FTX Brief at 18-20. Neither is tenable.

*First*, FTX argues that because appointment of a trustee under section 1104(a) is discretionary, and appointment of an examiner under section 1104(c)(1) is discretionary, then appointment of an examiner under section 1104(c)(2) must also be discretionary. FTX Brief at 18-19. FTX contends that, because both section 1104(a) and section 1104(c) use the term "shall," the term "shall" in the statute must mean "may." FTX Brief at 19. In rejecting this argument, the *Revco* court noted that sections 1104(a) and 1104(c)(1) afford the court discretion because they use subjective criteria—"for cause" or "in the interests of creditors"—as the

basis for the appointment decision.  *See Revco*, 898 F.2d at 501.  Section

1104(c)(2), in contrast, uses only an objective criterion, requiring appointment of

an examiner if "the debtor's fixed, liquidated, unsecured debts, other than debts for

goods, services, or taxes, or owing to an insider, exceed $5,000,000."  The

bankruptcy court's discretion in sections 1104(a) and 1104(c)(1) stems from their

statutory criteria, and not from the term "shall."

*Second*, in attempting to avoid the fact that section 1104(c)(2) would be

superfluous if it is not mandatory, FTX claims that the provision *allows* a court to

appoint an examiner if it meets the debt threshold, but only "as is appropriate."

FTX Brief at 19-20.  FTX's attempt to give separate meaning to section 1104(c)(2)

collapses on itself; under its interpretation, the provision remains superfluous

because the standard for an "appropriate" investigation is the same as the

"interests" standard under section 1104(c)(1), as reflected in the bankruptcy court's

analysis.  *Compare* A195:21–A196:1 (concluding that a section 1104(c)(2)

examiner appointment was not appropriate because of the burden on the debtor and

creditors), *with* A190:18-21 (concluding examiner appointment was not warranted

under section 1104(c)(1) because of the expenses); *see also Revco*, 898 F.2d at 501

("Unless § 1104([c])(2) requires the appointment of an examiner in such a case, it

becomes indistinguishable from § 1104([c])(1)").

Sections 1104(c)(1) and 1104(c)(2) stand in marked contrast to section 1104(a)(2), which expressly grants the bankruptcy court discretion to appoint a trustee if it is in the parties' interests, *regardless of the amount of debtor's liabilities*.  Section 1104(c)(1) similarly grants the bankruptcy court discretion to appoint an examiner if it is in the parties' interests—but does not include the caveat that such discretion applies regardless of the debtor's liabilities.  By contrast, section 1104(c)(2) provides that where the debtor's qualifying liabilities exceed $5 million, then the court "shall" appoint an examiner.  The statute's structure cannot support FTX's proposed reading.

### C. The legislative history confirms the clear meaning of the text.

As explained in the United States Trustee's opening brief, to the extent there is any ambiguity in the text, the legislative history of section 1104(c) makes clear that the statute requires the appointment of an examiner when the qualifying debt threshold is met.  UST Brief at 20-22.  Indeed, the joint statement of the statute's floor managers—which the Third Circuit has said is the "best evidence" of congressional intent for the Bankruptcy Reform Act of 1978, *In re Calabrese*, 689 F.3d 312, 320 (3d Cir. 2012)—explains that "to insure that adequate investigation of the debtor is conducted to determine fraud or wrongdoing on the part of present management, *an examiner is required to be appointed* in all cases in which the debtor's fixed, liquidated, and unsecured debts, other than debts for goods,

11

services, or taxes, or owing to an insider, exceed $5 million."  Add. 22 – Add. 23,

Add. 33 – Add. 34 (emphasis added).

The United States Trustee further explained why the bankruptcy court's

understanding of the legislative history was seriously mistaken, UST Brief at 22-

25, and neither FTX nor the Committee defend the bankruptcy court's reading on

appeal.[5]  FTX and the Committee both take issue with the discussion of the

legislative history in our opening brief.  These objections are inconsistent and

without merit.

The Committee wrongly claims that the United States Trustee cited no

legislative history that supports the interpretation that section 1104(c)(2) is

mandatory.  Committee Brief at 18.  It further claims—without basis—that there

are two "dueling House Reports" related to the legislation.  *Id.* at 17.  But, as the

United States Trustee explained, there were two dueling *legislative bills*, each with

an accompanying Report, and a legislative compromise emerged in which

Congress directed the mandatory appointment of an examiner in cases with over $5

million of qualifying liabilities.  UST Brief at 20-22; Add. 02, Add. 06 (House bill

---

[5] The Joint Provisional Liquidators of FTX Digital Markets Ltd. (in Bahamian Provisional Liquidation), who cited the erroneous legislative history to the bankruptcy court, *see* Bankr. D.I. 572 at 3, have not even entered an appearance in this appeal.  When the erroneous legislative history was cited to the bankruptcy court below, the United States Trustee explained why it was wrong.  *See* Bankr. D.I. 601 at 15-16.

and Report); Add. 09, Add. 13 – Add. 14 (Senate bill and Report); Add. 43 – Add. 44 (enacted law).

FTX admits that legislative history supports the United States Trustee's argument. But it dismisses the "floor statements" cited by the United States Trustee as the "least illuminating" form of legislative history. FTX Brief at 27. FTX further claims that there is "no other legislative history to hang [the United States Trustee's] hat on." *Id.* FTX is wrong on both points.

*First*, FTX overlooks the competing draft bills and the resulting compromise bill, which are also part of the provision's legislative history. *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1037-38 (2019) (comparing dueling versions of bills to final compromise enactment in interpreting the Fair Debt Collection Practices Act ("FDCPA")). Here, the House's draft bill would have expressly provided bankruptcy courts discretion over both trustee and examiner appointments, with criteria dependent on whether the benefit outweighed the corresponding expenses. Add. 02. By contrast, the Senate bill required the appointment of a trustee whenever the debtor was a public company with over $5 million of qualifying liabilities and 1,000 security holders. Add. 09. The final enacted legislation gave the bankruptcy court discretion to appoint a trustee but required appointment of an examiner when the debtor had over $5 million of qualifying liabilities. Add. 43 – Add. 44.

As the Supreme Court observed with respect to the FDCPA, "[g]iven these conflicting proposals, the Act's present language has all the earmarks of a compromise." *Obduskey*, 139 S. Ct. at 1038. Congress considered and rejected the House bill language that would have adopted the very position urged by Appellees; the resulting mandatory language is not an accident. *See*, *e.g.*, *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 220 (1983) (declining "to give a reading to the [Atomic Energy] Act that Congress considered and rejected"); *Doe v. Chao*, 540 U.S. 614, 622 (2004) (statutory interpretation of the Privacy Act is "underscored by drafting history showing that Congress cut out the very language in the bill that would have authorized" a contrary interpretation).

*Second*, the statements that the United States Trustee cited—far from random "floor statements" by assorted "individual legislators," FTX Brief at 27— are actually part of a specific joint statement of the compromise bill's floor managers. That joint statement has already been recognized by both the Supreme Court and Third Circuit as expressing Congress's intent in enacting the Bankruptcy Code. *See Begier v. IRS*, 496 U.S. 53, 64 n.5 (1990) (treating the floor statements of Representative Edwards and Senator DeConcini "as persuasive evidence of congressional intent" in enacting the Bankruptcy Reform Act of 1978); *Calabrese*, 689 F.3d at 316-17 (consulting joint statement for extra-textual analysis to interpret

11 U.S.C. § 507(a)(8)).  "As the Joint Statement itself indicates, and as the Supreme Court and commentators alike have recognized, the Joint Statement is superior to the other evidence of intent that may be found in the legislative record." *Id*. at 319.  Appellees cannot rebut Congress's clear intent.

## II.    The Alleged Costs of an Examiner Do Not Permit Parties To Ignore the Statute's Mandate.

Both FTX and the Committee complain about the costs that they speculate would be associated with appointing an examiner.[6]  FTX Brief at 3; Committee Brief at 16-17.  For both legal and practical purposes, any costs associated with appointing an examiner do not justify departure from the statutory requirement to appoint an examiner where, as here, the statutory criteria are met.

As explained in the United States Trustee's opening brief, the draft House legislative bill would have given the bankruptcy court discretion to consider whether the "costs and expenses of an examiner would not be disproportionately higher than the value of the protection afforded."  UST Brief at 24 (quoting H.R. 8200, 95th Cong. § 1104(b) (Sept. 8, 1977)); Add. 02.  But this criterion was not

---

[6] The bankruptcy court's supposition that an examiner would cost $100 million, A189:17-20, is the type of "back-of-the-envelope forecasts of hypothetical worst-case scenarios" estimation that the Third Circuit recently criticized.  *In re LTL Mgmt., LLC*, 64 F.4th 84, 108 (3d Cir. 2023) (holding that to the extent such casual calculations were factual findings, they were not "inferences permissibly drawn and entitled to deference").

adopted in the enacted legislation.  Add. 43 – Add. 44.  Congress thus considered and rejected weighing "costs and expenses" as a consideration in examiner appointments under section 1104(c)(2), in favor of requiring the transparency of an independent person's investigation and report.  Given this, courts may not interpret the statute to treat cost as a relevant consideration.  *Pacific Gas*, 461 U.S. at 220; *Chao*, 540 U.S. at 622.

Separately, the Committee claims that both it and FTX are conducting their own investigations.  Committee Brief at 13-14 & 17.  But FTX's and the Committee's professionals are compensated from the estate.  11 U.S.C. § 330(a). None of them work for free.  Consequently, costs of the investigations are being borne by the creditors regardless; the investigations are simply not being conducted by a neutral who will issue a public report.  The proper way to resolve concerns about costs is for the bankruptcy court to require FTX and the Committee to temper their investigations to avoid unnecessary duplication of the examiner's, not to ignore Congress' mandatory examiner requirement in cases like this one.[7]

---

[7] Requiring FTX and the Committee to coordinate their investigations with the examiner's could save the estate considerable unnecessary expenditures.  As just two examples, FTX's counsel Sullivan & Cromwell and FTX's special investigatory counsel Quinn Emanuel both recently filed monthly fee applications. Bankr. D.I. 1388 & 1399.  Quinn's application reflected a list of 49 attorneys working on FTX matters, with a blended hourly rate of roughly $1,018 (omitting non-attorneys).  Bankr. D.I. 1399 at 2-3.  Sullivan & Cromwell's application

Projected costs of an examiner are no defense for ignoring Congress's mandate.  The bankruptcy court committed legal error in denying the United States Trustee's motion under section 1104(c)(2).[8]

## III.   The Committee Incorrectly Suggests That the United States Trustee Conceded That the Bankruptcy Court Has Discretion Under Section 1104(c)(2).

On appeal, the Committee relies heavily on the bankruptcy court's statement that the United States Trustee "concede[d]" that the bankruptcy court "has some discretion in determining whether or not an examiner must be appointed under 1104(c)(2)."  A191:2-5; Committee's Brief at 4, 12, & 18.  Unsurprisingly, neither the bankruptcy court nor the Committee cite to any part of the record in which the United States Trustee made such a concession.  This is because it did not happen.

As the February 6, 2023, transcript demonstrates, counsel for the United States Trustee responded to questions from the bankruptcy court about whether there could be a situation in which it would not be "appropriate" to appoint an examiner where the criteria of section 1104(c)(2) were met.  SA496:22-520:15.  In so doing, she reiterated that the appointment of an examiner is mandatory under

---

reflected a list of 146 attorneys, with a blended hourly rate of roughly $1,426 (omitting non-attorneys).  Bankr. D.I. 1388 at 2-5.

[8] Debtors in possession are denied statutory authority to engage in a freewheeling investigation of the debtor's own affairs.  11 U.S.C. § 1107(a) (denying debtors in possession the duty under section 1106(a)(3) to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor").

section 1104(c)(2) and the only discretion is with respect to determining the scope of the examiner's investigation.

This has been the United States Trustee's position for decades. *See Revco*, 898 F.2d at 500-01.

The government was not equivocal on that point. The United States Trustee fully relied on *Revco* in his briefing, SA236, and his counsel did not waiver from that position at argument in the face of the bankruptcy court's questions. For example, the bankruptcy court posed a hypothetical in which a creditor requested an examiner a week before the confirmation hearing in a case that met the debt threshold, and asked whether the court was obligated to delay confirmation of the plan until the examiner completed a report. SA504:23-505:6. Counsel for the United States Trustee first stated that the Bankruptcy Code does not require delaying confirmation in those circumstances.[9] SA505:7-11. She then cited *In re UAL Corp.*, 307 B.R. 80 (Bankr. N.D. Ill. 2004), for the proposition that when parties seek the appointment of an examiner to investigate a "private dispute" or when a movant is motivated by bad-faith litigation tactics, then the bankruptcy

_____

[9] And, conversely, nothing in the Bankruptcy Code terminates the examiner's review upon case confirmation. *See* 7 *Collier on Bankruptcy* ¶ 1104.03[2][b] n.24 (16th ed. 2023) (quoting statements by the compromise bill's floor managers that: "It will not be necessary for the court to consider the report of the examiner prior to approval of a disclosure statement. The investigation of the examiner is to proceed on an independent basis from the procedure of the reorganization under chapter 11.").

court can appoint an examiner and limit the scope of the examiner's investigation to determine if there was good cause to investigate.  SA505:15-506:16.

And when the court asked whether there are any exceptions or discretion for the court to apply in examiner appointments, SA507:2-8, counsel responded that, if the case met the debt threshold, and the other criteria were met, then "*there is no discretion in the statute*, that is the U.S. Trustee's view, that is the view of the only Circuit Court that ruled on this, and the few District Courts that have ruled have reversed the Bankruptcy Court under these saying *there is no discretion, they must be appointed*."  SA507:17-24 (emphasis added).

Counsel for the United States Trustee recognized that requests for an examiner might be denied in cases in which the statutory criteria are not met.  That might occur, for example, when the movant sought an investigation of creditors' counsel's alleged misconduct.  SA508:4-17.  But this example was not a recognition of discretionary authority under section 1104(c)(2).  To the contrary, it was an explanation that the language of the statute required appointment of an examiner only "to conduct [] an investigation of the debtor," 11 U.S.C. § 1104(c).  SA508:4-17.[10]  A request for an examiner solely to do something he or she lacks

---

[10] *See* U.S. Dep't of Justice, United States Trustee Program Policy & Practices Manual § 3-6.2 (2022) (explaining that examiner requests should not automatically be made in every case with the requisite amount of qualifying debt, and that the United States Trustee "should carefully consider all relevant factors, including

authority to do would not satisfy the statutory criteria mandating an examiner appointment.

The record thus provides no support whatsoever for the Committee's (and the bankruptcy court's) misapprehension that the United States Trustee had—whether explicitly or implicitly—retreated from the government's longstanding position by making an unprecedented "concession." The Committee's reliance on this clear error, in lieu of a reasoned argument on the merits, reflects the flimsiness of its legal position.

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to reverse the order entered below.

---

whether pre-petition or post-petition events *involving the debtor* warrant an independent investigation and report") (emphasis added).

Respectfully submitted,

ANDREW R. VARA
United States Trustee for Regions 3 & 9

May 17, 2023

By /s/ *Sumi Sakata*
    SUMI SAKATA
    Trial Attorney

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
SUMI K. SAKATA
Trial Attorneys

Department of Justice
Executive Office for
  United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.:  (202) 307-1399
Fac.:  (202) 307-2397
frederick.g.hall@usdoj.gov
sumi.sakata@usdoj.gov

ANDREW R. VARA
United States Trustee
  for Regions 3 & 9
JOSEPH J. MCMAHON, JR.
Assistant United States Trustee
BENAJMIN A. HACKMAN
JULIET M. SARKESSIAN
Trial Attorneys

Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207,
  Lockbox 35
Wilmington, DE 19801
Tel.:  (302) 573-6491
Fac.:  (302) 573-6497
benjamin.a.hackman@usdoj.gov
juliet.m.sarkessian@usdoj.gov

21

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitations set forth in Federal Bankruptcy Rule 8015(a)(7)(B) and this Court's Standing Order Regarding Briefing in All Cases in that the brief contains 4,706 words as counted by Microsoft Word and was prepared in 14-point Times New Roman font.

By /s/ *Sumi Sakata*
SUMI SAKATA
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2023, I caused to be served a copy of the foregoing document through the CM/ECF notification system on the participants in the case that are registered CM/ECF users.  I further certify that on May 17, 2023, I caused to be served a copy of the foregoing document via e-mail and first-class mail on the following:

J. Christopher Shore, Esquire
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200

-and-

Kevin Gross, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
Telephone: (302) 651-7700

*Counsel for Appellees Joint Provisional Liquidators of FTX Digital Markets Ltd. (in Bahamian Provisional Liquidation)*

By /s/ Sumi Sakata
SUMI SAKATA
Trial Attorney